Thomas A. Matthews
Matthews & Zahare, P.C.
431 W. 7th Ave., Suite 207
Anchorage, Alaska 99501
Phone:      (907)276-1516
Fax:        (907)276-8955
tom.matthews@matthewszahare.com

Counsel  for Totem Agencies, Inc.



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., ) ) ) ) | |
| ) | IN ADMIRALTY |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| INLET FISHERIES, INC., an Alaska Corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation, ) ) ) | Case No.:  A04-0058 CV (JWS) |
| Defendants. ) | |
| _____ ) | |
| INLET FISH PRODUCERS, INC., an Alaskan Corporation, ) ) | |
| ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| TOTEM AGENCIES, INC., a Washington Corporation, and AMERICAN E & S INSURANCE BROKERS CALIFORNIA, INC. a Washington corporation, ) ) ) ) ) | **TOTEM AGENCIES' MOTION** **FOR SUMMARY JUDGMENT** |
| Third-Party Defendants. ) | |
| _____ ) | |

**ORIGINAL LOCATED IN FOLDER**
**BEHIND FILE**

194

## TOTEM AGENCIES' MOTION FOR SUMMARY JUDGMENT

Third-party Defendant Totem Agencies, Inc. ("Totem"), through its lawyers Matthews & Zahare, P.C., and pursuant to Fed. R. Civ. P. 56(c), requests summary judgment in its favor and against the Defendants/Third-Party Plaintiffs Inlet Fisheries, Inc. ("IFI") and Inlet Fish Producers, Inc. ("IFP"), collectively referred to as the "Inlet Entities," on a variety of grounds. The grounds for entry of summary judgment in favor of Totem include the following:

1. The Court has declared Lloyds' marine pollution policy (the "Lloyds Policy"), covering certain of the Inlet Entities' vessels, void *ab initio*; Lloyds has stated that, had it known all material facts, it would not have provided coverage; prior to the Lloyds Policy, pollution insurer WQIS already had cancelled the Inlet Entities' marine pollution policy and refused to insure them any longer; and the stand-alone marine pollution insurance that the Inlet Entities sought was not otherwise available for its vessels. Thus, any negligence of the Totem with respect to the application for the Lloyds Policy has not caused any damage to the Inlet Entities.

2. The Lloyds policy was an indemnity policy, requiring the assured to become liable for and pay damages before the underwriter had an obligation to pay; and IFI is not an operating company, has no assets, and has no means to pay any judgment or settlement against it. Thus, the Lloyds Policy would not have indemnified IFI for any losses and, again, any negligence of Totem with respect to the Lloyds' pollution application has not caused any damage to IFI.

3. A condition of the Lloyds Policy was that the Inlet Entities maintain protection

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 2 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

& indemnity (P&I) insurance during the full period of pollution insurance; and the Inlet Entities breached this warranty by not having P&I insurance at the time of the August 2002 and May 2003 pollution incidents at issue in this litigation. Thus, Lloyds was relieved of any obligation to pay under the terms of the Lloyds Policy and, again, any negligence of Totem has not caused damage to the Inlet Entities.

4. Although the Inlet Entities were required to maintain P&I insurance on the vessels covered by the Lloyds Policy, they did not; and some of the amounts incurred as a result of the August 2002 incident, specifically the wreck removal expenses, would have been covered under a P&I policy. Thus, IFI may not seek damages that would have been covered by a P&I policy.

Because each of these grounds is based upon particular facts, Totem will address the undisputed facts relevant to each of these grounds in the sections III-VI below. Although the Court is fully aware of the background of this case, a summary is provided below, followed by the summary judgment standard. Since, as shown below, there are no genuine issues of material fact relevant to the grounds upon which Totem seeks summary judgment, and Totem is entitled to judgment as a matter of law, Totem hereby moves the Court for entry of summary judgment in favor of Totem and against the Inlet Entities.

## I. BACKGROUND[1]

This matter arises from two incidents involving Inlet Entity vessels. On or about

---

[1] The Court extensively set forth the background to this case in its September 9, 2004, Order from Chambers, at 2-4 (Docket No. 114).

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 3 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

August 26, 2002, the *QUANIRTUUG PRINCESS* ("*QP*"), owned by IFI, while moored in Steamboat Slough near Bethel, Alaska, sank, spilling oil and other materials. The *QP* was eventually removed from the slough and scuttled. The second incident occurred on or about May 12, 2003, again to a vessel moored in Steamboat Slough. This incident involved the *HARVESTER BARGE*, owned by IFP, and also involved the spilling of some pollutants. At the time of these two incidents, the vessels were on the schedule of vessels of a London U.S. Vessel Pollution Policy (the "Lloyds Policy"), issued on behalf of Certain Underwriters at Lloyds, London ("Lloyds"). The policy had first become effective on August 28, 2000, and was renewed annually in 2001 and 2002. The Inlet Entities obtained the policy through Totem, its broker.

Because IFI was unable to respond to the *QP* incident, the National Pollution Fund Center ("NPFC") responded to the spill, incurring costs for cleanup and scuttling of the *QP*. It has submitted a bill to the Inlet Entities for those costs.[2] In addition, as a result of the *QP* incident, certain individuals residing near Bethel, Alaska, (the "Bethel Plaintiffs") have filed suit in Alaska State Court against the IFI, asserting claims for damages allegedly sustained. IFI has not paid the NPFC or any of the Bethel Plaintiffs any damages associated with the *QP* incident.

The NPFC and the State of Alaska submitted invoices to IFP for costs incurred as a result of the *HARVESTER BARGE* incident. Certain of the Bethel Plaintiffs have asserted claims in the Bethel lawsuit against IFP for claims associated with the

---

[2] The United States has filed suit on this claim, but the summons and complaint apparently have not been served upon the Inlet Entities.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 4 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

*HARVESTER BARGE* incident. While IFP has paid certain amounts to the NPFC and State as a result of this incident, it has paid nothing to the Bethel Plaintiffs.

