John A. Treptow, ABA #7605059
Wendy E. Leukuma, ABA #0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501-5907
Telephone: (907) 276-4557
Facsimile: (907) 276-4152

Attorneys for Inlet Fisheries, Inc.
 and Inlet Fish Producers, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., <br><br>　　　　　Plaintiff,<br><br>vs.<br><br>INLET FISHERIES, INC., an Alaska corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation,<br><br>　　　　　Defendants and Third-Party Plaintiffs,<br><br>vs.<br><br>TOTEM AGENCIES, INC., a Washington corporation,<br><br>　　　　　Third-Party Defendant. | Case No. A04-0058 CV (JWS)<br><br>**INLET FISHERIES, INC.'S AND INLET FISH PRODUCERS, INC.'S MOTION FOR RECONSIDERATION** |

Defendants and third-party plaintiffs Inlet Fisheries, Inc. and Inlet Fish Producers, Inc. (collectively "Inlet") move for reconsideration under Federal Civil Rule 59(e). New evidence, and the legal significance of that evidence, warrants reconsideration of the Court's September 12, 2005 Order, wherein it found that Inlet failed to disclose material

facts, thus breaching the duty of *uberrimae fidei*. At a minimum, there are genuine issues of material fact about whether Inlet's alleged omissions were material to the procurement of insurance under industry standards.

This Court, in its Order of September 12, 2005 (Docket No. 181), ruled that (1) the doctrine of *uberrimae fidei* applied to vessel marine pollution insurance; (2) the Inlet entities failed to disclose material facts to Lloyds; and (3) nondisclosure of those material facts, prior to the issuance of the Lloyds policy, breached the doctrine of *uberrimae fidei*, thus entitling Lloyds to have its policy declared void.

In its September 12, 2005 Order, the Court stated: "The court must look at the facts that were not disclosed to determine the materiality of each to the underwriting process." (Docket No. 181, p. 24) This was in accord with the well-settled principle that "whether a particular representation be material or not is, in each case, a question of fact." Arnould, LAW OF MARINE INSURANCE AND AVERAGE, §§ 613, 676 at 465, 519 (16th ed. 1981).

In determining whether the nondisclosed facts were material, this Court relied primarily on the Declaration of Russell Brown of WQIS, the leading marine pollution insurer in the United States, to substantiate the self-serving affidavits given by the Lloyds witnesses for what information was material in the industry in the procurement of vessel marine pollution insurance:

> The only competent evidence of an industry standard is that presented by the deposition testimony of Messrs. Hargrave, Sandle, and Dawe (familiar with the underwriting requirements of Lloyds) discussed above and the Declaration of Russell Brown, an underwriter for WQIS. Mr. Brown in his Declaration stated unequivocally that prior loss history of the insured, vessel condition, and prior cancellation by a pollution insurer are among the most important facts considered in evaluating risk and setting policy conditions.

(Docket No. 181, pp. 31, 32)

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

The subsequent Rule 30(b)(6) deposition of Russell Brown on behalf of WQIS taken on December 8, 2005, and documents produced at that deposition, contradict Russell Brown's Declaration relied on by this Court. This new evidence, and the legal significance of that evidence on the industry standards of materiality, warrants reconsideration of the Court's September 12, 2005 Order, wherein it found that Inlet failed to disclose *material* facts, thus breaching the duty of *uberrimae fidei*.

Lloyds filed the Brown Declaration in conjunction with its Reply to Inlet's Opposition to Motion for Summary Judgment and Opposition to Inlet's Cross-motion for Summary Judgment. (Docket No. 166) Prior to the filing of the Declaration, Mr. Brown had not been identified in Lloyds' Initial Disclosures or its Preliminary Witness List. On the day Brown's Declaration was filed, two years after the commencement of litigation, Lloyds filed a Supplemental Witness List naming him for the first time. (Docket No. 162) WQIS only produced underwriting files for Inlet for the policy years 1992-2001 at Mr. Brown's deposition in December 2005. (Ex. A, WQIS Rule 30(b)(6) Dep., p. 7)

