```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12                    IN THE UNITED STATES DISTRICT COURT
                              DISTRICT OF ALASKA
13
   CERTAIN UNDERWRITERS AT LLOYDS,
14 LONDON, SUBSCRIBING TO CERTIFICATE
   OF INSURANCE OP01 0025, through Puget    IN ADMIRALTY
15 Sound Underwriters, Inc.,

16                         Plaintiffs,      NO. A04-0058CV (JWS)
   v.
17
   INLET FISHERIES, INC., an Alaska
18 corporation, and INLET FISH PRODUCERS,
   INC., an Alaska corporation,
19
                           Defendants.
20 INLET FISH PRODUCERS, INC., an Alaska
   corporation,
21
                        Third-Party Plaintiffs,
22 v.

23 TOTEM AGENCIES, INC., a Washington
   Corporation, and AMERICAN E&S
24 INSURANCE BROKERS CALIFORNIA, INC.,
   A Washington corporation,               DECLARATION OF
25                                         RUSSELL BROWN
                        Third-Party Defendants.
26
```

Declaration of Russell Brown
*Certain Underwriters at Lloyds vs. Inlet Fisheries, Inc* (Case No. A04-0058 CV (JWS))    Page 1 of 5

WQIS 000750



EXHIBIT J
Page 1 of 5

I, Russell Brown, declare as follows:

1. My name is Russell Brown. I am over the age of 18 and competent to make this declaration. The facts set forth in this declaration are based upon my personal knowledge.

2. I am employed by Water Quality Insurance Syndicate ("WQIS") as the Underwriting Manager. I have been employed by WQIS since 1997 and in my present position since 2001. WQIS is located at 80 Broad Street, 21st Floor, New York, NY 1004.

3. I hold a Bachelor of Science degree in Marine Transportation from the U.S. Merchant Marine Academy. Additionally, over the years, I have attended many seminars on the topic of marine insurance generally and marine pollution insurance specifically. I have also read or referenced various texts and periodicals on subjects of marine insurance.

4. As the Underwriting Manager, my responsibilities include, among others, the underwriting of vessel pollution insurance, the management of four other underwriters, and the development of policies and procedures concerning underwriting of marine pollution risks. In underwriting marine pollution risks, I am responsible for evaluating specific risks and deciding whether to offer insurance and upon what terms.

5. WQIS is the largest underwriter of pollution liability insurance for marine vessels in the United States. WQIS was founded in 1971 and currently provides vessel pollution insurance to over 40,000 vessels operating in U.S. waters or in international waters between U.S. ports.

6. Commercial vessels operating in the United States typically obtain vessel pollution insurance either as a stand-alone policy or as part of a policy for Protection & Indemnity insurance. Generally, only larger vessels that are enrolled in mutual insurance associations, known as P&I Clubs, are provided with pollution coverage as a part of their Protection & Indemnity policy. This leaves the

Declaration of Russell Brown
*Certain Underwriters at Lloyds vs. Inlet Fisheries, Inc* (Case No. A04-0058 CV (JWS))    Page 2 of 5

WQIS 000751

EXHIBIT J
Page 2 of 5

vast majority of commercial vessel operators to obtain marine pollution insurance as a separate, or stand-alone, policy. WQIS was created to supply such a stand-alone marine pollution policy.

7. I am familiar with the market for stand-alone pollution insurance for non-tank vessels in the United States. The market is led by WQIS, which controls around 65-70% of the market share, measured in total premium collected. The remainder of the market is dominated by the Lloyd's facility that is involved in this lawsuit and, to a lesser extent, by Great American Insurance Company. Besides WQIS, the Lloyd's facility, and Great American, other insurance providers make up a very small portion of the market, likely less than 5%. In 2000, the market share was similar to the present breakdown provided above except that WQIS and the Lloyd's facility controlled a greater share of the market and Great American, which was just beginning to write stand-alone vessel pollution insurance, controlled less.

8. I am familiar with the generally accepted standards that exist in the field of underwriting of vessel pollution policies.

