Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone:    907-277-9511
Facsimile:    907-276-2631

Christopher W. Nicoll, WSBA No. 20771
NICOLL BLACK MISENTI & FEIG PLLC
816 Second Avenue, Suite 300
Seattle, Washington 98104
Telephone:    206-838-7555
Facsimile:    206-838-7515
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>INLET FISHERIES, INC., *et al.*,<br><br>Defendants/Third-Party Plaintiffs,<br><br>v.<br><br>TOTEM AGENCIES, INC., *et al.*,<br><br>Third-Party Defendants. | **IN ADMIRALTY**<br><br>Case No. A04-0058 CV (JWS)<br><br>**PLAINTIFFS' COMBINED RESPONSE TO INLETS' MOTION FOR RECONSIDERATION AND MOTION TO RELAX DEADLINE** |

Certain Underwriters at Lloyds, London, by and through counsel, file this brief in

Opposition to the Motions filed by Inlet Fisheries, Inc. ("IFI") and Inlet Fish Producers, Inc. ("IFP")

(collectively referred to as the "Inlet Entities") at dockets 203 and 204.[1]

## I. ARGUMENT

### A.    THE COURT MUST DENY THE INLET ENTITIES' MOTIONS ON JURISDICTIONAL GROUNDS.

The Inlet Entities "move for reconsideration under Federal Civil Rule 59(e)." (Motion for

Reconsideration at 1).    Unfortunately, a motion under Rule 59 must be filed within ten days of the

---

[1] Underwriters submit this single brief in Opposition to both motions filed by the Inlet Entities.  Underwriters are uncertain of the page limitation that applies to this brief.  Although Local Rule 59.1 calls for a 5-page limit, as discussed below, this rule probably does not apply.  Additionally, Underwriters respectfully submit that any page limitation should total the sum of the two motions to which this response brief addresses.  To the extent that this brief exceeds any page limitations, Underwriters respectfully move for leave to file an overlength brief.  Underwriters have attempted to keep their response brief and concise.

judgment upon which relief is sought.  Fed. R. Civ. P. 59(b).  The Inlet Entities brought a Motion to Relax Deadline, presumably to extend the Rule 59 deadline.[2]  Unfortunately, the Court cannot extend the deadline under Federal Rule of Civil Procedure 59.  The ten-day limitation is jurisdictional and cannot be extended.  Fed. R. Civ. P. 6(b); U.S. Leather, Inc. v. H&W Partnership, 60 F.3d 222, 225 (5th Cir. 1995); Scott v. Younger, 739 F.2d 1464, 1467 (9th Cir. 1984).  Thus, the Inlet Entities motions must be denied.

### B.    THE INLET ENTITIES MUST SATISFY A VERY HIGH BURDEN.

Even if the Court were to construe the Inlet Entities motion for reconsideration as being brought under Federal Rule of Civil Procedure 60(b)(2), which allows for relief from judgment or order for a period of up to one year where such relief is based upon newly discovered evidence, the motion cannot succeed.  The moving party's burden under Rule 60(b) is very high and not satisfied in this case.

Motions under Rule 60(b)(2) are disfavored.  Dabney v. Montgomery Ward & Co., 692 F.2d 49, 52 (8th Cir.1982).  Relief is within the sound discretion of the trial court, whose findings will not be disturbed absent an abuse of discretion.  Barber v. State of Hawaii, 42 F.3d 1185, 1198 (9th Cir. 1994).  Relief from an order based upon newly discovered evidence requires the moving party to prove three elements:

> (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case.

Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003) (internal quotations omitted).[3]  In this case, as discussed below, the Inlet Entities fail to satisfy any of the three elements of the quoted test.

