IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, )<br>LONDON, SUBSCRIBING TO CERTIFICATE)<br>OF INSURANCE OP01 0025, through Puget )<br>Sound Underwriters, Inc.,  )<br>                                       )<br>             Plaintiffs,             )<br>     vs.                              )<br>                                       )<br>INLET FISHERIES, INC., an Alaska   )<br>Corporation, and INLET FISH PRODUCERS,)<br>INC., an Alaska corporation,          )<br>                                       )<br>       Defendants and Third-Party  )<br>       Plaintiffs,                  )<br>     vs.                              )<br>                                       )<br>TOTEM AGENCIES, INC., a Washington )<br>Corporation,                          )<br>                                       )<br>       Third-Party Defendant.      )<br>_____ ) | IN ADMIRALTY<br><br><br><br>Case No.:  A04-0058 CV<br>(JWS) |

## TOTEM'S OPPOSITION TO INLET ENTITIES' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Inlet Entities[1] seek entry of summary judgment[2] in their favor against Totem Agencies, Inc. ("Totem"), related to the August 2002 *QUANIRTUUG PRINCESS* (*"QP"*) incident.[3] However, summary judgment in favor of the Inlet

---

[1] The "Inlet Entities" are Inlet Fisheries, Inc., and Inlet Fish Producers, Inc.
[2] Although the Inlet Entities' motion is captioned as a motion for partial summary judgment, the motion addresses only the *QP* and the relief the Inlet Entities seek is "for entry of an order granting Inlet summary judgment on its breach of contract and negligence claims," Motion at 2, and entitlement to "summary judgment as a matter of law, *id.* at 21. Out of an abundance of caution, Totem addresses all elements of the Inlet Entities' claims, relating to the *QP*.
[3] Although this action involves both the August 2002 *QP* incident and a May 2003

Entities is inappropriate for various reasons. As argued and factually supported in Totem's December 16, 2005, Motion for Summary Judgment, any breach of duty by Totem has not caused the Inlet Entities damage because: (1) the stand-alone marine pollution insurance the Inlet Entities sought was not otherwise available; (2) the Lloyds Policy was an indemnity policy, requiring an assured to become liable for and pay before Lloyds had an obligation to pay, and IFI, the owner of the *QP*, is not an operating company, has no assets, has paid no damages, and has no means to pay any judgment or settlement against it; (3) the Inlet Entities breached the Lloyds' Policy's duty to have P&I insurance on the *QP* at the time of the *QP* incident; and (4) because there was no P&I insurance on the *QP*, as required, IFI may not seek wreck removal expenses and other damages that would have been covered by the P&I insurance. In the interest of economy, rather than merely repeat these arguments here, Totem hereby incorporates by reference its arguments and legal authority and the factual support provided in its December 16, 2005, Motion for Summary Judgment.

However, there are other arguments that support denial of the Inlet Entities' present motion. First, Alaska law governs Totem's duties to the Inlet Entities and, under Alaska law, it is imperative that any breach of duty legally cause harm. As part of that requirement, Inlet Entities must show that the relevant insurance was or

---

incident involving the *HARVESTER BARGE*, the Inlet Entities' present motion addresses only the *QP* incident. The *HARVESTER BARGE* and the incident involving that vessel are not substantively mentioned anywhere in the motion.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                 Page 2 of 20

was not commercially available. Much of the legal authority addressing a broker's duty upon which the Inlet Entities rely here is not Alaska legal authority and, in fact, is contrary to the legal standards and principles adopted by the Alaska Supreme Court. Thus, much of the authority cited by the Inlet Entities is neither controlling nor persuasive and, to the extent the Inlet Entities attempt to use that authority to avoid the obligation to establish the commercial availability of the insurance the Inlet Entities sought, the Inlet Entities' efforts are not well-founded. Second, the Inlet Entities have not established their damages or that they have been damaged or paid any damages. Third, the only incident upon which the Inlet Entities' motion is premised is the August 2002 pollution incident involving the *QP*. The evidence from the president of the Inlet Entities is that Inlet Fisheries, Inc., not Inlet Fish Producers, owned and operated the *QP*. Further, the evidence is that Inlet Fish Producers was not involved with the *QP*. Thus, there is no basis for a duty, a breach, causation, or damages extending from Totem to IFP with respect to the *QP*. Accordingly, summary judgment should not be entered for the Inlet Entities.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                                  Page 3 of 20

