IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

---

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., | ) ) ) ) Case No. ) ) A04-0058 CV (JWS) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| INLET FISHERIES, INC., an Alaska corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation, | ) ) ) ) ) |
| Defendants and Third-Party Plaintiffs, | ) ) ) |
| vs. | ) ) |
| TOTEM AGENCIES, INC., a Washington corporation, | ) ) ) |
| Third-Party Defendant. | ) |

*UPS 11:45*
**RECEIVED**
**MATTHEWS & ZAHARE**
DEC 0 2 2005
File No. 3500-13
Atty TAM/KGS
Approved to File

---

30(b)(6) DEPOSITION OF ERIC ALAN PARTHEMER
Thursday, November 17, 2005
Seattle, Washington

Reported by:
Amy Patricia Rostad
CCR No. 1901
Job No. 75218

Exhibit I
Page 1 of 3

Page 102

1  that they wanted to renew and adjusted coverages at that time
2  probably.
3  Q. You were asked a number of questions about why you didn't
4  send the 1998 surveys to WQIS in an attempt to satisfy their
5  request for surveys in 2000; do you recall that?
6  A. Yes.
7  Q. I want to make sure I'm clear: Did you have an understanding
8  as to whether WQIS had already had a surveyor in Bethel in
9  the summer of 2000?
10 A. Well, I believe they did for the MAREN I claim.
11 Q. Was that your assumption?
12 A. Yes.
13 Q. Did you feel like the 1998 surveys would satisfy WQIS?
14 A. No.
15 Q. Why not?
16 A. Because a surveyor had been up there in 2000, he was
17    concerned with the condition of the vessel at that time. If
18    that's what they were -- and they also stated they wanted
19    current surveys.
20 Q. From a surveyor of their designation?
21 A. Of their choice, yes.
22 Q. Couple of housekeeping points: Early in your testimony you
23    were asked about some of the WQIS policies. Could you take a
24    look at Exhibit 5?
25 A. Okay.

Page 103

1  Q. I believe you were asked whether this policy which was the
2     renewal for the '96/'97 time period was just for the two
3     vessels MAREN I and QP; do you recall that?
4  A. Not particularly, but . . .
5  Q. Okay. If that's what you said, is there also an endorsement
6     adding an additional vessel apparently midterm at the back of
7     that exhibit?
8  A. Yes, there is Endorsement No. 1, adding a water barge.
9  Q. If you'd look at Exhibit 3 for a moment.
10 A. Okay.
11 Q. Third page in, TOT 1166.
12 A. Okay.
13 Q. You were asked some questions about the effective date for
14    certain vessels. If I can draw your attention to the section
15    that says there's an effective date?
16 A. For YUKON 6-12 of '99, HARVESTER 5-17 of '00.
17 Q. So that exhibit does, in fact, include effective dates for
18    both those vessels?
19 A. Yes, it does.
20 Q. If you'd look at Exhibit 2.
21 A. Okay.
22 Q. Same question on the top page, I'm not sure that you saw the
23    effective date listed previously?
24 A. For the YUKON, 6-12-00.
25 Q. So that Exhibit 2 does, in fact, include the effective dates

Page 104

1  for the vessels?
2  A. Yes, it does.
3  Q. You were asked a question about your commission early on in
4     your testimony; do you recall that?
5  A. Yes.
6  Q. And you believed I think you said that you worked on a
7     commission most likely?
8  A. Yes.
9  Q. If you'd look in Exhibit 2 at Page TOT 1038, is there an
10    indication that you were paid by commission?
11 A. Yes.
12 Q. Does that show you what your percentage would have been?
13 A. 10 percent.
14         MR. MATTHEWS: Thank you, Mr. Parthemer,
15    that's all I have.
16
17         FURTHER EXAMINATION
18 BY MR. TREPTOW:
19 Q. Couple more questions in response to Mr. Matthews. Looking
20    at Exhibit 10 again.
21 A. Yes.
22 Q. When you read Exhibit 10, did you reach the conclusion that
23    no matter whether or not premiums were paid, and whether or
24    not Inlet had a survey done by a surveyor of WQIS's choice,
25    that even if those two things occurred, WQIS was going to

