```
 1                IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF ALASKA
 3   CERTAIN UNDERWRITERS AT LLOYDS,  )
     LONDON, SUBSCRIBING TO           )
 4   CERTIFICATE OF INSURANCE         )
     OP01 0025, through Puget Sound   )
 5   Underwriters, Inc.,              )
                                      )
 6                  Plaintiffs,       )
                                      )
 7   vs.                              )
                                      )
 8   INLET FISHERIES, INC., an        )
     Alaska Corporation, and          )
 9   INLET FISH PRODUCERS, INC.,      )
     an Alaska Corporation,           )
10                                    )
                    Defendants,       )
11   _____

12   INLET FISH PRODUCERS, INC.,
     an Alaskan Corporation,
13
          Third-Party Plaintiffs,
14
     vs.
15                                    )
     TOTEM AGENCIES, INC., a          )
16   Washington Corporation, and      )
     AMERICAN E&S INSURANCE BROKERS   )
17   CALIFORNIA, INC., a Washington   )
     Corporation,                     )
18                                    )
          Third-Party Defendants.     )
19   _____ )
     IN ADMIRALTY
20   USDC Alaska No.: A04-0058 CV
21
            VIDEOTAPE DEPOSITION OF VINCENT L. GODDARD
22          30(b)(6) of INLET FISH PRODUCERS, INC.
23                    November 10, 2005
24
25            COPY
```

Stamp: RECEIVED MATTHEWS & ZAHARE NOV 23 2005  File No. 3500-13  Atty TAM/KGS  Approved to File

Exhibit K
Page 1 of 4

INLET FISH PRODUCERS 30(b)(6)   11/10/2005   LLOYDS LONDON v. INLET FISHERIES
Vol. 1                                       A04-0058 Civil

Page 18

```
 1         dissemination.  They're not -- you know, they're not meant
 2         to be relied upon by third parties in order to provide
 3         financing or do business.
 4    Q    Are they for internal purposes only?
 5    A    Yes.
 6    Q    The Harvester Barge was sold during the year 2003.
 7    A    Yes.
 8    Q    If Inlet Fish Producers had not been covered by marine
 9         pollution liability insurance, would it have changed your
10         operations of the Harvester Barge in any way?
11         MR. TREPTOW:  Objection.
12    A    During which time period?
13    Q    Say 2003.
14         MR. TREPTOW:  Same objection.
15    A    It requires me to conjecture about what would have
16         happened in the past and how we would have made decisions,
17         so it's really not possible to answer.  In other words, if
18         we had been without insurance from 2000 onward,
19         essentially is what you're saying, what would we have done
20         differently.  I don't know.
21    Q    Do you know if you would have done anything differently?
22         MR. TREPTOW:  Same objection.
23    A    Of course I don't know that, but I can conjecture.  I
24         don't know if we need to get into conjecture here.
25         There's lots of different things that we might have done.
```

Page 19

```
 1        I very well may have pursued more aggressively the sale of
 2        the vessel during an earlier period of time.
 3    Q   Inlet Fish Producers is currently an operating company,
 4        correct?
 5    A   Yes.
 6    Q   And there have been a number of documents that have been
 7        produced during the course of this litigation that are
 8        labeled IF Fed and then they have a series of numbers on
 9        them and my question is simply this.  Are those documents
10        that have been produced currently being maintained by
11        Inlet Fish Producers?
12    A   Yes.
13    Q   And are they part of the business records of Inlet Fish
14        Producers?
15    A   The ones that pertain to Inlet Fish Producers, yes.
16    Q   How about records that may have pertained to other
17        entities that are now in the possession of Inlet Fish
18        Producers?
19    A   Those are not the business records of Inlet Fish
20        Producers.
21    Q   Let me ask you this.  The records that have been produced
22        concerning the Harvester Barge, are those all the business
23        records of Inlet Fish Producers?
24    A   I believe so, yes.
25    Q   Records relating to communications between Inlet Fish
```

1    C E R T I F I C A T E

2    UNITED STATES OF AMERICA    )
                                 )ss
3    STATE OF ALASKA             )

4         I, Joseph P. Kolasinski, Notary Public in and for the
5    state of Alaska, residing in Anchorage in said state, do hereby
6    certify that the deponent in the foregoing matter was duly
7    sworn to testify to the truth, and nothing but the truth;
8         That said testimony was taken at the time and place
9    therein stated;
10        That the testimony of said witness was recorded by
11   videotape and electronically and thereafter transcribed under
12   my direction and reduced to print;
13        That the foregoing is a full, complete, and true record of
14   said testimony.
15        I further certify that I am not a relative, nor employee,
16   nor attorney, nor of counsel of any of the parties to the
17   foregoing matter, nor in any way interested in the outcome of
18   the matter therein named.
19        IN WITNESS WHEREOF I have hereunto set my hand and affixed
20   my seal this 22nd day of November, 2005
21
22                                  _____
23                                  Joseph P. Kolasinski, Notary Public
                                    in and for the State of Alaska.
                                    My Commission Expires:  03/12/2008
24
25