Following the *QP* incident, Lloyds reserved it rights, then filed a declaratory judgment action in federal court, seeking to void the Lloyd Policy and otherwise disclaim any obligations under the policy. Each of the Inlet Entities asserted counterclaims, with IFI seeking a declaration of coverage for the *QP* incident and IFP seeking a declaration of coverage for the *HARVESTER BARGE* incident, among other claims. Each of the Inlet Entities also brought a third-party complaint against Totem, arguing that if there were errors in completing the application for the Lloyds Policy, Totem was liable to the Inlet Entities.

In early 2005, Lloyds filed a summary judgment motion against the Inlet Entities, arguing that the Lloyds Policy was void *ab initio* based on an alleged violation of the *uberrimae fidei* (utmost good faith) doctrine. Lloyds argued that the Inlet Entities, when applying for the pollution insurance, failed to disclose certain material facts relevant to the risk, rendering the policy void. By its September 12, 2005, Order from Chambers (Docket No. 181), the Court granted Lloyds' summary judgment motion, stating that Lloyds was entitled to have the pollution policy declared void. To date, no final judgment has been entered or requested.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                     Page 5 of 25

and the moving party is entitled to judgment as a matter of law.[3]  To defeat a properly

supported summary judgment motion, the opposing party must set forth specific facts,

through admissible evidence, showing that there are genuine issues of material fact to

be tried.[4]  If a rational trier of fact could not find in favor of the party opposing a

summary judgment motion, there is no genuine issue of material fact and summary

judgment is appropriate.[5]

## III.  TOTEM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE STAND-ALONE MARINE POLLUTION INSURANCE WAS NOT OTHERWISE COMMERCIALLY AVAILABLE FOR INLET'S VESSELS

Because no insurer of stand-alone marine pollution insurance would have

provided coverage for the *QP* or *HARVESTER BARGE,* the Inlet Entities cannot

establish that Totem's conduct related to the voiding of the Lloyds Policy has caused

them harm.  Absent harm, the Inlet Entities cannot establish all elements of their claim

and Totem is entitled to summary judgment.

### A.  Facts Relevant to this Ground for Summary Judgment

In August 2000, the Inlet Entities sought and obtained stand-alone marine

pollution coverage for certain of its vessels through Lloyds.  Just before that coverage

went into effect, WQIS had cancelled the Inlet Entities' stand-alone marine pollution

coverage, which covered the *QP* and *HARVESTER BARGE.*[6]  This Court already has

recognized WQIS's cancellation in recent Order, when it stated that by August 28,

---

[3] Fed. R. Civ. P. 56(c).

[4] Fed. R. Civ. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                      Page 6 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

2000, when the Lloyds' policy began, WQIS already had cancelled the Inlet Entities' marine pollution coverage.[7]  The WQIS policy had been cancelled, the Court found, because of the age and condition of the Inlet Entities' vessels.[8]  WQIS's position is that it had cancelled the Inlet pollution policy and would not have continued with the risk regardless of the Inlet Entities' efforts to maintain that coverage.[9]

That Lloyds would not have provided the stand-alone pollution coverage if it had they been fully apprised of the facts surrounding the Inlet Entities and their vessels is supported by the deposition testimony of Lloyds and American E&S Insurance Brokers ("AE&S"), Lloyds' agent.[10]  Philip Sandle, an underwriter at Lloyds, stated that he had "declined risks for far less" reasons.  Christ Elliot of AE&S stated that the combination of circumstances was unprecedented in his experience and would have resulted in denial of the risk.

Evidence that WQIS and Lloyds were the only commercially markets for stand-alone marine pollution coverage that were available to cover the Inlet Entities' vessels is supported by various witnesses.  At the deposition of Forrest V. (Woody) Wilton, Lloyds'

---

[6] See Exhibit A, Goddard Depo. at 34-35, 37-38.

[7] See Sept. 12, 2005, Order from Chambers at 3 (Docket No. 181).

[8] Id. The Court extensively described the cause of WQIS's cancellation. See id. at 26-29.  The Court's conclusion is supported by the deposition testimony of Russ Brown of WQIS.  Mr. Brown testified that WQIS became concerned about the Inlet risks when one of the Inlet Entities' vessels, the MARIN I, had a pollution incident. Exhibit B, Brown Depo. at 4, 8-9, 28, 35, 38.  WQIS asked for current vessel surveys by their designated surveyor. Id. at 35.  When the surveys were not forthcoming, the pollution policy was cancelled. Id. at 40.

[9] See Exhibit B, Brown Depo. at 50, 77.

[10] See Exhibit C, Elliot Decl. ¶13; Exhibit D, Elliot Depo. at 129, 162-63; Exhibit E, Sandle Depo. at 8, 10, 43-45, 46-47.  (These exhibits were attached to Lloyds'

Totem's Motion for Summary Judgment
Lloyds v. Inlet Fisheries, et al. v. Totem et al., A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 7 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

counsel repeatedly had Mr. Wilton confirm that WQIS and Lloyds were the only markets available for the coverage sought by Inlet.[11] The Court recognized this testimony in its September 12, 2005, Order from Chambers at 11 (Docket No. 181), when it stated: "Wilton acknowledged that in 2000 Lloyds (through PSU) and WQIS were the only two issuers of stand-alone marine pollution policies."

At his deposition, Russell Brown of WQIS stated that, in 2000, WQIS and the Lloyds facility had more than ninety-five percent (95%) of the U.S. stand-alone marine pollution market.[12] WQIS alone had about seventy percent (70%) of the market.[13] Mr. Brown stated that as of August 7, 2000, when WQIS cancelled the Inlet Entities' marine pollution policy, WQIS was no longer willing to continue on the risk.[14] He further stated that he doubted whether anyone would insure the risk.[15]

The one other insurer of stand-alone marine vessel pollution insurance which has been identified is Great American Insurance.[16] Great American was a very small player in stand-alone marine pollution insurance.[17] In addition, as stated in the attached Declaration of Valerie Dickover, an experienced Seattle marine insurance broker, given the age, size, and industry of the *QP* and *HARVESTER BARGE,* and Great American's

---

Motion for Summary Judgment (Docket No. 135)).