The Brown Declaration submitted by Lloyds with its reply brief stated, *inter alia*:

> Prior loss history, vessel condition, and prior cancellation by a pollution insurer…are among the most important facts that WQIS considers in evaluating a risk and setting policy conditions. Because of our dominance in this field, I consider the practices of WQIS and myself to be relevant to the industry standards in our field. The practice of WQIS within the field of vessel pollution insurance is to consider these factors in determining whether to accept a risk and setting the premium. (Brown Dec., ¶ 13)

Despite Mr. Brown's Declaration on what facts are material to underwriting pollution insurance, WQIS's actual underwriting practices discovered at this deposition and in the newly produced underwriting documents tell another story about WQIS and industry standards.

WQIS first insured Inlet's vessels the QP and the MAREN I starting on June 12, 1992. (Ex. A, WQIS Rule 30(b)(6) Dep., p. 55)  In connection with the <u>initial</u> policy issued by WQIS to Inlet, the underwriting documents show that WQIS did not require an application or request any information beyond the minimal information it had before binding vessel pollution insurance:

> (1)  In contacting WQIS about Inlet's initial placement in 1992, Mr. Parthemer at Totem simply sent a fax to WQIS which stated (a) the name of the insured—Inlet Fisheries, Inc.; (b) a request for $500,000 in coverage for "MAREN I 96 net—96 gross ton 2 QANIRTUUQ PRINCESS 276 gross tons—both non-motorized barges operating port risk in Bethel, Alaska. Please advise."

(Ex. B, WQIS Rule 30(b)(6) Dep. Ex. 23)

> (2)  WQIS's response to Mr. Parthemer's fax was as follows: "We confirm binding coverage for the following barges under OPA to a limit of $500,000 each vessel effective June 12, 1992 through 1993—MAREN I GRT 96 OPA $500,000--$130; QANIRTUUQ PRINCESS GRT 276--$219."

(Ex. C, WQIS Rule 30(b)(6) Dep. Ex. 24, p. WQIS768)[1]

In 1997, Inlet added the vessels YUKON II and RANGER to the WQIS policy. Totem simply sent a fax to WQIS requesting that the YUKON II and the RANGER be added to the subject policy. The fax specified the Gross Registered Tonnage of each vessel and that "These are floating platforms used for fish processing." (Ex. E, WQIS

---

[1] See also <u>id.</u>, Totem Rule 30(b)(6) Dep., p. 22. Subsequent to the Court's September 12, 2005 Order granting Lloyds' motion, the Rule 30(b)(6) deposition of Eric Parthemer for Totem Agencies, Inc. was also taken. Mr. Parthemer likewise testified that (1) this was his and Inlet's first experience in placing standalone vessel pollution insurance, (2) he was not familiar with the Oil Pollution Act of 1990 or CERCLA, (3) he was seeking insurance for "generically water pollution liability," and (4) Totem was unaware at the time of the doctrine of *uberrimae fidei*/duty of utmost good faith. (Ex. D, Totem Rule 30(b)(6) Dep., pp. 20, 21, 23 & 24, 82, 83)

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

Rule 30(b)(6) Dep. Ex. 6, p. WQIS594) WQIS bound coverage based on this information. (Ex. F, WQIS Rule 30(b)(6) Dep. Ex. 6, p. WQIS584)

In June 1999, WQIS added the FORT YUKON to the Inlet policy based on the following statement from Totem: "The FORT YUKON is a 197-foot by 40-foot utility barge built in Portland, OR by the U.S. Navy in 1963, GRT 1403, net 1403. Is this enough information to quote? If not, please let me know what additional information you need." (Ex. G, WQIS Rule 30(b)(6) Dep. Ex. 8, p. WQIS645) Also in 1999, IFPI and Arctic Salmon, Inc. were added as additional insureds under the policy. (Ex. H, WQIS Rule 30(b)(6) Dep. Ex. 8, p. WQIS649) WQIS requested no information about these two entities.