9. I am familiar with the doctrine of utmost good faith or <u>Uberrimae Fidei</u>. This principle requires the insurer and the insured to act in utmost good faith toward one another. In my experience and practice, this doctrine applies to marine insurance, including vessel pollution insurance issued by WQIS.

10. When a prospective insured seeks vessel pollution insurance from WQIS, I expect the insured to comply with the duty of utmost good faith and disclose all facts known to him that are material to the risk. A fact is material to WQIS if it will impact our decision to accept the risk or in setting the premium, deductible, or terms. It is our understanding and practice that the obligation to disclose all facts that are material to the risk is upon the insured and its broker. The obligation exists

Declaration of Russell Brown
*Certain Underwriters at Lloyds vs. Inlet Fisheries, Inc* (Case No. A04-0058 CV (JWS))        Page 3 of 5

WQIS 000752

EXHIBIT J
Page 3 of 5

whether or not WQIS asks for the information.

11. WQIS expects the insured's prior loss history for a five year period to be disclosed. Disclosure of prior loss history requires a complete disclosure with respect to all vessels owned or operated by the prospective insured, without regard to whether insurance is being sought on those vessels. Anything less would deprive WQIS of important information. For example, if a prospective insured sought insurance on a replacement vessel because the insured had wrecked its previous vessel, the loss history would be of paramount concern to me in deciding whether to offer insurance and on what terms.

12. I have reviewed the Declaration of Forrest V. (Woody) Wilton, dated April 11, 2005.

13. The statement in Mr. Wilton's declaration that facts such as prior loss history, vessel condition, and prior cancellation by a pollution insurer do not impact the decision to accept a risk or set its premium is not consistent with my understanding of generally accepted practices in the field of marine insurance, nor in my specialty field of vessel pollution insurance. These are among the most important facts that WQIS considers in evaluating a risk and setting policy conditions. Because of our dominance in this field, I consider the practices of WQIS and myself to be relevant to the industry standards in our field. The practice of WQIS within the field of vessel pollution insurance is to consider these factors in determining whether to accept a risk and setting the premium.

14. Until reading the statement in Mr. Wilton's declaration, I have never before seen or heard of any text or article that sets a different standard of disclosure for vessel pollution insurance compared to other types of marine insurance. Nothing in my training, education, or experience provides any basis to believe that the disclosure requirements that form the utmost good faith doctrine are inapplicable in the context of vessel pollution insurance placed for non-tank vessels. Mr. Wilton's

Declaration of Russell Brown
*Certain Underwriters at Lloyds vs. Inlet Fisheries, Inc* (Case No. A04-0058 CV (JWS))    Page 4 of 5


opinions do not represent the generally accepted standards that exist in the field of vessel pollution insurance for non-tank vessels.

15. Mr. Wilton's statement that pollution underwriters of non-tank vessels leave it to hull and P&I insurers to gather "details about the operation, owner, and vessels" is not true and not the generally accepted practice in this field. WQIS evaluates risks based on a full disclosure of all material facts. While the existence of hull and P&I insurance is important to WQIS, we conduct our own evaluation of each risk based on the information supplied by the insured through his broker. Even if WQIS were to change its policy and agree to provide insurance for any vessel that had successfully obtained P&I and hull insurance, we would still want to know all pertinent facts in order to determine the premium to charge.

16. If the traditional doctrine of utmost good faith no longer applied to vessel pollution insurance for non-tank vessels, WQIS would be forced to change the way it conducts business. In that event, we could no longer expect insureds or their brokers to provide a full disclosure. Instead, we would be required to conduct lengthy interviews with each and every prospective insured, review numerous documents relating to the vessel, its owner and its operator, and we would likely have to conduct a survey on every vessel that we insure. This process would result in significantly higher premium costs for every non-tank vessel that we insure and lengthy delays in reaching decisions about whether to accept a risk.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 10th day of June, 2005 at New York, New York.

_____
Russell Brown

Declaration of Russell Brown
*Certain Underwriters at Lloyds vs. Inlet Fisheries, Inc* (Case No. A04-0058 CV (JWS))    Page 5 of 5

EXHIBIT J
Page 5 of 5

WQIS 000754