### C.    THE EVIDENCE RELIED UPON BY THE INLET ENTITIES IS NOT NEW.

---

[2] Underwriters are somewhat perplexed as to the basis of the Inlet Entities' motions.  In their "motion to relax deadline," they assert that it is brought pursuant to Local Rule 59.1.  (See Motion to Relax Deadline Under Local Rule 59.1 for Filing Motion for Reconsideration (hereinafter "Motion to Relax Deadline")  Yet, their motion for reconsideration was brought under Federal Rule of Civil Procedure 59.  Local Rule 59.1 specifically states that it is inapplicable to orders governed by Federal Rule of Civil Procedure 59.  Even if their motion for reconsideration is construed to be brought under Local Rule 59.1, that rule contains a deadline of five days following entry of the order when the motion must be filed.
[3] Very similar standards exist with respect to motions brought under Rule 59.  See Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003).

**Plaintiffs' Combined Response to Inlets' Motion**
**for Reconsideration and Motion to Relax Deadline**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. A04-0058 CV (JWS))**            **Page 2 of 8**

The Inlet Entities' motion for reconsideration is based upon an argument that Water Quality Insurance Syndicate ("WQIS") did not consider the Inlet Entities' loss history, vessel condition, or prior cancellation in providing insurance. (Motion for Reconsideration at 3). Their argument that these factors were not considered is based upon testimony from WQIS allegedly establishing that such information was never provided to WQIS. (Id. at 3-7). Yet, the same fact-i.e. the Inlet Entities did not provide the information to WQIS-defeats the Inlet Entities' motion because the evidence is not new. The Inlet Entities knew or should have known what information it or its insurance broker did, or did not, provide to WQIS well before this lawsuit was even commenced. The Inlet Entities cannot contend that WQIS' lack of information is "new" evidence when it was the Inlet Entities or their agents that controlled the flow of information to WQIS. Because they were on notice of what information WQIS possessed, the evidence is not new.

### D.   INLET FAILS TO DEMONSTRATE THAT THEY EXERCISED DUE DILIGENCE.

The evidence that the Inlet Entities rely upon in asking this Court to reverse its prior order is based upon a Rule 30(b)(6) deposition of "WQIS". (Motion for Reconsideration at 3). The Inlet Entities' attempt to argue that they could not reasonable have obtained this evidence earlier in the litigation lacks merit.

Underwriters placed the Inlet Entities on notice that it considered the WQIS records to be important well before this litigation was even filed. In October 2002, counsel for Underwriters informed the Inlet Entities' of the importance of the WQIS records and asked the Inlet Entities' to voluntarily release those records. (See 05/07/04 Declaration of Christopher Nicoll (Doc. 55), exh. 11). Inlet refused, stating that such records are not relevant. (See id. exh. 11 (letter dated October 24, 2002 from Inlet's former counsel to counsel for Underwriters)). Underwriters were ultimately forced to file this lawsuit in order to obtain the WQIS records.

Underwriters' identified individuals from WQIS as potential witnesses in this case at the earliest possible time. In their Initial Disclosures, dated May 19, 2004, Underwriters' identified several representatives of WQIS as potential witnesses. (Declaration of Christopher W. Nicoll in Opposition to Inlet's Motion for Reconsideration (hereinafter "Nicoll Dec."), exh. 1). Subsequently, in their lay witness list dated March 7, 2005, four representatives of WQIS were identified by Underwriters. (Nicoll Dec., exh. 2). Although Russell Brown was not specifically identified in these

**Plaintiffs' Combined Response to Inlets' Motion**
**for Reconsideration and Motion to Relax Deadline**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. A04-0058 CV (JWS))**                          **Page 3 of 8**

disclosures, the fact that the Inlet Entities obtained the evidence that they seek to introduce from a 30(b)(6) deposition proves that notice of WQIS, not Mr. Brown, is the relevant issue. The Inlet Entities were on notice that WQIS possessed important information in this case at least as early as May 19, 2004. Their failure to seek a Rule 30(b)(6) deposition of WQIS until after Underwriters' successfully moved for summary judgment is insufficient. See Barber v. State of Hawaii, 42 F.3d 1185, 1198 (9th Cir. 1994). The evidence could have been obtained and presented at the time that the motions for summary judgment were pending. The Inlet Entities fail to prove that they exercised diligence to obtain this evidence sooner.[4]

Even after Underwriters' introduced the Declaration of Russell Brown, the Inlet Entities had numerous opportunities to timely obtain the testimony that they now attempt to rely upon. First, if they believed that Mr. Brown's declaration testimony was improper for any reason, they could have (and should have) immediately sought his deposition and moved to strike his testimony. Second, they could have brought a motion under Federal Rule of Civil Procedure 56(f) seeking to depose Mr. Brown. Instead, the Inlet Entities did nothing.