**I. BACKGROUND[4]**

The present motion for partial summary judgment arises from an incident, on or about August 26, 2002, involving the *QUANIRTUUG PRINCESS* ("*QP*"). The *QP*, owned by IFI, while moored in Steamboat Slough near Bethel, Alaska, sank, spilling oil and other materials. The *QP* was eventually removed from the slough and scuttled. At the time of the *QP* incident, the vessel was on the schedule of vessels of a London U.S. Vessel Pollution Policy (the "Lloyds Policy"), issued on behalf of Certain Underwriters at Lloyds, London ("Lloyds"). The policy had first become effective on August 28, 2000, and was renewed annually in 2001 and 2002. The Inlet Entities obtained the policy through Totem, its broker.

Because IFI was unable to respond to the *QP* incident, the National Pollution Fund Center ("NPFC") responded to the spill, incurring costs for cleanup and scuttling of the *QP*. It has submitted a bill to the Inlet Entities for those costs.[5] The

---

[4] The Court extensively set forth the background to this case in its September 9, 2004, Order from Chambers, at 2-4 (Docket No. 114). The "facts" stated in this background section are derived from the Court's Order, or Totem's Motion for Summary Judgment. While the Inlet Entities "Statement the Facts" is extensive, many of the "facts" stated therein are not germane to the present motion. Thus, while Totem does not agree with certain of the facts, it addresses only those facts relevant to the issues herein. For instance, the Inlet Entities state Totem did not advise WQIS of earlier surveys, Motion at 9, but the evidence is that WQIS wanted current surveys with their designated surveyor. Exhibit I, Parthemer 30(b)(6) Depo. at 102. In addition, Goddard testified that out of water surveys (requested by various insurers for P&I coverage) for the *QP* were virtually impossible. Exhibit A, Goddard Depo. at 57. The "facts" stated in this background section are derived from the Court's Order, or Totem's Motion for Summary Judgment.
[5] The United States in 2005 filed suit on this claim. *See United States vs. Inlet Fisheries*, Case No. A05-203 CV (RRB).

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                                    Page 4 of 20

bill has not been paid. In addition, as a result of the *QP* incident, certain individuals residing near Bethel, Alaska, (the "Bethel Plaintiffs") have filed suit in Alaska State Court against the IFI, asserting claims for damages allegedly sustained. Neither IFI nor IFP paid the NPFC or any of the Bethel Plaintiffs any damages associated with the *QP* incident.

Following the *QP* incident, Lloyds reserved it rights, then filed a declaratory judgment action in federal court, seeking to void the Lloyd Policy and otherwise disclaim any obligations under the policy. Each of the Inlet Entities asserted counterclaims, with IFI seeking a declaration of coverage for the *QP* incident, among other claims. Each of the Inlet Entities also brought a third-party complaint against Totem, arguing that if there were errors in completing the application for the Lloyds Policy, Totem was liable to the Inlet Entities.

In early 2005, Lloyds filed a summary judgment motion against the Inlet Entities, arguing that the Lloyds Policy was void *ab initio* based on an alleged violation of the *uberrimae fidei* (utmost good faith) doctrine. Lloyds argued that the Inlet Entities, when applying for the pollution insurance, failed to disclose certain material facts relevant to the risk, rendering the policy void. By its September 12, 2005, Order from Chambers (Docket No. 181), the Court granted Lloyds' summary judgment motion, stating that Lloyds was entitled to have the pollution policy declared void. To date, Inlet Entities have requested reconsideration of that decision and no final judgment has been entered or requested.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                                                  Page 5 of 20

**II. THE INLET ENTITIES STATE AN INCORRECT LEGAL STANDARD FOR AN INSURED'S CLAIMS AGAINST ITS INSURANCE BROKER AND FAIL TO ESTABLISH TOTEM'S LIABILITY UNDER THE ALASKA STANDARDS**

    **A.  Alaska Law Governs**

It is unclear from the Inlet Entities' Motion which law they believe governs their claims against Totem.  Their general lack of reference to standards and legal authority from the Alaska Supreme Court suggests that Inlet Entities believe some law other than Alaska governs the relationship between Totem and Inlet.  This is not correct.  Because there is no federal admiralty law addressing the duty of a broker to its client, the law of the state with the greatest interest controls.[6]  Here, while Totem Agencies is a Washington entity, the Inlet Entities are Alaska entities and the *QP* and other vessels to be covered were located and operated in Alaska and Alaska waters.  Accordingly, Alaska has the greatest interest and Alaska law governs.