Page 105

1  cancel the policy?
2  A. As of August 7th, yes.
3  Q. Did that raise any questions in your mind?
4  A. Questions in regards to?
5  Q. Well, did they tell you that they were going to cancel
6     because of nonpayment and the failure to secure the survey
7     and then they said, Oh, but if you do those two things, if
8     you pay and get the survey, we're cancelling anyway; did you
9     wonder what was behind this then?
10 A. Sure.
11 Q. Did you have any discussions with Mr. Garger about what the
12    real reasons for cancellation were?
13 A. No, I did not.
14 Q. After receiving this letter, did you go back and look at the
15    WQIS policy 30-16489 and see what it said about cancellation?
16 A. No, I did not. We went by Alaska statute.
17 Q. And what was there in the -- was there something in the
18    Alaska statute that you thought enabled WQIS to cancel for no
19    reason at all?
20 A. They're stating two reasons in the -- in the letter of August
21    7th.
22 Q. Right. But they're stating the two reasons and then they
23    turn around and say, We don't care if you do both of those
24    things, we're still cancelling; isn't that the way you read
25    it?

## Page 110

1   you, in your own mind, believe that the MAREN I sinking and
2   cleanup was a factor in the loss of insurance?
3   A. Yes.
4           MR. TREPTOW: That's all the questions I
5   have.
6
7           FURTHER EXAMINATION
8   BY MR. MATTHEWS:
9   Q. Just to follow up, Mr. Parthemer, after receiving the August
10  7 communication from WQIS concerning the cancellation, did
11  you speak with Patrick Klier?
12  A. Yes.
13  Q. Did you have a discussion about whether Inlet was willing to
14  do the surveys that had been requested?
15  A. I believe I forwarded the memo to Patrick Klier.
16  Q. It actually says, "Carbon copy Inlet Fisheries, Inc.,"
17  doesn't it?
18  A. Yes, or he had a copy.
19  Q. Did Mr. Klier tell you whether or not Inlet was willing to do
20  the surveys that had been requested?
21  A. He said they were -- I believe he stated they were unwilling
22  to do it if there was no consideration by WQIS to reinstate
23  the policy.
24          MR. MATTHEWS: Thank you, nothing
25  further.

## Page 111

1           THE COURT REPORTER: And are you ordering
2   the transcript?
3           MR. TREPTOW: Yes.
4           THE COURT REPORTER: And what would you
5   like to receive?
6           MR. TREPTOW: I'll get back to you on
7   that.
8           THE COURT REPORTER: And are you ordering
9   a copy?
10          MR. MATTHEWS: Yes.
11          THE COURT REPORTER: And what do you
12  like?
13          MR. MATTHEWS: The works. And, yes, I
14  want to reserve signature.
15          (Signature reserved.)
16          (Deposition concluded
17          at 12:50 p.m.)

## Page 112

1   STATE OF WASHINGTON )   I, Amy Patricia Rostad,
                        ) ss CCR No. 1901, a
2   County of King      )   duly authorized Notary
                            Public in and for the
3                           State of Washington
                            residing at Bothell,
4                           do hereby certify:
5
6
7   That the foregoing deposition of ERIC ALAN
    PARTHEMER was taken before me and completed on November 17,
8   2005, and thereafter was transcribed under my direction; that
    the deposition is a full, true and complete transcript of the
9   testimony of said witness, including all questions, answers,
    objections, motions and exceptions;
10  That the witness, before examination, was by me
    duly sworn to testify the truth, the whole truth, and nothing
11  but the truth, and that the witness reserved the right of
    signature;
12
    That I am not a relative, employee, attorney or
13  counsel of any party to this action or relative or employee
    of any such attorney or counsel and that I am not financially
14  interested in the said action or the outcome thereof;
15  That I am herewith securely sealing the said
    deposition and promptly delivering the same to Attorney JOHN
16  A. TREPTOW.
17  IN WITNESS WHEREOF, I have hereunto set my hand and
    affixed my official seal this 23rd day of November, 2005.
18
19
20
    Amy Patricia Rostad
21  Notary Public in and for the State
    of Washington, residing at Bothell.

## Page 113

CORRECTION SHEET

Deposition of: ERIC ALAN PARTHEMER
Date: November 17, 2005
Case: LLOYD'S, et al. vs INLET FISHERIES, et al.
Cause No.: A04-0058 CV (JWS)
Reporter: Amy Patricia Rostad

Instructions: Please carefully read your deposition and on this correction sheet make any changes or corrections in form or substance that you feel should be made. You may add additional sheets, if necessary. Please do not mark the transcript. Thank you.

PAGE #   LINE #   CORRECTION   REASON FOR CORRECTION

29 (Pages 110 to 113)

Esquire Deposition Services
(206) 624-9099

Exhibit 1
Page 3 of 3

d2ccaed7-c0fe-414f-97fd-d6a649d8430f