[11] *See* Exhibit  F, Wilton Depo. at 57, 73-74, 93, 145-46.

[12] Exhibit B, Brown Depo. at 12, 15, 17-18.

[13] *Id.* at 13, 15.

[14] *Id.* at 50, 77

[15] *Id.; see also id.* at 12, 18 (states belief that WQIS's underwriting standards are similar to other marine pollution insurers' standards).

[16] *See* Exhibit G, Brown Decl. ¶ 7. The original of Mr. Brown's declaration was attached to Lloyds' Reply Brief in Support of Summary Judgment.

[17] *See id;* Exhibit B, Brown Depo. at 12, 17-18.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                                    Page 8 of 25

newness to and extreme caution and restraint in covering marine pollution risk, Great American would not have insured the *QP* or *HARVESTER BARGE* for stand-alone for marine pollution risk.[18]  Ms. Dickover notes that a loss history and prior insurance cancellation also would have prompted Great American to decline the risk.  Even Mr. Brown of WQIS stated at his deposition that it was doubtful whether anyone else would have insured the Inlet vessels for marine pollution risks.[19]  Elliot of AE&S testified that the various factors related to the Inlet risks, if presented to a prudent underwriter would cause him to most likely decline the risk.[20]

Not only was Great American a new and very, very small player in stand-alone marine pollution insurance, but it was so small that, when WQIS was moving toward canceling the Inlet Entities' pollution insurance and Totem was searching for others who would provide such coverage, nobody that Totem spoke with even identified Great American.  When WQIS first raised the possibility of canceling their marine pollution coverage, Eric Parthemer of Totem consulted with other brokers about other available markets for stand-alone marine pollution insurance.[21]  The only alternative market identified was Lloyds.[22]  Parthemer repeatedly warned Inlet that it needed to address WQIS's survey request[23] because initially he knew of no other possible market for this

---

[18] *See* Exhibit H, Dickover Decl.
[19] *See*  Exhibit B, Brown Depo. at 50.
[20] *See* Exhibit D, Elliot Depo at 162-63.
[21] *See* Exhibit I, Parthemer 30(b)(6) Depo. at 68, 89-92, 94.
[22] *Id.*
[23] *See id.* at 49, 50 (told Inlet of survey request), 51 (discussed survey request with Klier of Inlet several times).

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

type of risk.[24]  None of Mr. Parthemer's sources led him to Great American as an option, as he never did learn of Great American as a possible option.[25]  Thus, if Lloyds had not provided coverage, no coverage would have been obtained.

As the Court implicitly found in its September 12, 2005, Order from Chambers (Docket No. 181), and as the above witnesses support, other than WQIS and Lloyds, there was no other stand-alone marine pollution coverage that would have covered the relevant Inlet vessels.[26]  In its Order, at 16 n.35, the Court stated that disclosure of an earlier incident would have led Lloyds to the WQIS cancellation and the reasons for it. The Court then stated: "This could have resulted in a rejection by Lloyds, the sole remaining player in the game.  A situation that would have left IFI and IFP without any marine pollution coverage."

### B.  Because Stand-alone Marine Pollution Coverage for Their Vessels Was Not Otherwise Available, The Inlet Entities Have Not Been Harmed

The Inlet Entities cannot establish that Totem's involvement in the voiding of the Lloyds Policy has caused them harm because, except for WQIS, who had cancelled the Inlet Entities' pollution coverage, and Lloyds, no other source of stand-alone marine pollution insurance would have covered the Inlet Entities' *QP* or *HARVESTER BARGE*. Since no other insurer of stand-alone marine pollution insurance would have covered the Inlet Entities' vessels and the Court has found that Lloyds would not have provided

---

[24] *Id.* at 42-43, 50, 54, 67, 68.

[25] *Id.* at 20-21, 68.

[26] In its Order, at 23, the Court recognized that Lloyds was the preeminent insurer of maritime risks and located in London and that New York was the home of WQIS, "the other dominant underwriter of marine pollution insurance."

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 10 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

coverage had they known all material facts, the Inlet Entities have not been harmed by the voiding of the Lloyds Policy and Totem is entitled to summary judgment as a matter of law.

Under Alaska law,[27] a claim of professional negligence requires proof of duty, breach, causation, and damages.[28] The majority rule, when the claim is that a broker did not procure the insurance coverage requested, is that the customer has the burden of showing that the coverage requested was commercially available.[29] This rule has been applied in the context of insurance for vessels.[30]

Here, as this Court implicitly has already found, and as the witnesses support, other than WQIS and Lloyds, there was not other commercially available stand-alone marine pollution insurance that would provide coverage for the size, age, service, and condition of the two Inlet vessels at issue. Thus, the Inlet Entities cannot establish a necessary element of their claim and summary judgment for Totem should be entered.