In 2000, WQIS added the HARVESTER BARGE to the policy. The only information WQIS had regarding the HARVESTER BARGE was its Gross Registered Tonnage (670). (Ex. I, Townsend Dep. Ex. 6, p. TOT01361)

WQIS's conduct in initially underwriting Inlet and its vessels, and in all subsequent renewals, demonstrated that WQIS never considered the Inlet entities' prior loss history, vessel condition, prior cancellation "as factors in determining whether to accept a risk and setting a premium," directly contradicting Mr. Brown's declaration about WQIS and industry standards. (Ex. A, WQIS Rule 30(b)(6) Dep., p. 4, ¶ 13; Ex. J, WQIS Rule 30(b)(6) Dep. Ex. 11) At a minimum, genuine issues of material fact exist about the materiality of information in the procurement of vessel pollution insurance.

This Court also stated in its decision that "cancellation of a policy by a previous insurer is likewise material." (Docket No. 181, p. 26)

> The logical inference to be drawn from these facts is that the vessel condition was of significant, if not paramount, concern to WQIS…. The critical point that Inlet and Totem fail to grasp is the fact that WQIS had received information, i.e., a marine survey, that gave rise to concerns about the condition of the Inlet vessels.

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

(Docket No. 181, pp. 20, 29)  New evidence from the Brown deposition shows that as of August 2000, however, when the Inlet policy was cancelled, WQIS knew <u>nothing</u> about the ages and condition of three of the four vessels insured by WQIS.  (Ex. A, WQIS Rule 30(b)(6) Dep., pp. 77, 78)  Brown testified that WQIS, prior to June 2000, never requested a survey of any Inlet vessels despite having insured the Inlet vessels for eight years.  (Ex. A, WQIS Rule 30(b)(6) Dep., pp. 28, 60)  Mr. Brown testified that regardless of the condition of the vessels or whether the premium had been paid, WQIS no longer wanted to be on the risk "under any circumstances."  (Ex. A, WQIS Rule 30(b)(6) Dep., p. 50)

Rather than concern about the condition of the vessels, what resulted in the cancellation of the WQIS policy was the fact that Inlet made a claim on the WQIS policy for the MAREN I spill in May 2000.  WQIS decided that regardless of the condition of the vessels or whether their premiums had been paid, WQIS was going to cancel the policy.  (Ex. A, WQIS Rule 30(b)(6) Dep., p. 82)  Contrary to this Court's finding, it was not the vessel conditions or the results of any survey that led to WQIS's cancellation of insurance.

At a minimum, there are genuine issues of material fact about whether the alleged omissions of Inlet were in fact material to the procurement of vessel pollution insurance. This Court relied on the Declaration of Brown as a WQIS employee to establish industry standards for materiality.  There is disputed evidence about what WQIS, and thus the industry, considered material in binding such policies.  Based on newly discovered evidence, this Court should reconsider summary judgment for Lloyds and set these fact issues for trial.

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

IFI'S AND IFPI'S MOTION FOR RECONSIDERATION
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al.*, Case No. A04-0058 CV (JWS)   Page 6 of 7

DATED this 6th day of January, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP
Attorneys for Inlet Fisheries, Inc. and
Inlet Fish Producers, Inc.

By: s/John A. Treptow
John A. Treptow, ABA #7605059
Wendy E. Leukuma, ABA #0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501
Phone: 907-276-4557
Fax: 907-276-4152
Email: treptow.john@dorsey.com
Email: leukuma.wendy@dorsey.com

CERTIFICATE OF SERVICE

This certifies that on the 6th day of January, 2006,
a copy of the foregoing document was served
electronically on:

Thomas A. Matthews
Matthews & Zahare, P.C.
431 W. 7th Avenue, Suite 207
Anchorage, AK 99501

Brewster H. Jamieson
Lane Powell
301 West Northern Lights Boulevard, Suite 301
Anchorage, AK 99503-2648

Christopher W. Nicoll
Nicoll Black Misenti & Feig, PLLC
816 Second Avenue, Suite 300
Seattle, WA 98104-1502

s/John A. Treptow

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

IFI'S AND IFPI'S MOTION FOR RECONSIDERATION
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al.*, Case No. A04-0058 CV (JWS)   Page 7 of 7
4811-2407-4496\2\476759\00001