Inlet's own expert, Forrest Wilton, was deposed on June 7, 2005. In his deposition, he testified that the market for non-tank pollution insurance consisted essentially of the plaintiffs and WQIS. (See Plaintiffs' Motion to Strike Declaration of Forrest V. Wilton (Doc. 163) at 10). Thus, the Inlet Entities possessed actual and specific knowledge of the importance of WQIS in determining industry standards over one month before they filed their final briefing in the summary judgment motions and over three months before this Court issued its Order granting summary judgment.

This litigation was filed in April 2003. WQIS was well-known to the Inlet Entities as possessing relevant information at that time. Underwriters filed this action because the Inlet Entities refused to cooperate in efforts to obtain the WQIS records. WQIS representatives were expressly identified in Underwriters' Initial Disclosures dated May 19, 2004. The Inlet Entities possessed specific information concerning the importance of WQIS in determining industry standards at least three months before this Court issued its order granting Underwriters summary judgment. The Inlet

---

[4] The Inlet Entities cannot argue that they were unaware of the importance of evidence possessed by WQIS. One of the predominant reasons that this lawsuit was filed was because the Inlet Entities refused to permit Underwriters to obtain WQIS records. (See 05/07/04 Declaration of Christopher Nicoll (Doc. 55), exh. 11).

**Plaintiffs' Combined Response to Inlets' Motion**
**for Reconsideration and Motion to Relax Deadline**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. A04-0058 CV (JWS))**          **Page 4 of 8**

Entities had every opportunity to obtain and present the evidence that they now rely upon in a timely manner. Their lack of diligence is fatal to their motion.

### E. INLET'S "NEW EVIDENCE" WOULD NOT CHANGE THE DISPOSITION OF THIS CASE.

#### 1. Russell Brown's Deposition Testimony Does Not Contradict His Prior Testimony.

The Inlet Entities' motion is based upon an allegation that Russell Brown contradicted certain Declaration testimony that was submitted by Underwriters in a deposition that he gave on December 8, 2005. Specifically, the Inlet Entities contend that he contradicted his statement that "loss history, vessel condition, and prior cancellation by a pollution insurer . . . are among the most important facts that WQIS considers in evaluating a risk and setting policy conditions." (Motion for Reconsideration at 3). A careful review of the Inlet Entities' Motion for Reconsideration reveals that the argument lacks merit.

The Inlet Entities rely upon evidence that, in considering various applications for pollution insurance submitted to WQIS by the Inlet Entities, WQIS did not ask for or review any information regarding loss history, vessel condition, or prior cancellation. (Motion for Reconsideration at 3-7). They argue that such evidence "directly contradict[s] Mr. Brown's declaration about WQIS and industry standards." (Id. at 5).[5]

The motion relies upon the same flawed premise that this Court rejected in its decision granting Underwriters' motion for summary judgment:

> Inlet and Totem have expended significant effort arguing that if something was material PSU/Lloyds should have asked, and absent inquiry must be immaterial. This argument, based on cases that did not involve the application of the marine doctrine of uberrimae fidei, misses a basic premise of the doctrine as applied in this circuit: a material fact must be disclosed even in the absence of a request."

Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc., 389 F. Supp. 1145, 1163 (D. Alaska 2005) (Doc. 181). WQIS did not follow-up regarding loss history, prior cancellation, or vessel condition because the Inlet Entities failed to provide this information to WQIS. If the burden had been upon WQIS to request such information, then perhaps the Inlet Entities' argument would have some merit. However, because uberrimae fidei imposes an affirmative disclosure obligation upon

---

[5] Underwriters' are confused by the assertion that Mr. Brown "directly" contradicted his prior testimony. No such direct contradiction occurred; beyond making this unsupported statement, the Inlet Entities did not even argue that there was a direct contradiction.

**Plaintiffs' Combined Response to Inlets' Motion**
**for Reconsideration and Motion to Relax Deadline**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. A04-0058 CV (JWS))**          **Page 5 of 8**

the insured and the Inlet Entities breached that obligation, the fact that WQIS did not possess or request such information is not indicative of whether such information is material.[6]  The Inlet Entities' motion merely proves that they not only breached the doctrine of utmost good faith in their dealings with Underwriters, they also breached it with respect to WQIS.  It would be a perversion of justice if the Inlet Entities' seriatim violations of <u>uberrimae fidei</u> were considered in any way reflective of industry standards of materiality.

Russell Brown was asked several questions about his Declaration during his December 6 deposition.  He testified:

> Q.   That is a declaration that you submitted in this pending Alaska lawsuit in June 2005, is that right?
> A.   Yes.
> Q.   Was this prepared and submitted at the request of Lloyds of London?
> A.   Yes.
> Q.   Does it bear your signature on the last page?
> A.   Yes.
> Q.   You signed it here in New York on the 10th of June 2005?
> A.   Correct.
> Q.   Under penalty of perjury, under the laws of the United States?
> A.   Yes.
> Q.   Are the statements made in this declaration all true and accurate, to the best of your belief?
> A.   Yes.

(Brown Dep. at 14:3-14:22).  Mr. Brown did not contradict his Declaration testimony.  In fact, he verified that every statement set forth in his previous sworn testimony was true and accurate.[7]  He also <u>directly</u> testified to the fact that loss history and vessel condition are significant items that are considered by an underwriter.  (Brown Dep. at 19:14-21:16).  Other testimony provided by Mr. Brown further supports that these factors were material to him.  (<u>See, e.g.</u>, Brown Dep. at 22:23-23:2 ("There have been accounts that we declined due to their loss history, yes.")).  Nowhere in his deposition does he retract his declaration testimony or state that loss history, vessel condition, and/or prior cancellation are immaterial.  (<u>See generally</u> Brown Dep.).

---

[6] Later, of course, when WQIS learned of the condition of Inlet's vessels, WQIS cancelled the policy.  (Brown Dep. at 35:10-35:21; 39:20-40:15; 80:9-80:19).  Hence, the Inlet Entities' assertion that vessel condition is not material is contradicted by the actions of WQIS.

[7] The Brown Deposition is attached to the Nicoll Declaration as Exhibit 3.  Underwriters have included a complete copy of Russell Brown's deposition testimony so that, if the Court chooses, it can review it in its entirety.

**Plaintiffs' Combined Response to Inlets' Motion**
**for Reconsideration and Motion to Relax Deadline**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. A04-0058 CV (JWS))**          **Page 6 of 8**

The Inlet Entities' final argument is that "[r]ather than concern about the condition of the vessels, what resulted in the cancellation of the WQIS policy was the fact that Inlet made a claim on the WQIS policy for the MAREN I spill in May 2000." (Motion for Reconsideration at 3-7). This statement is both irrelevant and completely false. It is irrelevant because the uncontroverted testimony of Mr. Brown-both in his deposition and his declaration-is that vessel condition is material. (Brown Dec. ¶¶ 10, 13; Brown Dep. at 19:14-21:12). Thus, whether WQIS cancelled due to vessel condition or for some other reason has little relevance to this action. Critically, though, the Inlet Entities' argument is false. Russell Brown testified:

> Q.    What was the reason for requesting a survey?
> A.    We needed to find out the conditions of the vessels.
> Q.    Do you know how it is that WQIS came to question the condition of the vessels?
> A.    Yes.
> Q.    How?
> A.    From the claim.
> Q.    The Maren I?
> A.    Yes.
>
> . . .
> Q.    Did WQIS eventually decide to cancel the policy?
> A.    Yes.
> Q.    Because Inlet had not obtained surveys?
> A.    Yes, that's part of it.
> Q.    What was the rest of it?
> A.    They never paid us.
>
> . . .
> Q.    If the policy had been paid, would it have made a difference to the cancellation?
> A.    I think we would have eventually cancelled without a survey.
> Q.    It is a survey that is a critical component of the cancellation or the lack of a survey?
> A.    Yes.
>
> . . .
> Is it fair to say the cancellation was made irrespective of what the significance of the loss was?
> A.    Correct.
> Q.    It was the fact that the claim involving the Maren I had brought to WQIS's attention the condition of the vessels?
> A.    Correct.
> Q.    Was that what concerned you at the time of the cancellation?
> A.    Yes.

(Brown Dep. at 35:10-35:21; 39:20-40:15; 80:9-80:19). The Inlet Entities' contention that a survey, and hence the condition of the vessel, did not play a significant role in the WQIS cancellation is simply false. Mr. Brown considered such evidence to be a "critical component" of the cancellation.

**Plaintiffs' Combined Response to Inlets' Motion**
**for Reconsideration and Motion to Relax Deadline**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. A04-0058 CV (JWS))**          **Page 7 of 8**

Mr. Brown's deposition testimony is entirely consistent with the testimony that he provided by declaration. The Inlet Entities' motion for reconsideration is without merit.

**2.  This Court's Decision Was Not Reliant Upon Mr. Brown's Testimony.**

Although Underwriters vociferously maintain that Mr. Brown's deposition testimony is not contradictory of his previous declaration, it is noteworthy that this Court relied only minimally upon Mr. Brown's testimony in granting summary judgment. Mr. Brown's testimony is mentioned only once in a 29-page decision. Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc., 389 F. Supp. 1145, 1168 (D. Alaska 2005) (Doc. 181). Brown is one of four witnesses relied upon by the court in determining industry standards. Id. Even if the Court disregarded Brown's testimony, which it shouldn't, the uncontested summary judgment evidence would still demonstrate that loss history, prior cancellation, and vessel condition are material.

## II.  CONCLUSION

The Inlet Entities motion for reconsideration, brought under Federal Rule of Civil Procedure 59, is improper and cannot be granted under jurisdictional grounds. If the court construes the motion under Rule 60, or any other rule, it still cannot be granted. The Inlet Entities failed to establish that the evidence upon which they rely is new and that they exercised diligence in obtaining the evidence. Additionally, their argument that Mr. Brown contradicted his prior testimony is simply untrue. WQIS did not consider the Inlet Entities' prior loss history and vessel condition simply because the Inlet Entities breached the doctrine of utmost good faith and failed to provide this information to WQIS. Nothing in Mr. Brown's deposition suggests that he considers these critical factors to be immaterial.

DATED this 27th day of January, 2006.

NICOLL BLACK MISENTI & FEIG PLLC
and
LANE POWELL LLC
Attorneys for Plaintiffs

By  s/ Brewster H. Jamieson
   Brewster H. Jamieson, ASBA No. 8411122
   301 West Northern Lights Boulevard, Suite 301
   Anchorage, Alaska  99503-2648
   Telephone:  907-277-9511
   Facsimile:  907-276-2631
   Email:  jamiesonb@lanepowell.com

I certify that on January 27, 2006, a copy of the foregoing was served by ECF on:

John A. Treptow, Esq.
Thomas A. Matthews, Esq.

 s/ Nanci L. Biggerstaff
Nanci L. Biggerstaff, CPS, PLS
053081.0001/153352.1

**Plaintiffs' Combined Response to Inlets' Motion
for Reconsideration and Motion to Relax Deadline**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. A04-0058 CV (JWS))**    **Page 8 of 8**