    **B.  Alaska Supreme Court Has Stated The Elements of a Claim Against a Broker**

Inexplicably, the Inlet Entities refer to treatises and non-Alaska Supreme Court decisions for the elements of a broker claim.[7]  The Alaska Supreme Court has identified the following elements of a broker negligence claim: proof of duty, breach, causation, and damages.[8]  While the Alaska Supreme Court has not specifically

---

[6] *Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506, 1510 (9th Cir. 1987); *Lien Ho Hsing Steel Enterprise Co., Ltd. v. Weihtag*, 738 F.2d 1455, 1458 (9th Cir. 1984).
[7] *See* Inlet Entities' Motion at 15 & n.8.
[8] *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1374 (Alaska 1995).

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                                Page 6 of 20

identified the elements of a breach of contract claim in a broker action, it is clear that causation must link any breach of contract and damages.[9]

### C. The Inlet Entities Overlook the Causation Element, Recognized in Alaska, to Establish the Existence or Not of Insurance Commercially Available to Provide the Protection Requested

#### 1. Alaska Recognizes the Relevance, in a Claim Against a Broker, of the Existence or Not of Commercially Available Insurance

The majority rule, when the claim is that a broker did not procure the insurance coverage requested, is that the customer has the burden of showing that the coverage requested was commercially available.[10] This rule applies whether the customer's claim against the broker is premised upon a negligence theory[11] or a breach of contract theory.[12] While the Alaska Supreme Court, in *Blomfield* queried whether the principle applied in breach of contract cases, it recognized that *Bayly*,[13] upon which it relied, treated the requirement as an element of causation, not duty,

---

[9] Restatement (Second) of Contract §347. Alaska has adopted the Restatement (Second) of Contract principles in analyzing contract claims in Alaska. *See Alaska Tae Woong Venture, Inc. v. Westward Seafoods, Inc.,* 963 P.2d 1055, 1063 (Alaska 1998).

[10] *Blomfield*, 907 P.2d at 1374 *(citing Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.3d 239, 243-44 (Colo. 1987)).

[11] *See Lifespan/Physicians Professional Services Org., Inc. v. Combined Insurance Company of America*, 345 F. Supp.2d 214, 227-28 (D.R.I. 2004); *Bayly*, 739 P.2d at 244; *Rodriguez v. Investors, Ins. Co. of America*, 607 N.Y.Supp.2d at 329, 330 (Supr. Ct. 1994).

[12] *See Bendis v. Alexander & Alexander*, 1995 U.S. App. LEXIS 26487, *7 )(10th Cir. 1995); *Sheehan v. Northwestern Mutual Life Ins. Co.*, 44 S.W.3d 389, 393 (Mo. App. 2000); *Russell v. Reliance Ins. Co.*, 672 S.W.2d 693, 694 (Mo. App. 1984)(cited in *Blomfield*, 907 P.2d at 1374); *Rodriguez*, 607 N.Y.Supp.2d at 330.

[13] 739 P.2d at 243-44.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                 Page 7 of 20

which element exists for both tort claims and contract claims.[14] Numerous other courts have recognized that the obligation to establish the existence of commercially available insurance is an element of causation, not duty.[15] Given the weight of this authority, the requirement should apply equally to negligence and breach of contract claims against a broker.

The rule that the insured must demonstrate the coverage requested was commercially available has also been applied in failure-to-procure cases in which the insurer subsequently denied coverage for the loss. For instance, in *Bayly*, a case arising from a liquor liability claim, the broker obtained a multi-peril policy which contained an exclusion for liquor liability.[16] The court stated: "Where, as here, a claim for relief is predicated on the negligent failure of an insurance broker or agent to procure a particular type of insurance coverage sought by the plaintiff, it is incumbent upon the plaintiff to prove by a preponderance of the evidence, <u>as an aspect of causation and damages</u>, that such insurance was generally available . . . ."[17] Other courts also have applied the principle in failure to procure cases.[18] Thus, there is no distinction to be made in applying the rule depending upon the type of broker error.