Numerous decisions support Totem's position on this point. For instance, in

---

[27] Because there is no federal admiralty law addressing the duty of a broker to its client, the law of the state with the greatest interest controls. *Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506, 1510 (9th Cir. 1987); *Lien Ho Hsing Steel Enterprise Co., Ltd. v. Weihtag*, 738 F.2d 1455, 1458 (9th Cir. 1984). Here, while Totem Agencies is a Washington entity, the Inlet Entities are Alaska entities and the vessels to be covered are located in Alaska, so Alaska law should govern.
[28] *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1374 (Alaska 1995).
[29] *Id. (*citing *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.3d 239, 243-44 (Colo. 1987)).
[30] *See, e.g., Grande v. St. Paul Fire & Marine Ins. Co*., 2005 U.S. Dist. LEXIS 6879, **14-16 (D. Maine 2005)(citing cases and finding that plaintiff's claim failed as a matter of law because plaintiff failed to establish that trip insurance would have been

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 11 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

*Grande*, 2005 U.S. Dist. LEXIS at *12, the court noted that to a survive a Rule 50 dismissal motion brought by a defendant insurer and agent, the plaintiff was required to produce evidence that the stand-alone trip insurance at issue existed and could have been provided.  The court cited an abundance of federal and state authority from a variety of jurisdictions for the principle that the plaintiff, in order to support recovery, must show the insurance could have been obtained.[31]  Citing decisions from other jurisdictions, the court even noted that the rule had "been applied in actions involving the procurement of insurance for vessels."[32]  It also noted that it was the majority rule that the plaintiff had the burden of proof that coverage was available for the loss.[33]  The court concluded:  "The Plaintiff offered no evidence that St. Paul wrote trip insurance as a stand alone form of insurance and no evidence that Charter Lakes or another agency could have procured stand alone trip insurance from other insurers. . . . His claim, therefore, fails as a matter of law."[34]  As the court noted, its ruling applied to the various theories of recovery raised by plaintiff because under each theory, the plaintiff would have to show causation: "that there would have been coverage available that would have paid the loss if not for the acts of the Defendants."[35]

---

issued by an insurer).
[31] *Id.* at **12-13.
[32] *Id.* at *14.
[33] *Id.* at *15; *see also* 60 A.L.R. 5th 165, §5, at 185 (1998)("[T]he insured, in order to recover from an insurance agent or broker for procuring inadequate liability insurance coverage, is required to establish that the desired coverage was available when the policy was procured, such showing being an aspect of the element of causation.).
[34] *Id.* at **15-16.
[35] *Id.* at *16 n.9.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment



There is no genuine issue of material fact that, except for WQIS, who had cancelled the Inlet Entities' pollution insurance and would not provide coverage, and Lloyds, whose policy has been declared void and who would not have provided the coverage had it known all material facts, the stand-alone marine pollution insurance sought by the Inlet Entities for its vessels was not available. While Great American was a very small player in that type of coverage, it would not have provided coverage for the Inlet Entities' marine pollution risk. The evidence is that no reasonable insurer would have, given the age and condition of the Inlet vessels, and the loss history and insurance history of the Inlet Entities. Accordingly, the Inlet Entities cannot establish that they have been harmed by the cancellation of the Lloyds Policy and summary judgment in favor of Totem and against the Inlet Entities is appropriate.

## IV. TOTEM IS ENTITLED TO SUMMARY JUDGMENT AGAINST IFI BECAUSE IFI HAS NOT PAID AND HAS NO ABILITY TO PAY DAMAGES TO CLAIMANTS AND LLOYDS WOULD HAVE HAD NO OBLIGATION TO INDEMNIFY IFI

The Lloyds Policy was an indemnity policy, requiring Lloyds to reimburse IFI only after IFI had become liable for <u>and paid</u> covered losses. Because IFI has no ability to pay losses, Lloyd's indemnity obligation would not have been triggered. Thus, Totem's actions related to the voiding of the Lloyds Policy has not harmed IFI.

### A. Facts Relevant to This Ground for Summary Judgment

Vince Goddard is the sole shareholder and president of IFI.[36]  He has testified

---

[36] *See* Exhibit J, Goddard IFI Depo. at 9.  Vince Goddard testified at three depositions on November 9 and 10, 2005.  The three depositions were Mr. Goddard's personal deposition (Exhibit A), the 30(b)(6) deposition of IFI (Exhibit J), and the 30(b)(6) deposition of IFP (Exhibit K).  Herein, the are respectively referred

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                           Page 13 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

that in August 2002, the *QP* was owned by IFI, but that IFI is not a operating company,
has had no employees since 2001, stopped operating in the spring of 2001, and was
not an operating company at the time of the August 2002 *QP* incident.[37] He testified
that IFI has proceeded through bankruptcy twice, most recently a liquidating
bankruptcy.[38] At the time of the *QP* incident, IFI was in bankruptcy and did not have the
assets or resources to respond to the incident.[39] As to the current financial condition of
IFI, Mr. Goddard testified that IFI has no assets (aside from its claim against Totem)
and has about $4 million in liabilities.[40] Finally, Mr. Goddard has testified that IFI has
not paid any portion of the NPFC response bill and has not paid anything to the Bethel
Plaintiffs.[41] In fact, Mr. Goddard testified that IFI has no assets, lines of credit, or ability
to borrow sums with which to pay anything to claimants.[42] Mr. Goddard said he would
consider loaning money to IFI with which to pay claimants, but only if an insurer would
guarantee his repayment.[43]

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

---

to as the "Goddard Depo." the "Goddard IFI Depo.," and the "Goddard IFP Depo."
[37] *Id.* at 23, 48-49; Exhibit A, Goddard Depo. at 10, 14, 67.
[38] Exhibit A, Goddard Dep. at 13-14.
[39] *Id.* at 77-78.
[40] *Id.* at 14; Exhibit J, Goddard IFI Depo. at 10-13, 20-22.
[41] *See* Exhibit A, Goddard Depo. at 72, 75-76, 79; Exhibit J, Goddard IFI Depo. at
35-36, 47-48.
[42] *See* Exhibit J, Goddard IFI Depo. at 12-14.
[43] *Id.* at 12-13.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 14 of 25

**B.  IFI Has Not Been Harmed Because It Has Not Paid and Cannot Pay Any Claims Against It**

As this Court has recognized in an earlier Order, the Inlet Entities' Lloyds Policy was an indemnity policy.[44]  Lloyds would have had no obligation to pay until the Inlet Entities had become liable for and paid a loss.[45]  The fact that an entity has proceeded through bankruptcy and is insolvent is irrelevant to this outcome.[46]  Since the Lloyds Policy is an indemnity policy and Lloyds had no obligation to pay under the policy until such time as IFI had paid, Lloyds would have no payment obligation here because, as Mr. Goddard admitted, IFI did not and does not have the ability to pay any damages or claims arising from the *QP* incident.  Thus, IFI has not been harmed by the voiding of the Lloyds Policy.[47]