---

[14] 907 P.2d at 1375 n.2.
[15] *See Sheehan*, 44 S.W.3d at 393; *Haggans v. State Farm*, 803 So.2d 1249,1252 (Miss. App. 2002).
[16] 739 P.2d at 241.
[17] *Id.* at 244. (emphasis added).
[18] *See Bendis*, 1995 U.S. App. LEXIS 26487, **3-4, 5, 19-20; *Kabban v. Mackin*, 801 P.2d 883, 433-34 (Or. 1990); *Haggans*, 803 So.2d at 1252.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                                        Page 8 of 20

The Inlet Entities do not distinguish the above cases. Indeed, they do not even address their obligation, as an element of their burden to prove causation, to show the existence of commercially available insurance. Instead, they rely upon three cases that are contrary to the proof of available insurance requirement recognized by *Blomfield*.

First, Inlet Entities rely on *Wood v. Newman, Hayes & Dixon Insurance Agency*.[19] *Wood* was a failure to procure case in which it was alleged the agent was negligent in obtaining insurance that did not cover ice and snow coverage. For the proposition that it is irrelevant whether or not the requested coverage was available, *Wood* relied upon *Bell v. O'Leary*,[20] and *Boothe v. American Assurance Co.*,[21] two decisions upon which the Inlet Entities also rely.[22] *Bell*, decided before *Bayly*, and the Alaska Supreme Court's decision in *Blomfield*, involved a negligence claim against a broker and relied only upon *Boothe* to hold that the existence or not of commercially available insurance was irrelevant. *Boothe*, which also appears to involve only a negligence claim, relied upon another Louisiana decision, issued in 1973, which did not even discuss commercial availability as an element of a broker claim.[23] Thus, *Boothe's* statement about the issue has no underlying foundation.

While the Alaska Supreme Court in *Blomfield* did not discuss the view held by

---

[19] 905 S.W.2d 559 (Tenn. 1995). *See* Inlet Entities' Motion at 20 n.12.
[20] 744 F.2d 1370 (8th Cir. 1984).
[21] 327 So.2d 477 (La. App. 1976).
[22] *See* Inlet Entities' Motion at 15 n.8, 17, 20 n.12.
[23] *See Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728 (La. 1973).

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                 Page 9 of 20

*Bell* or *Boothe*, those decisions existed at the time of the *Blomfield* decision and the conclusion of those courts, and the *Wood* court, certainly is contrary to the direction adopted by the Alaska Supreme Court. Thus, the primary cases upon which the Inlet Entities rely to ignore their burden of establishing the existence of commercially available insurance prove to be hollow reeds that, at best, state a very much minority view.[24]

### 2. Stand-Alone Marine Pollution Insurance that Would Cover the *QP* Was Not Available

As Totem has argued and supported in its Motion for Summary Judgment,

---

[24] The Alaska federal district court decision the Inlet Entities rely upon, *Jonas v. Bank of Kodiak*, 162 F. Supp. 751 (D. Alaska 1958), was decided before statehood, and thus well before the Alaska Supreme Court's *Blomfield* decision. The Inlet Entities also rely upon two treatises – B. Harnett, *Responsibilities of Insurance Agents and Brokers,* and L. Russ, *Couch on Insurance.* However, in language the Inlet Entities apparently overlook, both treatises recognize the insurance-availability requirement recognized in *Blomfield.* Harnett states: "[A]n agent may not be held liable if there is no showing that the requested coverage was available at the time or that the loss would not have been covered under the policy. Plainly, if the desired coverage cannot be obtained in the market place, the agent has no duty to procure it." (Excerpts from this treatise are attached to Inlet Entities' Motion as Exhibit H). 1 B. Harnett, Responsibilities of Insurance Agents and Brokers, § 3.02 [1] (2005). *Couch* recognizes the principle that an insured's agent is not liable for failing to obtain coverage where the coverage was unavailable and that it is a defense for liability for failure to procure insurance that the person requesting insurance was uninsurable. 3 L. Russ, *Couch on Insurance* §46:67 (3d ed.). Even R. Ey, Cause of Action Against Insurance Agent for Broker for Failure to Procure Insurance, 14 *Causes of Action* 881, § 51 (1st Series 2005), which treatise also is cited by the Inlet Entities, Motion at 17 n.9, recognizes that the unavailability of insurance is a causation defense. In any event, given the Alaska Supreme Court's stated principles guiding the broker-customer issues here, reference to general treatises is unnecessary.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                              Page 10 of 20