Mr. Goddard candidly described IFI's diminished status at the time of the *QP* incident and its then and current inability to pay any judgment or settlement against it.  Essentially, IFI had ceased to exist long before the August 2002 incident.  The company was proceeding through liquidating bankruptcy and had ceased operation.  Currently it has no assets or employees, but continues to have about $4 million in liabilities.  Mr. Goddard testified that IFI had no ability to borrow funds to pay any

---

[44] *See* Oct. 20, 2004, Order from Chambers at 15 & n.44 (Docket No. 126) (the indemnity language in the policy (Exhibit M to this Motion) is quoted in the Court's footnote 44 on page 15 of its Order).

[45] *Id.*

[46] *Id.* (citing *Dicola v. American Steamship Owners Mutual Protection & Indemnity Ass'n, Inc.* (*In re Prudential*), 158 F.3d 65, 75 (2d Cir. 1998)).

[47] As stated above, under Alaska law, a claim of professional negligence requires proof of duty, breach, causation, and damages. *See Blomfield*, 907 P.2d at 1374.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                          Page 15 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

settlements, with the possible exception of a loan from Mr. Goddard himself. Even he, however, would not loan IFI funds to pay any settlement or judgment unless an insurer would guarantee his repayment. There is no evidence that any insurer would provide such a guarantee.

Under the circumstances, Lloyds' obligation to indemnify IFI would never have been triggered. IFI would not have had the ability to pay, thus would not have been paid. The simple fact that, immediately after the *QP* incident, IFI declared its inability to respond to the incident because of a lack of resources, only serves to emphasize IFI's inability to pay. Thus, the voiding of the Lloyds Policy has not harmed IFI. Because IFI has not been harmed, it cannot establish an element of its claim against Totem and, as a matter of law, Totem is entitled to summary judgment.

## V. TOTEM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE INLET ENTITIES BREACHED THE LLOYDS POLICY CONDITION THAT THEY MAINTAIN P&I COVERAGE, VOIDING THEIR POLLUTION COVERAGE

At the time of their respective losses, IFI did not have P&I insurance on the *QP* and IFP did not have P&I insurance on the *HARVESTER BARGE*. The Lloyds Policy required that such insurance be maintained. Thus, the Inlet Entities breached the P&I insurance warranty, relieving Lloyds of any obligation. Since Lloyds would not have covered any way, the Inlet Entities have not been harmed by Totem's actions.

### A. Facts Relevant to this Ground for Summary Judgment

The Lloyds Policy was conditioned upon the Inlet Entities obtaining and

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.*, A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 16 of 25

maintaining P&I insurance through the full period of the pollution coverage.[48]   The

Court recognized this warranty in its September 12, 2005, Order from Chambers at

39 n.98 (Docket No. 181).   There, the Court noted that the OPA Quotes included

the following: "Subject to: P&I Insurance to be purchased and maintained during the

full period of pollution policy."  The Court continued:  "In accepting the OPA quote

and requesting the policy be bound, Inlet impliedly warranted that it would purchase

(or had purchased) and maintain P&I insurance.  If that were not true, Inlet not only

failed to act in utmost good faith it also breached its warranty."

The Inlet Entities, through their president Vince Goddard, have admitted that, at

the time of *QP* incident and at the time of the *Harvester Barge* incident, IFI and IFP,

respectively, did not have P&I or hull and machinery coverage for their vessels.[49]

Thus, the Inlet Entities breached their warranty and would not have had coverage in

any event.

### B. The Inlet Entities' Breach of the P&I Insurance Warranty Voided Their Coverage

Under the federal admiralty rule applicable to breaches of warranties in marine

insurance contracts, the Inlet Entities' failure to comply with the P&I insurance warranty

of their Lloyds Policy relieves Lloyds of its obligations under the policy, regardless of

any causal connection.  Because the Inlet Entities' breaches of the P&I insurance

---

[48] *See* Exhibit L, OPA Quotes.  These quotes were Exhibits P-R to Totem's
Opposition to Lloyds' Motion for Summary Judgment (Docket No. 152) and were
authenticated in the Declaration of Eric Parthemer attached to that Opposition.
[49] *See* Exhibit A, Goddard Depo. at 55-56, 65-66; Exhibit J, Goddard IFI Depo. at 37-

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                   Page 17 of 25

warranty relieves Lloyds of its obligations, the Inlet Entities have not been harmed by any act or failure to act by Totem.  Accordingly, Totem is entitled to summary judgment.

"[S]tate law will control the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice."[50]  Here, there exists a judicially fashioned admiralty rule addressing breaches of warranties in marine insurance contracts.  In *Albany Insurance Company v. Jones*, 1996 U.S. Dist. LEXIS 22780, 1997 A.M.C. 1407 (D. Alaska 1996), this Court recognized that a breach of warranty contained in a marine insurance policy relieved the insurer of obligations under the policy.  The Court recognized that the Ninth Circuit had "not considered the issue of express warranties in the context of marine insurance."[51]  The Court recognized that, at that time, only one Ninth Circuit district court that had considered the issue had held that the federal admiralty rule was that a breach of an express trading or navigation warranty relieved the insurer from obligations under the policy, "even if compliance with the warranty would not have avoided the loss."[52]  Because the operator warranty was an essential part of the insurance contract, the Court stated, "compliance with an operator warranty should be held to the same strict standard as compliance with a navigation warranty."[53]

---

38, Exhibit K, Goddard IFP Depo. at 10-11.
[50] *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 510 (9th Cir. 1984).
[51] 1996 U.S. Dist. LEXIS at **6-7.
[52] *Id.* The case cited by the Court was *Port Lynch v. New England Intern. Assurety of Am.*, 754 F. Supp. 816, 823 (W.D. Wash. 1991).  The district court in *Port Lynch* relied upon the Eleventh Circuit decision in *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988).
[53] *Id.* at *8.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 18 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Since this Court's decision in *Jones*, the federal district court in Hawaii also has recognized that there is a judicially established federal admiralty rule requiring that a warranty in a marine insurance policy be strictly enforced.[54] The Hawaii district court "based its conclusion on four cases stating that, under federal law, a marine insured must strictly comply with a policy's express warranties in order to be covered under that policy."[55] Among the cases the Hawaii district court relied upon was this Court's *Jones* decision and the Western District of Washington's *Port Lynch* decision.