which arguments and support are incorporated herein by reference, there is no causal relationship between any breach of a duty by Totem toward the Inlet Entities and any damages the Inlet Entities may have suffered because there is no evidence that there was available stand-alone marine pollution insurance that would have covered the *QP*. Here, as this Court implicitly found already, and as the witnesses support, other than WQIS and Lloyds, there was no other commercially available stand-alone marine pollution insurance that would provide coverage for the size, age, service, and condition of the *QP*. Thus, the Inlet Entities cannot establish a necessary element of their claim and the Inlet Entities are not entitled to summary judgment. To the contrary, summary judgment in favor of Totem should be entered.

### 3. Genuine Issues on What The Inlet Entities Would Have Done, If No Insurance Had Been Obtained, Precludes Summary Judgment For Inlet Entities.

If the Court were to conclude, despite Alaska authority to the contrary, that the availability or not of insurance is not relevant, then there is a genuine issue of material fact on whether or not the Inlet Entities would have done something to otherwise protect themselves. While *Wood, Bell* and *Boothe* suggest such a factual inquiry is not necessary, the Alaska Supreme Court decisions would suggest otherwise. In *Peter v. Schumaker Enterprises, Inc.*,[25] the Court concluded that proof was required on the issue of whether the insured, had she been offered higher limits, would have purchased the higher limits. Justice Fabe, in her dissenting

---

[25] P.3d 481, 491 (Alaska 2001).

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                 Page 11 of 20

opinion in *Government Employee Ins. Co. v. Graham-Gonzalez*,[26] further recognized this requirement.  Here, the evidence is that the Inlet Entities, at times, operated vessels without pollution insurance.[27]  Further, the evidence is that P&I and hull and machinery coverage had not been maintained on the *QP* or *HARVESTER BARGE*.[28]  Finally, even Vince Goddard recognized at his deposition that he did not know what would have been done if the Lloyds' Policy had not been obtained.[29]  These genuine issues of material fact preclude summary judgment for the Inlet Entities on this issue.

**III.  THE INLET ENTITIES HAVE NOT ESTABLISHED THAT THEY ARE ENTITLED TO CERTAIN DAMAGES OR HAVE INCURRED CERTAIN DAMAGES**

**A.  The Inlet Entities' Potential Damages Recoverable are Limited to the Limit of the Lloyds' Policy And Do Not Include Consequential Damages**

Under Alaska law, claims against an insurance broker or agent for failure to obtain insurance coverage compensate the insured "for the difference between the coverage expected and the coverage obtained . . ."[30]  In *Blomfield*, the insureds owned an office building.[31]  Through a broker, the insureds purchased an "all risk" insurance policy.[32]  When building tenants became ill, the broker assured the

---

[26] 107 P.3d 279, 289-901 (Alaska 2005).
[27] *See* Exhibit A, Goddard Depo. at 85-90.
[28] *Id.* at 55-56.
[29] *See* Exhibit K, Goddard IFP Depo. at 18-19 (addressing HARVESTER BARGE); Exhibit J, Goddard IFI Depo. at 48-51 (addressing *QP*).
[30] *Blomfield*, 907 P.2d at 1376 (Alaska 1995).
[31] *Id.* at 1372.
[32] *Id.*

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                 Page 12 of 20

insureds that they had coverage for any loss.[33]  However, the insurer denied coverage.  Eventually, the insurer settled with the insureds for $480,000.[34]  The insureds then proceeded to sue the broker who sold the policy.[35]  The Alaska Supreme Court affirmed the trial court's judgment holding the broker liable to the insureds for an amount representing insurance coverage that would have covered the losses sustained in the case had the broker not been professionally negligent.[36]