Courts in other jurisdictions also have recognized that there exists an established federal admiralty law addressing breaches of insurance warranties and that the warranties are strictly enforced regardless of causation.[56] As stated in *Hilton,* 75 F.3d at 630:

"[a] breach of warranty discharges the insurer from liability and deprives

---

[54] *See Yu v. Albany Insurance Co.,* 281 F.3d 803, 808 (9th Cir. 2002)("In this case, the district court . . . determined that there was a judicially established federal admiralty rule requiring captains warranties to be strictly enforced). On appeal, the Ninth Circuit found that it need not decide whether federal or state law governed because violation of the warranty suspended coverage under both the federal and the state laws. *Id.* at 808-09. This is an implicit recognition of an established federal rule governing marine insurance warranties. *See* Sept. 12, 2005, Order from Chambers at 21 (Docket No. 181) (Ninth Circuit, although not expressly ruling on whether *uberrimae fidei* trumps contrary state law, recognizes the doctrine as part of established admiralty law).

[55] *Id.*

[56] *See Hilton Oil Transport v. Jonas,* 75 F.3d 627, 630 (11th Cir. 1996); *Connecticut Indemnity Co. v. Palivoda,* 2005 U.S. Dist. LEXUS 24511, **7-8 (M.D. Fla. 2005)(navigational warranty); *Jefferson Ins. Co. of New York v. Huggins,* 2000 A.M.C. 2357, 2358-59 (N.D. Tex. 2000)(lay up warranty); *New York Marine & General Ins. Co.,* 1993 U.S. Dist. LEXIS 14112, **4-7, 1994 A.M.C. 976 (E.D. La. 1993)(classification and adventure clauses).

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                     Page 19 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

the assured from recourse against the insurer, whether the loss can be traced to the breach or not and even though such breach was innocently or inadvertently committed by the assured." . . . The admiralty cases that support this principle are legion and form a judicially established and entrenched federal admiralty rule.

Accordingly, here, federal admiralty law, not state law, applies and, under the admiralty law rule, the Inlet Entities' breach of the P&I insurance warranty relieved Lloyds of any obligations under the Lloyds Policy.

The Inlet Entities have admitted, through Vince Goddard, their president, that they did not have P&I Insurance on the *QP* and the *HARVESTER BARGE* at the time of their losses. The absence of P&I insurance affects a pollution insurer's risk. The Lloyds Policy states: "In the event that there is other insurance which inures to the benefit of the Assured covering any loss, liability, cost or expense set forth in Section FIRST to SIXTH, this Insurance Policy shall not respond until such other insurance is exhausted."[57] P&I insurance would have provided coverage for the wreck removal expenses.[58] The absence of P&I insurance, therefore, affects a pollution insurer's risk and is material to the coverage.[59] The Inlet Entities' failure to maintain the P&I coverage would release Lloyds of liability under the Lloyds Policy. Accordingly, the Inlet Entities cannot establish that Totem has caused them any harm and Totem is entitled to summary judgment.

---

[57] *See* Exhibit M, at 9.

[58] *See* 2 T. Schoenbaum, <u>Admiralty & Maritime L.</u> §19-12, at 289 (4th ed. 2004); Exhibit D, Elliot Depo. at 75-76 (P&I significant for wreck removal because if no P&I in force and government says remove the wreck, wreck removal falls on pollution insurer); Exhibit F, Wilton Dep. at 40.

[59] Exhibit D, Elliot Depo. at 75-76; Exhibit B, Brown Depo. at 21-22.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 20 of 25

## VI.  TOTEM IS ENTITLED TO SUMMARY JUDGMENT ON AT LEAST OF PORTION OF IFI'S DAMAGES BECAUSE THOSE DAMAGES WOULD NOT HAVE BEEN COVERED BY THE LLOYDS POLICY

To the extent any damages are claimed by IFI that are related to wreck removal expenses, the Inlet Entities are precluded from recovering such damages because they failed to maintain P&I insurance on the *QP*.  As stated above and as noted by the Court in its earlier order, IFI warranted that it would maintain P&I coverage at the beginning and throughout the term of the Lloyds Policy.  As admitted by the IFI president, the P&I insurance on the *QP* was cancelled prior to the *QP* incident.  After the *QP* incident, the *QP* was scuttled at federal expense.  P&I insurance would have provided coverage for the wreck removal expenses.  Thus, any damages that IFI incurs as a result of the wreck removal arise from its breach of warranty and failure to maintain the P&I insurance, not any failure of Totem.