Stated differently, damages potentially recoverable in an action by an insured against an insurance broker for failing to procure a requested policy are measured by the sums the insurer would have had to pay if the desired insurance had been in force.  In effect, the broker steps into the shoes of the insurer, and may only be held responsible for covered damages <u>up to</u> the limits of the policy.  Alaska's position on damages recoverable on claims against one's broker is similar to the prevailing rule: damages proximately caused by his breach <u>up to</u> the amount the insurer would have been required to pay had the policy been properly procured.[37]  Accordingly, the Inlet Entities' damages recoverable on their broker claims are limited to damages up to the limit of the Lloyds' Policy and do not include consequential damages.

### B. The Inlet Entities Fail To Established With Admissible Evidence Any

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 1377.
[37] *Royal Ins. Co. of Am. v. Cathy Daniels, Ltd.*, 684 F. Supp. 786, 792 (S.D.N.Y. 1988); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 266 (7th Cir. 1986); *Pete's Satire, Inc. v. Commercial Union Ins. Co.*, 698 P.2d 1388, 1390-91 (Colo. Ct. App. 1985); *Arrow Constr. Co., Inc. v. Camp*, 827 P.2d 378 (Wyo. 1992).

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                 Page 13 of 20

**Damages**

The Inlet Entities have not established by admissible evidence any damages that they have allegedly sustained as a result of any breach by Totem. They must do so in order to obtain summary judgment.[38] The Inlet Entities state, in argument only, that they have sustained damages in the form of expenses in defending the Lloyds' action to declare the policy void[39] and increased clean-up costs based on Lloyds' failure to respond to the spill and the resulting federalization of the clean up.[40] However, they present no admissible evidence of either of those costs or that those costs have been incurred and paid.[41] Thus, the Inlet Entities fail to establish an element of their claim, precluding summary judgment in their favor.

### C. IFI Has Not Paid and Has No Ability to Pay Any Damages

Not only do the Inlet Entities fail to present admissible evidence of their damages, if any, but given (1) the indemnity nature of the Lloyds' Policy, (2) the bankrupt status of IFI, and (3) the fact that IFI has no assets and has no ability to pay any damages, the Inlet Entities fail to submit any admissible evidence that the

---

[38] *See* Fed. R. Civ. P. 56(c).
[39] As noted in subsection III, *infra*, the Inlet Entities provide no legal support that attorney's fees incurred in coverage litigation are a consequential damage.
[40] *See* Inlet Entities' Motion at 20.
[41] As argued and supported in Totem's December 16, 2005, Motion for Summary Judgment, at 18-24, $380,268.30 of the amount incurred by the NPFC in responding to the *QP* incident was for wreck stabilization, removal, and scuttling. These expenses would have been covered under a marine protection and indemnity policy that the Inlet Entities, as a condition of the Lloyds' Policy, were required to maintain. The Inlet Entities' breach of this insurance warranty at a minimum, precludes their recovery of these wreck response expenses.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                          Page 14 of 20

voiding of the Lloyds Policy caused IFI any damage. As discussed and supported in Totem's December 16, 2005, Motion for Summary Judgment,[42] Vince Goddard is the sole shareholder and president of IFI.[43] He has testified that in August 2002, the *QP* was owned by IFI, but that IFI (1) is not in operation, (2) has had no employees since 2001, (3) stopped operating in the spring of 2001, and (4) was not in operation at the time of the August 2002 *QP* incident.[44] Goddard testified that IFI has proceeded through bankruptcy twice, most recently a liquidating bankruptcy.[45] At the time of the *QP* incident, IFI was in bankruptcy and did not have the assets or resources to respond to the incident.[46] As to the current financial condition of IFI, Mr. Goddard testified that IFI has no assets (aside from its claim against Totem) and has about $4 million in liabilities.[47] Finally, Mr. Goddard has testified that IFI has not paid any portion of the NPFC response bill and has not paid anything to the Bethel Plaintiffs.[48] In fact, Mr. Goddard testified that IFI has no assets, lines of credit, or