### A.  Facts Relevant to this Ground For Summary Judgment

As stated above, the Lloyds Policy was conditioned upon the Inlet Entities obtaining and maintaining P&I insurance through the full period of the pollution coverage.[60]  As also stated above, the Inlet Entities, through their president Vince Goddard, have admitted that, at the time of *QP* incident and at the time of the *Harvester Barge* incident, IFI and IFP, respectively, did not have P&I or hull and machinery coverage for their vessels.[61]  P&I insurance covers wreck removal expenses.[62]  The

---

[60] *See* Exhibit L, OPA Quotes.  The Court recognized this requirement in its September 12, 2005, Order from Chambers at 39 n.98 (Docket No. 181).
[61] *See* Exhibit A, Goddard Depo. at 55-56, 65, 66, Exhibit J, Goddard IFI Depo. at 37-38, Exhibit A, Goddard IFP Depo. at 10-11.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                   Page 21 of 25

Lloyds Policy states: "In the event that there is other insurance which inures to the benefit of the Assured covering any loss, liability, cost or expense set forth in Section FIRST to SIXTH, this Insurance Policy shall not respond until such other insurance is exhausted."[63]

The National Pollution Funds Center has submitted a claim to the Inlet Entities for expenses related to the *QP* incident.[64]  That claim contains expenses related to Magone Marine's removal and disposal of the *QP*.[65]

### B.  Certain of the NPFC Claimed Amount are for Wreck Removal, Which Would Have Been Covered by a P&I Policy

But for IFI's failure to maintain P&I insurance on the *QP*, as required by the Lloyds Policy, the expenses relating to the disposal and scuttling of the *QP* would have been covered.  Thus, even though, as explained above, a causal link need not exist between a breach of warranty and a damage sustained, here such a causal link exists. Accordingly, Lloyds would not have been obligated to pay the wreck removal expenses related to the *QP*, even if the Lloyds Policy had not been declared void.  Thus, Totem's actions have not caused IFI this element of damage.

Several of the legal principles governing this basis for summary judgment are described above.  They include the requirement that, to establish its claim against

---

[62] *See* Exhibit B, Brown Depo. at 21-22; Exhibit D, Elliot Depo, at 75-76; Exhibit F, Wilton Dep. at 40.
[63] *See* Exhibit M, at 9.
[64] *See* Exhibit N, excerpts from NPFC claim.
[65] *See id.* at 16-32, Magone Marine handled the floating and scuttling of the *QP*. *See* Exhibit O, Goddard October 10, 2003 Affidavit, which was attached to support Inlet's October 2003 Motion to Transfer.

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 22 of 25

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Totem, IFI must establish damages caused by Totem's breach of duty,[66] and that by breaching a warranty, the marine insurer is relieved from obligations under the policy.[67] In addition, a client, to establish a claim against its broker, must establish that the loss at issue would have been covered under the policy.[68]

Here, $380,268.30 of the amount incurred by the NPFC in responding to the *QP* incident was for Magone Marine's efforts to stabilize and scuttle the vessel.[69] These are wreck removal expenses that would have been covered by a P&I policy, if, as it was required to do under the Lloyds Policy, IFI had maintained its P&I policy on the vessel. As admitted by IFI's president, by the time the *QP* incident occurred, IFI had cancelled its P&I policy on the *QP*. Because of this breach of the warranty to maintain P&I coverage, Lloyds would have had no obligation to pay the wreck removal expenses, even if its policy had not been declared void. Thus, the voiding of the Lloyds Policy has not harmed IFI and Totem is entitled to summary judgment to the extent of the expenses related to the stabilizing and scuttling of the *QP*.

## VII. CONCLUSION

As established above, there is no genuine issue of material fact on any of the

---

[66] *Blomfield,* 907 P.2d at 1374.

[67] *Jones*, U.S. Dist. LEXIS at *8, and cases cited in Section V.B *supra*.

[68] *See Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298, 300 (Tex. Civ. App. 1979)(directed verdict against insured in claim against broker because plaintiff insured "did not bring the loss under the coverage of *any* policy shown by the evidence to be available."); *Pacific Dredging Co. v. Hurley,* 397 P.2d 819, 828 (Wash. 1964)(plaintiff, in claim against its broker, failed to prove policy would have insured against the particular risk of sinking, even if the requested endorsement had been obtained).

[69] *See* Exhibit N, at 18-32 (Magone Authorizations and Invoices).

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 23 of 25

grounds upon which Totem bases its summary judgment motion. The facts support Totem's entitlement to summary judgment on the following grounds: (1) no insurer that would have provided the marine pollution insurance sought by the Inlet Entities; thus, they cannot establish that Totem has harmed them; (2) IFI does not have assets with which to satisfy any judgment or settlement; thus it cannot meet the indemnity requirements of the Lloyds Policy and has suffered no harm as a result of the voiding of that policy; (3) the Inlet Entities breached the P&I warranty of their policy by not having P&I insurance at the time of their respective pollution incidents; thus, they would not have had coverage and have not been harmed by the voiding of the Lloyds Policy; and (4) because IFI did not have P&I coverage, as required by the Lloyds Policy, it cannot recover wreck removal expenses from Totem.   For the reasons stated above, Totem hereby requests entry of summary judgment in its favor and against the Inlet Entities.

DATED this 16th day of December 2005 at Anchorage, Alaska.

MATTHEWS & ZAHARE, P.C.
Counsel for Third-Party Defendant Totem
Agencies, Inc.

By _____
          Thomas A. Matthews
          ABN:  8511179

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment                                    Page 24 of 25

Certificate of Service

I certify that on this16th day of December 2005, I
caused to be mailed the foregoing document
to the following:

Brewster H. Jamieson, Esq.
Lane Powell Spears Lubersky LLP
301 W. Northern Lights Blvd., Suite 301
Anchorage, AK 99503
Counsel for Certain Underwriters at Lloyds, London
  And American E & S

Christopher W. Nicoll, Esq,.
Nicoll Black Misenti & Feig PLLC
816 Second Ave., Suite 300
Seattle, WA 98104
Co-Counsel for Certain Underwriters at Lloyds
  And American E & S

John A. Treptow, Esq.
Jahna M. Lindemuth, Esq.
Dorsey & Whitney LLP
1031 West 4th Ave., Suite 600
Anchorage AK 99502
Counsel for Inlet Fisheries, Inc. & Inlet Fish Producers, Inc.