---

[42] The exhibits referenced in the footnotes in this subsection were attached to Totem's Motion for Summary Judgment. In the interests of economy, they are not attached to this Opposition, although they are incorporated herein by reference.
[43] *See* Exhibit J, Goddard IFI Depo. at 9. Vince Goddard testified at three depositions on November 9 and 10, 2005. The three depositions were Mr. Goddard's personal deposition (Exhibit A), the 30(b)(6) deposition of IFI (Exhibit J), and the 30(b)(6) deposition of IFP (Exhibit K). Herein, the are respectively referred to as the "Goddard Depo." the "Goddard IFI Depo.," and the "Goddard IFP Depo."
[44] *Id.* at 23, 48-49; Exhibit A, Goddard Depo. at 10, 14, 67.
[45] Exhibit A, Goddard Dep. at 13-14.
[46] *Id.* at 77-78.
[47] *Id.* at 14; Exhibit J, Goddard IFI Depo. at 10-13, 20-22.
[48] *See* Exhibit A, Goddard Depo. at 72, 75-76, 79; Exhibit J, Goddard IFI Depo. at 35-36, 47-48.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                 Page 15 of 20

ability to borrow sums with which to pay anything to claimants.[49] Mr. Goddard said he would consider loaning money to IFI with which to pay claimants, but only if an insurer would guarantee his repayment.[50] No insurer willing to guarantee repayment has been identified. Thus, given the indemnity nature of the Lloyds Policy, the NPFC bill is not a damage that IFI has sustained as a result of the voiding of the Lloyds Policy.

### D.  There is No Evidence that IFP Paid Any Damages

Just as the evidence is that IFI has not paid the NPFC response bill, the evidence also is that IFP did not pay the NPFC's charges or pay anything to the Bethel Plaintiffs.[51] Thus, the indemnity requirement in the Lloyds Policy has not been triggered.

### E.  The Inlet Entities Provide No Authority Supporting The Lloyds' Action Defense Costs as a Recoverable Consequential Damage

Even if consequential damages were recoverable under Alaska law in a broker claim,[52] the Inlet Entities claim as the sole item of consequential damage the costs of defending the Lloyds' declaratory judgment claim. Yet Inlet present no legal authority that such costs are legally compensable as a consequential damage. In those non-Alaska decisions that have permitted the recovery of attorney's fees as

---

[49] *See* Exhibit J, Goddard IFI Depo. at 12-14.
[50] *Id.* at 12-13.
[51] *See* Exhibit A, Goddard Depo. at 72-73, 75-76, 79.
[52] As argued in subsection III A, *supra*, the Alaska Supreme Court has not

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                    Page 16 of 20

consequential damages, the attorney's fees recovered are those incurred in defending a claim covered under the policy, not in addressing coverage.[53] Thus, the Inlet Entities have failed to legally support their claim that the fees incurred in defending Lloyds' coverage dispute are recoverable from Totem.

---

recognized the recoverability of consequential damages in a broker case.
[53] *See, e.g., Hildereth v. Bergeron,* 263 A.2d 664, 666 (N.H. 1970); *Stein Hinkle, Dawe & Associates, Inc. v. Continental Casualty Co.*, 313 N.W.2d 299, 305 (Mich. App. 1981); *Lee v. Andrews,* 667 P.2d 919, 921-22 (Mont. 1983). (Here, however, the Lloyds' Policy provided for indemnification of defense costs up to the $1 million policy limit. Thus, the Inlet Entities may not seek defense costs in addition to the policy limit.) The Inlet Entities provide no legal authority supporting recovery of attorney's fees incurred in a declaratory judgment action addressing coverage as a consequential damage. The Alaska Supreme Court has declared that attorney's fees in a case under review are <u>not</u> recoverable as damages. *See Sisters of Providence in Washington vs. A.A. Pain Clinic, Inc.*, 81 P.3d 989, 1008 (Alaska 2003).