Joyce L. Wylie

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Totem's Motion for Summary Judgment
*Lloyds v. Inlet Fisheries, et al. v. Totem et al.,* A04-0058 CI
KGS:jlw\3500-13\MtnSummaryJudgment

**TOTEM'S MOTION FOR SUMMARY JUDGMENT**
**INDEX TO EXHIBITS**

Affidavit of Counsel

A.    Vincent Goddard Deposition

B.    Russell Brown Deposition

C.    Chris Elliot Declaration

D.    Chris Elliot Deposition

E.    Philip Sandle Deposition

F.    Forrest "Woody" Wilton Deposition

G.    Russell Brown Declaration

H.    Valerie Dickover Declaration

I.    Eric Parthemer 30(b)(6) Deposition

J.    Vincent Goddard Inlet Fisheries, Inc. Deposition

K.    Vincent Goddard Inlet Fish Producers Deposition

L.    OPA Quotes

M.    Lloyds' Policy

N.    NPFC Invoice

O.    Vincent Goddard Affidavit

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Thomas A. Matthews
Matthews & Zahare, P.C.
431 W. 7th Ave., Suite 207
Anchorage, Alaska  99501
Phone:          (907)276-1516
Fax:              (907)276-8955
tom.matthews@matthewszahare.com

Counsel  for Totem Agencies, Inc.

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| INLET FISHERIES, INC., an Alaska Corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation, | ) ) ) |
| Defendants. | ) ) |
| INLET FISH PRODUCERS, INC., an Alaskan Corporation, | ) ) ) |
| Third-Party Plaintiffs, | ) ) |
| vs. | ) ) |
| TOTEM AGENCIES, INC., a Washington Corporation, and AMERICAN E & S INSURANCE BROKERS CALIFORNIA, INC. a Washington corporation, | ) ) ) ) |
| Third-Party Defendants. | ) ) ) |

USDC Alaska No.:  A04-0058 CV (JWS)

**AFFIDAVIT OF KENNETH G. SCHOOLCRAFT, JR.**

STATE OF ALASKA           )
                          ) ss
THIRD JUDICIAL DISTRICT   )

I, Kenneth G. Schoolcraft, Jr., upon oath, depose and state as follows:

1.  I am one of the counsel for Totem Agencies, Inc.  I am competent to make this declaration.  Unless otherwise stated below, this affidavit is based upon personal knowledge.

2.  Attached hereto as Exhibit A is a true and correct copy of excerpts from the deposition of Vincent Goddard.

4.  Attached hereto as Exhibit B is a true and correct copy of excerpts from the deposition of Russell Brown.

5.  Attached hereto as Exhibit C is a true and correct copy of the Declaration of Chris Elliot, the original of which was attached to Lloyds' Motion for Summary Judgment (Docket No. 135).

6.  Attached hereto as Exhibit D is a true and correct copy of excerpts from the deposition of Chris Elliot.

7.  Attached hereto as Exhibit E is a true and correct copy of excerpts from the deposition of Philip Sandle.

8.  Attached hereto as Exhibit F is a true and correct copy of excerpts from the deposition of Forrest V. (Woody) Wilton.

9.  Attached hereto as Exhibit G is a true and correct copy of the Declaration of Russell Brown, the original of which was attached to Lloyds' Reply Brief in

Affidavit of Kenneth G. Schoolcraft, Jr. (In Support of MFSJ)
*Certain Underwriters at Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\AffKGSforMFSJ                                          Page 2 of 4

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Support of Summary Judgment, filed in this action.

10.   Attached hereto as Exhibit H is a faxed copy of the original Declaration of Valerie Dickover.

11.   Attached hereto as Exhibit I is a true and correct copy of the excerpts from deposition of Eric Parthemer.

12.   Attached hereto as Exhibit J is a true and correct copy of excerpts from the 30(b)(6) deposition of Vincent Goddard, for IFI.

13.   Attached hereto as Exhibit K is a true and correct copy of excerpts from the 30(b)(6) deposition of Vincent Goddard, for IFP.

14.   Attached hereto as Exhibit L are a true and correct copies of OPA quotes, which were included as Exhibits P-R of Totem's Opposition to Lloyds' Motion for Summary Judgment (Docket No. 152) and which were authenticated therein by the Affidavit of Eric Parthemer.

15.   Attached hereto as Exhibit M is a true and correct copy of the Lloyds Policy, which was included as Exhibit 4 of Lloyds Motion for Summary Judgment (Docket No. 135) and which was authenticated therein by the Declaration of Chris Elliot.

16.   Attached hereto as Exhibit N is a true and correct copy of excerpts from the NPFC records related to the QP incident.  These documents were received in response to a FOIA request by Lloyds' counsel and produced in this litigation.

17.   Attached hereto as Exhibit O is a true and correct copy of the Oct. 10,

Affidavit of Kenneth G. Schoolcraft, Jr. (In Support of MFSJ)
*Certain Underwriters at Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\AffKGSforMFSJ                                                          Page 3 of 4

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

2003, Affidavit of Vince Goddard, the original of which was attached as support for

Inlet's October 2003 Motion to Transfer.

DATED this 16th day of December 2005, at Anchorage, Alaska.

_____
Kenneth G. Schoolcraft, Jr.


SUBSCRIBED and sworn to before me this 16th day of December 2005, at Anchorage, Alaska.

_____
NOTARY PUBLIC in and for Alaska
My Commission Expires:  4-5-06

MATTHEWS & ZAHARE, P.C.
ATTORNEYS AT LAW
431 WEST 7TH AVENUE, SUITE 207
ANCHORAGE, ALASKA 99501
TEL (907) 276-1516 • FAX (907) 276-8955
E-MAIL: mzlaw@matthewszahare.com

Affidavit of Kenneth G. Schoolcraft, Jr. (In Support of MFSJ)
*Certain Underwriters at Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\AffKGSforMFSJ                                        Page 4 of 4