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                      Page 17 of 20

### IV. GIVEN THE EVIDENCE THAT IFI, NOT IFP, OWNED AND OPERATED THE QP, AND THE FACT THAT THE INLET ENTITIES SEEK SUMMARY JUDGMENT RELATED SOLELY TO THE QP, SUMMARY JUDGMENT SHOULD NOT BE ENTERED IN FAVOR OF IFP

The Inlet Entities' Motion is premised solely on the *QP* and the *QP* incident. No reference is made anywhere in the motion to the *HARVESTER BARGE* or the May 2003 incident involving that vessel. As stated above, the evidence from Vince Goddard is that IFI, not IFP, owned the *QP*. Goddard also testified that IFI operated the *QP* through direct operations and ownership through the time it was scuttled.[54] He also testified that IFP has no responsibility whatsoever for the *QP*.[55] He testified that, with respect to the *QP*, IFP did not own it, was not responsible for maintaining it, had no financial obligation related to it, and had no financial interest in it.[56] Goddard testified that the response to the *QP* incident was federalized because IFI did not have the assets to respond to the spill.[57] Since the evidence is that IFP had no liability or responsibility for matters related to the *QP*, Totem cannot have had any duty to or contract with IFP related to the *QP*, could not have breached any duty

---

[54] *See* Exhibit A, Goddard Depo. at 17. The Inlet Entities, in their Motion at 4, imply both IFI and IFP operated the *QP.* The evidence does not support this conclusion. The Inlet Entities cite Goddard Depo at 16-17, but, there, Goddard's testimony there is that IFI owned and operated the *QP* until it was scuttled.
[55] *See* Exhibit J, Goddard IFI Depo. at 22.
[56] *Id.*
[57] A reasonable inference from the fact that IFP did not respond to the *QP* spill is that IFP was not the vessel's owner or operator. Under the FWPCA, CERCLA, and Alaska Statute, owners and operators of vessels have potential liability. *See* 33 U.S.C. §§ 2701(32), 2702; A.S. 46.03.822.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                           Page 18 of 20

to or contract with IFP, and could not have caused any damage to IFP related to the *QP*. Accordingly, IFP is not entitled to summary judgment.

## V.  CONCLUSION

For the reasons stated above, and for the reasons stated in Totem's December 16, 2005, Motion for Summary Judgment, the Inlet Entities are not entitled to summary judgment here. While there are other reasons summary judgment should not be entered, the most significant may be that the stand-alone marine pollution policy sought by the Inlet Entities was not commercially available to them. Thus, the Inlet Entities cannot establish that any breach by Totem has caused them harm. In addition, the Inlet Entities overlook the indemnity nature of the Lloyds' Policy and that they have breached other conditions of the Lloyds Policy. Finally, here, the Inlet Entities seek summary judgment based solely on the *QP* incident and the evidence is that IFP had no interest in that vessel. Accordingly, summary judgment should not be entered in favor of the Inlet Entities. Instead, summary judgment should be entered against them and in favor of Totem Agencies.

Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ                                                                                                                    Page 19 of 20

DATED this 3rd day of February 2006 at Anchorage, Alaska.

       MATTHEWS & ZAHARE, P.C.
       Counsel for Third-Party Defendant Totem Agencies


By s/Thomas A. Matthews_____
    Thomas A. Matthews, ABN: 8511179
    Matthews & Zahare, P.C.
    431 W. 7th Ave., Suite 207
    Anchorage, Alaska 99501
    Phone: (907)276-1516
    Fax:(907)276-8955
    tom.matthews@matthewszahare.com

Certificate of Service

I certify that on this 3rd day of February 2006, I caused to be served by electronic mailing the foregoing document to the following:

Brewster H. Jamieson, Esq.
Lane Powell Spears Lubersky LLP
301 W. Northern Lights Blvd., Suite 301
Anchorage, AK 99503
Counsel for Certain Underwriters at Lloyds, London
  And American E & S

John A. Treptow, Esq.
Jahna M. Lindemuth, Esq.
Dorsey & Whitney LLP
1031 West 4th Ave., Suite 600
Anchorage AK 99502
Counsel for Inlet Fisheries, Inc. & Inlet Fish Producers, Inc.

Christopher W. Nicoll, Esq,.
Nicoll Black Misenti & Feig PLLC
816 Second Ave., Suite 300
Seattle, WA 98104
Co-Counsel for Certain Underwriters at Lloyds
  And American E & S


s/Thomas A. Matthews_____
Thomas A. Matthews


Totem's Opposition to Inlet's Motion for Summary Judgment
*Lloyds London v. Inlet Fisheries*, Case No. A04-0058 CV (JKS)
KGS:jlw\3500-13\OppInletMFSJ          Page 20 of 20