COPY

RECEIVED
NOV 1 7 2000
TOTEM AGENCIES, INC.

# POLICY OF INSURANCE
(Combined Companies Form)

No. MH00513

In consideration of the premium as hereinafter stated, the various companies named herein, severally but not jointly, do hereby insure the assured named herein for the amounts of the proportions set opposite their respective names. All subject to the terms and conditions of the forms and endorsements attached herein.

ASSURED: Inlet Fish Producers, Inc. and Inlet Fisheries Inc., Kenai Alaska
Artic Salmon Inc.

LOSS PAYEE: Assured or Order

VESSEL: "Inlet Harvestor" & "Harvestor Barge"

COVERAGE: Per Schedule

PERIOD: May 5, 2000 , Noon, Pacific Standard Time to
May 5, 2001, Noon, Pacific Standard Time

CONDITIONS: As Attached

PREMIUM: $13,850.00

Any provisions required by law to be stated in the policies issued by any company subscribing hereto shall be deemed to have been stated herein. It is further agreed that each of the companies will issue their individual policies in accord with the terms described herein, upon demand by the Assured.

In witness whereof, the companies hereinafter named have caused this policy to be issued and signed by a duly authorized officer, attorney or agent at Long Beach, CA. this 13 day of November 2000.

BY: David P. Esqueda
ROANOKE TRADE SERVICES, INC.

# BLANCH CRAWLEY WARREN

Roanoke Trade Services, Inc., Bellevue, WA.

16th May, 2000

In accordance with your instructions the following amendment to Cover Note Number MH005013 in the name of Inlet Fish Producers, Inc., Inlet Fisheries, Inc. and Arctic Salmon, Inc. has been effected on your behalf.

Hull & Machinery etc.

**Addendum Number: 1**

Notwithstanding anything contained herein to the contrary it is hereby noted and agreed, effective inception, following amendments to apply to coverage in respect of vessel "Harvester Barge" 1944 (Rebuilt) 110' Steel Processor:-

i) Hull and Machinery value reduced to USD 250,000.
ii) New Annual Premium: USD7,500 in full for period.

All other terms, clauses and conditions remain unaltered.

*Please examine this addendum carefully and if the amendments to cover are not in accordance with your requirements and/or if there has been a security change and the security stated hereon is not acceptable please advise us immediately. The cautionary comments stated in our original cover note also apply to this addendum.*

**Blanch Crawley Warren Limited**

Per K. J. Tait

RECEIVED
NOV 1 7 2000
TOTEM AGENCIES, INC.

 BLANCH CRAWLEY WARREN
AMERICA HOUSE, AMERICA SQUARE, LONDON EC3N 2 AH

16th May, 2000

Roanoke Trade Services, Inc.,
15734 N.E. 1st Street,
Bellevue,
Washington 98008
U.S.A.

## COVER NOTE

In accordance with your instructions the following insurance has been effected on your behalf.

Cover Note Number: MH005013.

Form: MAR 91.

Assured: Inlet Fish Producers, Inc. and Inlet Fisheries Inc., Kenai, Alaska. Arctic Salmon Inc.

Vessel:
1) "INLET HARVESTER" 1945 (Rebuilt) 166ft. Steel Processor.
2) "HARVESTER BARGE" 1944 (Rebuilt) 110ft Steel Processor.

Period: Twelve months at noon, 5th May, 2000, Local Standard Time..

Interest: Hull and Machinery and everything connected therewith valued:-
1) USD250,000 (2) USD400,000.
Plus 1% collecting commission.

Sum Insured: 100% of value and limits.

Situated: Whilst laid-up afloat alongside, not under repair, Homer, Alaska, pending sale.

Conditions: Institute Time Clauses Hull-Port Risks 20.7.87 CL311 with the words "This Insurance is subject to English Law and Practice" deleted.
Subject to a hull deductible of USD25,000 each and every accident or occurrence excepting total loss which payable in full.
Including strikes, riots, civil commotions, vandalism and malicious damage as per London Institute Clauses.

TOT 03016

BLANCH CRAWLEY WARREN LTD
REGISTERED OFFICE:
32 38 LEMAN STREET
T 020 7480 9000
F 020 7480 9100
E

Attaching to and forming part of Cover Note No: MH005013.

Conditions:
(Continued)

Protection and indemnity, subject to Lazards SP.23 (Revised 1/56) Form to limit of: Vessel 1) USD500,000, Vessel (2) USD1,000,000 any one accident any one occurrence.
Institute Protection and Indemnity Clause Amendment CL357.
Subject deductible USD5,000 any one accident any one occurrence.
Excluding crew liabilities.
Excluding all claims arising from bodily injury or death of employees of any named assured under U.S. Longshoreman and Harbor Workers' Compensation Act.
Oil Pollution Act Exclusion Clause including Limited Buy Back per 7 days/90 day Sudden and Accidental Wording.
Institute Service of Suit Clause (CL 355).
Subject to Cancelment Notice Clause (893CW00105).
Institute Radioactive Contamination Exclusion Clause (CL 356).
Warranted no processing or cargo storage whilst laid up.
Warranted no known pre-existing structural damage.

Premium:

Premium in full for period: 1) USD5,000 (2) USD8,580.
Including 1% of gross premium for collecting commission.
Full annual premium if lost - peril insured against.

Security:

This Insurance is placed with various Underwriting Members of Lloyd's, London. Each member being liable only for their own share of this Insurance and not one for another. The total percentage undertaken by Lloyd's Underwriters subscribing to this Insurance is 100 per cent.

Information:
N.L.O.W.

Vessel: 1) Laid up pending sale.
2) Vessel to be used as work platform/dock and/or housing.

*Every proposer when seeking new insurance or renewing an existing policy must disclose any information which might influence the underwriters in deciding whether or not to accept the risk, what the terms should be, or what premiums to charge. Insurance contracts being subject to a duty of the utmost good faith, failure to do so may render the insurance voidable from inception and enable the underwriters to repudiate liability.*

*This cover note is our advice to you that a contract of insurance (or reinsurance) has been effected with the underwriters shown, using the information which you have provided or agreed. The insurance (or reinsurance) contract is subject to all terms and conditions of the policy to be issued and in the event of any inconsistency between the policy and this cover note, the policy shall prevail.*

*Please examine this cover note carefully to confirm that cover has been arranged in accordance with your requirements and that the security shown is acceptable. If not, please advise us immediately. This risk may have been placed under a Blanch Crawley Warren facility.*

BLANCH CRAWLEY WARREN
PER: [signature] Tait

TOT 03017

Lloyds Security in respect of Master Cover: 99MH013

Attaching to and forming part of Cover Note No: MH005013

| Signed Line % | Syndicate Number | Pseudonym |
|---|---|---|
| 5.39 | 488 | JCH |
| 14.54 | 2488 | JCH |
| 10.87 | 102 | KER |
| 7.25 | 1265 | MMO |
| 9.57 | 588 | NJM |
| 4.93 | 1209 | MEB |
| 7.25 | 2020 | WEL |
| 5.43 | 382 | PWH |
| 5.43 | 1093 | MVH |
| 4.35 | 741 | FCD |
| 1.09 | 2741 | GCU |
| 2.07 | 861 | MDR |
| 1.56 | 1209 | MEB |
| 3.62 | 187 | CRH |
| 5.43 | 902 | PBC |
| 3.62 | 609 | MED |
| 5.43 | 112 | DER |
| 2.17 | 362 | WEH |
| 100% | | |

TOT 03018

LONDON NOVEMBER 1990

## U.S. OIL POLLUTION EXCLUSION CLAUSE

Notwithstanding anything contained in this policy to the contrary, this policy shall not apply to or cover any loss, damage, cost, liability, expense, fine, penalty or punitive or exemplary damage whatsoever, directly or indirectly caused by or contributed to by or arising from the actual, alleged, suspected or threatened discharge, release, dispersal, emission, spillage or leakage of oil into or upon the navigable waters of the United States of America, or adjoining shorelines, or the exclusive economic zone of the United States established by presidential proclamation numbered 5030, dated March 10, 1983.

For the purposes of this Clause, oil means oil of any kind or in any form, including but not limited to, crude oil, petroleum, fuel oil, sludge, oil refuse, and oil mixed with any wastes or other substances.

893CW00026

EXHIBIT V
Page 6 of 22

## SEEPAGE AND POLLUTION BUY-BACK

This policy excludes Seepage and Pollution absolutely.

Notwithstanding the Seepage and Pollution Exclusions above, this shall not apply provided that Assured establishes that all of the following conditions have been met:

A. The Seepage and Pollution was caused by an event.

B. The event was accidental and was neither expected nor intended by the Assured. An accident shall not be considered unintended or unexpected unless caused by some intervening event, neither expected or intended by the Assured.

C. The event can be identified as first commencing at a specific time and date during the terms of this policy.

D. The event became known to the Assured within 7 days after its first commencement and was reported to Underwriters within 90 days thereafter.

E. The occurrence did not result from the Assured's intentional or wilful violation of any government stature, rule or regulation.

Nothing contained in this endorsement shall operate to provide any coverage hereon with respect to:

1. Removal of, loss of, or damage to sub-surface oil, gas or any other substance.

2. Fines, penalties, punitive damages, exemplary damages, treble damages or any damages resulting from the multiplication of compensatory damages.

3. Any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waster materials or substances.

4. The cost of evaluation and/or monitoring and/or controlling seepage and/or contaminating substances.

5. The cost of removing and/or nullifying and/or cleaning up seepage and/or contaminating substances on property at anytime owned and/or leased and/or rented by the Assured and/or under the control of the Assured.

All other terms, clauses and conditions remaining unaltered.

MISC\SPBB

**PROTECTION AND INDEMNITY**

**SP 23 (REVISED)**

**Amount Insured $**
**Premium $**
**Rate AGREED**

**No. P.I.**

______________________

____________________ hereinafter called the Assured

*Loss, if any, payable to* ____________________ or order

*In the sum of* ________ **AND NO/100**------------------------**Dollars**

at and from the ___ day of ___ 19 at ________ time
until the ________ day of ___ 19 at ________ time
against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth, in respect of the vessel called the _____ (Tonnage Agreed ) or by whatsoever other names the said vessel is or shall be named or called.

In consideration of the Stipulations Herein Named and of **PREMIUM INCLUDED** ________ Dollars, being Premium at the rate of **AGREED**

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

Loss of Life, injury and illness

(1) **Liability for loss of life of, or personal injury to, or illness of, any person, excluding, however, unless otherwise agreed by endorsement hereon,** liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others.

Protection hereunder for loss of life or personal injury arising in connection with the handling of cargo of the vessel named herein shall commence from the time of receipt by the Assured of the cargo on dock or wharf or on craft alongside the said vessel for loading thereon and shall continue until delivery thereof from dock or wharf of discharge or until discharge from the said vessel on to another vessel or craft.

Hospital, medical, or other expenses

(2) Liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel named herein or any other person. Liability hereunder shall also include burial expenses not exceeding Two Hundred ($200) Dollars, when necessarily and reasonably incurred by the Assured for the burial of any seaman of said vessel.

Repatriation expenses

(3) Liability for repatriation expenses of any member of the crew of the vessel named herein, necessarily and reasonably incurred, under statutory obligation, excepting such expenses as arise out of or ensue from the termination of any agreement in accordance with the terms thereof, or by mutual consent, or by sale of the said vessel, or by other act of the Assured. Wages shall be included in such expenses when payable under statutory obligation, during unemployment due to the wreck or loss of the said vessel.

Damage to other vessel or property on board caused by collision

(4) Liability for loss of, or damage to, any other vessel or craft, or to the freight thereof, or property on such other vessel or craft, caused by collision with the vessel named herein, insofar as such liability would not be covered by full insurance under the ____

____________________ **(including the four-fourths running-down clause).**

Principle of cross-liabilities to prevail

(a) Claims under this clause shall be settled on the principle of cross- liabilities to the same extent only as provided in the running-down clause above mentioned.

(b) Claims under this clause shall be divided among the several classes of claims enumerated in this policy and each class shall be subject to the deduction and special conditions applicable in respect of such class.

(c) Notwithstanding the foregoing, if any one or more of the various liabilities arising from such collision has been compromised, settled or adjusted without the written consent of the Assurer, the Assurer shall be relieved of liability for any and all claims under this clause.

Damage to other vessel or property on board not caused by collision

(5) Liability for loss of or damage to any other vessel or craft, or to property on such other vessel or craft, not caused by collision, provided such liability does not arise by reason of a contract made by the assured.
Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

Damage to docks, piers, etc.

(6) Liability for damage to any dock, pier, harbor, bridge, jetty, buoy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever, except another vessel or craft, or property on another vessel or craft.
Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

Removal of wreck

(7) Liability for cost or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law, provided, however, that:

(a) There shall be deducted from such claim for cost or expenses, the value of any salvage from or which might have been recovered from the wreck, inuring, or which have inured, to the benefit of the Assured.

TOT 03021

(b) The Assurer shall not be liable for such costs or expenses which would be covered by full insurance under the_____ or claims ·ing out of hostilities or war-like operations, whet· ·efore or after declaration of war.

Cargo (8) Liability for loss of, or damage to, or in connection with cargo or other property, excluding mail and parcel post, including baggage and personal effects of passengers, to be carried, carried, or which has been carried on board the vessel named herein:

**Provided, however, that no liability shall exist under this provision for:**

Specie, bullion, precious stones, etc. (a) Loss, damage or expense arising out of or in connection with the custody, care, carriage or delivery of specie, bullion, precious stones, precious metals, jewelry, silks, furs, bank notes, bonds or other negotiable documents or similar valuable property, unless specially agreed to and accepted for transportation under a form of contract approved, in writing, by the Assurer.

Refrigeration (b) Loss of, or damage to, or in connection with cargo requiring refrigeration unless the space, apparatus and means used for the care, custody, and carriage thereof have been surveyed by a classification surveyor or other competent disinterested surveyor under working conditions before the commencement of each voyage and found in all respects fit, and unless accepted for transportation under a form of contract approved, in writing, by the Assurer.

Passengers' effects (c) Loss, damage, or expense in connection with any passenger's baggage or personal effects, unless the form of ticket issued to the passenger shall have been approved, in writing, by the Assurer.

Stowage in improper places (d) Loss, damage, or expense arising from stowage of underdeck cargo on deck or stowage of cargo in spaces not suitable for its carriage, unless the Assured shall show that every reasonable precaution has been taken by him to prevent such improper stowage.

Deviation (e) Loss, damage, or expense arising from any deviation, or proposed deviation, not authorized by the contract of affreightment, known to the Assured in time to insure specifically the liability therefor, unless notice thereof is given to the Assurer and the Assurer agrees, in writing, that such insurance is unnecessary.

Freight on cargo short delivered (f) Freight on cargo short delivered, whether or not prepaid or whether or not included in the claim and paid by the Assured.

Misdescription of Goods (g) Loss, damage, or expense arising out of or as a result of the issuance of Bills of Lading which, to the knowledge of the Assured, improperly describe the goods or their containers as to condition or quantity.

Failure to surrender Bill of Lading (h) Loss, damage, or expense arising out of delivery of cargo without surrender of Bill of Lading.

**And provided further that**

(aa) Liability hereunder shall in no event exceed that which would be imposed by law in the absence of contract.

Protective clauses required in contract of affreightment (bb) Liability hereunder shall be limited to such as would exist if the Charter Party, Bill of Lading or Contract of Affreightment contained the following clause (in substitution for the clause commonly known as the Jason Clause):

"In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the shipowner is not responsible, by statute or contract or otherwise, the shippers, consignees or owners of the cargo shall contribute with the shipowner in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo."

When cargo is carried by the vessel named herein under a bill of lading or similar document of title subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as is imposed by said Act, and if the Assured or the vessel named herein assumes any greater liability or obligation than the minimum liabilities and obligations imposed by said Act, such greater liability or obligation shall not be covered hereunder.

Limit per package — When cargo is carried by the vessel named herein under a charter party, bill of lading or contract of affreightment not subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as would exist if said charter party, bill of lading, or contract of affreightment contained the following clauses: a clause limiting the Assured's liability for total loss or damage to goods shipped to Two Hundred and Fifty ($250) Dollars per package, or in case of goods not shipped in packages, per customary freight unit, and providing for pro rata adjustment on such basis for partial loss or damage; a clause exempting the Assured and the vessel named herein from liability for losses arising from unseaworthiness, even though existing at the beginning of the voyage, provided that due diligence shall have been exercised to make the vessel seaworthy and properly manned, equipped, and supplied; a clause providing that the carrier shall not be liable for claims in respect of cargo unless notice of claim is given within the time limited in such Bill of Lading and suit is brought thereon within the limited time prescribed therein; and such other protective clauses as are commonly in use in the particular trade; provided the incorporation of such clauses is not contrary to law.

The foregoing provisions as to the contents of the Bill of Lading and the limitation of the Assurer's liability may, however, be waived or altered by the Assurers on terms agreed, in writing.

Assured's own cargo (cc) Where cargo on board the vessel named herein is the property of the Assured, such cargo shall be deemed to be carried under a contract containing the protective clauses described in the preceding paragraph, and such cargo shall be deemed to be fully insured under the usual form of cargo policy, and in case of loss thereof or damage thereto the Assured shall be insured hereunder in respect of such loss or damage only to the extent that they would have been covered if said cargo had belonged to another, but only in the event and to the extent that the loss or damage would not be recoverable under a cargo policy as hereinbefore specified.

Cotton Bills of Lading (dd) The Assured's liability for claims under Custody Cotton Bills of Lading issued under the conditions laid down by the Liverpool Bill of Lading Conference Committee, is covered subject to previous notice of contract and payment of an extra premium of two(2¢) cents per ton gross register per voyage, but such additional premium shall be waived provided every bale is re-marked at port of shipment on another portion of the bale.

Land transportation not included (ee) No liability shall exist hereunder for any loss, damage or expense in respect of cargo before loading on or after transported on land or on another vessel.

No liability shall exist hereunder for any loss, damage or expense in respect of cargo or other property being discharge from the vessel named herein caused by flood, tide, windstorm, earthquake, fire, explosion, heat, cold, deterioration, collapse of wharf, leaky shed, theft or pilferage unless such loss, damage or expense is caused directly by the vessel named herein, her master, officers or crew.

Customs, immigration or other fines or penalties (9) Liability for fines and penalties, including expenses necessarily and reasonably incurred in avoiding or mitigating same, for the violation of any of the laws of the United States, or of any State thereof, or any foreign country; provided, however, that the Assurer shall not be liable to indemnify the Assured against any such fines or penalties

resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.

Mutiny or other misconduct (10) Expenses incurred [illegible]sisting any unfounded claim by the master or cre[illegible] other persons employed on the vessel named he[illegible], or in prosecuting such persons in case of mutiny [illegible] other misconduct.

Extraordinary expenses in case of quarantine, etc. (11) Liability for extraordinary expenses resulting from outbreak of plague or other contagious disease, including such expenses incurred for disinfection of the vessel named herein or persons on board, or for quarantine, but excluding the ordinary expenses of loading and/or discharging, and the wages and provisions of crew and passengers; each claim under this provision is subject to a deduction of Two Hundred ($200) Dollars. It is provided further, however, that if the vessel named herein be ordered to proceed to a port when it is or should be known that calling there will subject the vessel to the extraordinary expenses above mentioned, or to quarantine or disinfection there or elsewhere, the Assurer shall be under no obligation to indemnify the Assured for any such expenses.

Deviation for purpose of landing injured or ill (12) Net loss due to deviation incurred solely for the purpose of landing an injured or sick seaman in respect of port charges incurred, insurance, bunkers, stores, and provisions consumed as a result of the deviation.

Cargo's proportion of general average (13) Liability for, or loss of, cargo's proportion of general average, including special charges, in so far as the Assured cannot recover same from any other source; subject however, to the exclusions of Section (8) and provided, that if the Charter Party, Bill of Lading, or Contract of Affreightment does not contain the quoted clause under Section 8 (bb) the Assurer's liability hereunder shall be limited to such as would exist if such clause were contained therein.

Costs and charges (14) Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

GENERAL CONDITIONS AND/OR LIMITATIONS

Prompt notice of claim — Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communication, processes, pleadings and other legal papers or documents relating to such occurrences.

Settlement of claims — The Assured shall not make any admission of liability, either before or after any occurrence which may result in a claim for which the Assurer may be liable. The Assured shall not interfere in any negotiations of the Assurer, for settlement of any legal proceedings in respect of any occurrences for which the Assurer is liable under this policy provide, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured are obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance. If the Assured shall fail or refuse to settle any claim as authorized by Assurer, the liability of the Assurer to the Assured shall be limited to the amount for which settlement could have been made.

Assured to assist with evidence in defense, etc. — Whenever required by the Assurer the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Assurer in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as hereinbefore provided.

Law costs — The Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible. The cost and expense of prosecuting any claim in which the Assurer shall have an interest by subrogation or otherwise, shall be divided between the Assured and the Assurer, proportionately to the amounts which they would be entitled to receive respectively, if the suit should be successful.

The Assurer shall be liable for the excess where the amount deductible under this policy is exceeded by (A) the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or (B) the amount paid by the Assured either under a judgment or an agreed settlement based on the liability covered herein including all costs, expenses of defense and taxable disbursements.

Subrogation — The Assurer shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure to the Assurer such rights.

The Assurer shall be entitled to take credit for any profit accruing to the Assured by reason of any negligence or wrongful act of the Assured's servants or agents, up to the measure of their loss, or to recover for their own account from third parties any damage that may be provable by reason of such negligence or wrongful act.

Cover elsewhere — Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the Assurer, under this policy, there shall be no contribution by the Assurer on the basis of double insurance or otherwise.

Assignments — No claim or demand against the Assurer under this policy shall be assigned or transferred, and no person, excepting a legally appointed receiver of the property of the Assured, shall acquire any right against the Assurer by virtue of this insurance without the expressed consent of the Assurer.

Actions against Assurers — No action shall lie against the Assurer for the recovery of any loss sustained by the Assured unless such action is brought against the Assurer within one year after the final judgment or decree is entered in the litigation against the Assured, or in case the claim against the Assurer accrues without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim.

Time limitation — The Assurer shall not be liable for any claim not presented to the Assurer with proper proofs of loss within six (6) months after payment thereof by the Assured.

Lay-up returns — At the expiration of this policy, the Assurer is to return__NIL__for each thirty (30) consecutive days during the term of this insurance the vessel may be laid up in a safe port; or__NIL__for each thirty 30 consecutive days during the term of this insurance the vessel may be laid up in a safe port without loading and/or discharging and without crew or cargo on board, provided the Assured give written notice to the Assurer as soon as practicable after the commencement and the termination of such lay-up period.

**Cancellation provisions:**

(a) If the vessel named herein should be sold or requisitioned and this policy be cancelled and surrendered, the Assurer to return ___AGREED___ for each thirty (30) consecutive days of the unexpired term of this insurance.

(b) In the event of non-payment of premium within sixty (60) days after attachment, this policy may be cancelled by the Assurer upon five (5) days' written notice being given the Assured.

(c) In the event that Sections 182 to 189, both inclusive, of U.S. Code, Title 46, or any other existing law or laws determining or limiting liability of shipowners and carriers, or nay of them, shall, while this policy is in force, be modified, amended or repealed, or the liabilities of shipowners or carriers be increased in any respect by legislative enactment, the

Assurer shall have the right to cancel said insurance upon giving thirty (30) days' written notice of their intention so to do, and in the event of such cancellation, make return of premium upon a pro rata daily basis.

Notwithstanding a... ...ning to the contrary contained in this policy, no liability attaches to the Assurer:

**For any loss, damage, or expense which would be payable under the terms of the form of policy on hull and machinery, etc., if the vessel were fully covered by such insurance sufficient in amount to pay such loss, damage, or expense.**

For any loss, damage or expense sustained by reason of capture, seizure, arrest, restraint or detainment, or the consequence thereof or of any attempt thereat: or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether The Assured's liability thereof is based on negligence or otherwise, and whether before or after a declaration of war.

For any loss, damage, or expense arising from the cancellation or breach of any charter, bad debts, fraud of agents, insolvency, loss of freight hire or demurrage, or as a result of the breach of any undertaking to load any cargo, or in respect of the vessel named herein engaging in any unlawful trade or performing any unlawful act, with the knowledge of the Assured.

For any loss, damage, expense, or claim arising out of or having relation to the towage of any other vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this policy for loss of life or personal injury to passengers and/or members of the crew of the vessel named herein arising as a result of towing.

For any claim for loss of life or personal injury in relation to the handling of cargo where such claim arises under a contract of indemnity between the Assured and his sub-contractor.

It is expressly understood and agreed if and when the Assured under this policy has any interest other than as a shipowner in the vessel or vessels named herein, in no event shall the Assurer be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled.

Unless otherwise agreed by endorsement to this policy, liability hereunder shall in no event exceed that which would be imposed on the Assured by law in the absence of contract.

Liability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured.

Attached to and forming part of Policy No. of **COMBINED COMPANIES FORM THROUGH ROANOKE BROKERAGE SERVICES, INC.**

# INSTITUTE TIME CLAUSES HULLS
# PORT RISKS including LIMITED NAVIGATION

This insurance is subject to English law and practice

1. NAVIGATION

1.1 The vessel has leave to proceed to and from any wet or dry docks harbours ways cradles and pontoons, within the limits specified in this insurance.

1.2 The vessel is held covered in case of deviation or change of voyage, provided notice be given immediately after receipt of advices and any amended terms of cover and any additional premium required be agreed.

2. CONTINUATION

Should the vessel at the expiration of this insurance be at sea or in distress or at a port of refuge or of call, she shall, provided previous notice be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.

3. TERMINATION

**This Clause 3 shall prevail notwithstanding any provision whether written typed or printed in this insurance inconsistent therewith.**

Unless the Underwriters agree to the contrary in writing, this insurance shall terminate automatically at the time of

3.1 change of the Classification Society of the vessel, or change, suspension, discontinuance, withdrawal or expiry of her Class therein, provided that if the vessel is at sea such automatic termination shall be deferred until arrival at her next port. However where such change, suspension, discontinuance or withdrawal of her Class has resulted from loss or damage covered by Clause 5 of this insurance or which would be covered by an insurance of the vessel subject to current Institute War and Strikes Clauses Hulls-Time such automatic termination shall only operate should the vessel sail from her next port without the prior approval of the Classification Society,

3.2 any change, voluntary or otherwise, in the ownership or flag, transfer to new management, or charter on a bareboat basis, or requisition for title or use of the vessel. However, in the event of requisition for title or use without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such requisition whether the vessel is in port or at sea.

4. ASSIGNMENT

No assignment of or interest in this insurance or in any moneys which may be or become payable thereunder is to be binding on or recognised by the Underwriters unless a dated notice of such assignment or interest signed by the Assured, and by the assignor in the case of subsequent assignment, is endorsed on the policy and the policy with such endorsement is produced before payment of any claim or return of premium thereunder.

5. PERILS

5.1 This insurance covers loss of or damage to the subject-matter insured caused by

5.1.1 perils of the seas rivers lakes or other navigable waters

5.1.2 fire ..ntning explosion

5.1.3 violent theft by persons from outside the vessel

5.1.4 jettison

5.1.5 piracy

5.1.6 breakdown of or accident to nuclear installations or reactors

5.1.7 contact with aircraft or similar objects, or objects falling therefrom, land conveyance, dock or harbour equipment or installation.

5.2 This insurance covers loss of or damage to the subject-matter insured caused by

5.2.1 accidents in loading discharging or shifting cargo or fuel

5.2.2 bursting of boilers breakage of shafts or any latent defect in the machinery or hull

5.2.3 negligence of Master Officers Crew or Pilots

5.2.4 negligence of repairers or charterers provided such repairers or charterers are not an Assured hereunder

5.2.5 barratry of Master Officers or Crew,

provided such loss or damage has not resulted from want of due diligence by the Assured, Owners or Managers.

5.3 Master Officers Crew or Pilots not to be considered Owners within the meaning of this Clause 5 should they hold shares in the vessel.

6. EARTHQUAKE AND VOLCANIC ERUPTION EXCLUSION

In no case shall this insurance cover loss damage liability or expense caused by earthquake or volcanic eruption. This exclusion applies to all claims including claims under Clauses 8, 10, 12 and 14.

7. POLLUTION HAZARD

This insurance covers loss of or damage to the vessel caused by any governmental authority acting under the powers vested in it to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the vessel for which the Underwriters are liable under this insurance, provided such act of governmental authority has not resulted from want of due diligence by the Assured, the Owners, or Managers of the vessel or any of them to prevent or mitigate such hazard or threat. Master, Officers, Crew or Pilots not to be considered Owners within the meaning of this Clause 7 should they hold shares in the vessel.

8. COLLISION LIABILITY

8.1 The Underwriters agree to indemnify the Assured for any sum or sums paid by the Assured to any other person or persons by reason of the Assured becoming legally liable by way of damages for

8.1.1 loss of or damage to any other vessel or property on any other vessel

8.1.2 delay to or loss of use of any such other vessel or property thereon

8.1.3 general average of, salvage of, or salvage under contract of, any such other vessel or property thereon,

where such payment by the Assured is in consequence of the vessel hereby insured coming into collision with any other vessel.

8.2 The indemnity provided by this Clause 8 shall be in addition to the indemnity provided by the other terms and conditions of this insurance and shall be subject to the following provisions:

8.2.1 Where the insured vessel is in collision with another vessel and both vessels are to blame then, unless the liability of one or both vessels becomes limited by law, the indemnity under this Clause 8 shall be calculated on the principle of cross-liabilities as if the respective Owners had been compelled to pay to each other such proportion of each other's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of the collision.

8.2.2 In no case shall the Underwriters' total liability under Clauses 8.1 and 8.2 exceed their proportionate part of the insured value of the vessel hereby insured in respect of any one such collision.

8.3 The Underwriters will also pay the legal costs incurred by the Assured or which the Assured may be compelled to pay in contesting liability or taking proceedings to limit liability, with the prior written consent of the Underwriters.

EXCLUSIONS

8.4 Provided always that this Clause 8 shall in no case extend to any sum which the Assured shall pay for or in respect of

8.4.1 removal or disposal of obstructions, wrecks, cargoes or any other thing whatsoever

8.4.2 any real or personal property or thing whatsoever except other vessels or property on other vessels

8.4.3 the cargo or other property on, or the engagements of, the insured vessel

8.4.4 loss of life, personal injury or illness

8.4.5 pollution or contamination of any real or personal property or thing whatsoever (except other vessels with which the insured vessel is in collision or property on such other vessels).

9. **SISTERSHIP**

Should the vessel hereby insured come into collision with or receive salvage services from another vessel belonging wholly or in part to the same Owners or under the same management, the Assured shall have the same rights under this insurance as they would have were the other vessel entirely the property of Owners not interested in the vessel hereby insured; but in such cases the liability for the collision or the amount payable for the services rendered shall be referred to a sole arbitrator to be agreed upon between the Underwriters and the Assured.

10. **PROTECTION AND INDEMNITY**

10.1 The Underwriters agree to indemnify the Assured for any sum or sums paid by the Assured to any other person or persons by reason of the Assured becoming legally liable, as owner of the vessel, for any claim, demand, damages and/or expenses, where such liability is in consequence of any of the following matters or things and arises from an accident or occurrence during the period of this insurance:

10.1.1 loss of or damage to any fixed or movable object or property or other thing or interest whatsoever, other than the vessel, arising from any cause whatsoever in so far as such loss or damage is not covered by Clause 8

10.1.2 any attempted or actual raising, removal or destruction of any fixed or movable object or property or other thing, including the wreck of the vessel, or any neglect or failure to raise, remove, or destroy the same

10.1.3 liability assumed by the Assured under contracts of customary towage for the purpose of entering or leaving port or manoeuvring within the port during the ordinary course of trading

10.1.4 loss of life, personal injury, illness or payments made for life salvage

10.1.5 liability under Clause 1(a) of the current Lloyd's Standard Form of Salvage Agreement in respect of unsuccessful, partially successful, or uncompleted services if and to the extent that the salvor's expenses plus the increment exceed any amount otherwise recoverable under the Agreement.

10.2 The Underwriters agree to indemnify the Assured for any of the following arising from an accident or occurrence during the period of this insurance:

10.2.1 the additional cost of fuel, insurance, wages, stores, provisions and port charges reasonably incurred solely for the purpose of landing from the vessel sick or injured persons or stowaways, refugees, or persons saved at sea

10.2.2 additional expenses brought about by the outbreak of infectious disease on board the vessel or ashore

10.2.3 fines imposed on the vessel, on the Assured, or on any Master Officer crew member or agent of the vessel who is reimbursed by the Assured, for any act or neglect or breach of any statute or regulation relating to the operation of the vessel, provided that the Underwriters shall not be liable to indemnify the Assured for any fines which result from any act neglect failure or default of the Assured their agents or servants other than Master Officer or crew member

10.2.4 the expenses of the removal of the wreck of the vessel from any place owned, leased or occupied by the Assured

10.2.5 legal costs incurred by the Assured, or which the Assured may be compelled to pay, in avoiding, minimising or contesting liability with the prior written consent of the Underwriters.

EXCLUSIONS

10.3 Notwithstanding the provisions of Clauses 10.1 and 10.2 this Clause 10 does not cover any liability cost or expense arising in respect of:

10.3.1 any direct or indirect payment by the Assured under workmen's compensation or employers' liability acts and any other statutory or common law, general maritime law or other liability whatsoever in respect of accidents to or illness of workmen or any other persons employed in any capacity whatsoever by the Assured or others in on or about or in connection with the vessel or her cargo, materials or repairs

10.3.2 liability assumed by the Assured under agreement expressed or implied in respect of death or illness of or injury to any person employed under a contract of service or apprenticeship by the other party to such agreement

10.3.3 punitive or exemplary damages, however described

10.3.4 ca_go or other property carried, to be carried or which has been carried on board the vessel but this Clause 10.3.4 shall not exclude any claim in respect of the extra cost of removing cargo from the wreck of the vessel

10.3.5 property, owned by builders or repairers or for which they are responsible, which is on board the vessel

10.3.6 liability arising under a contract or indemnity in respect of containers, equipment, fuel or other property on board the vessel and which is owned or leased by the Assured

10.3.7 cash, negotiable instruments, precious metals or stones, valuables or objects of a rare or precious nature, belonging to persons on board the vessel, or non-essential personal effects of any Master, Officer or crew member

10.3.8 fuel, insurance, wages, stores, provisions and port charges arising from delay to the vessel while awaiting a substitute for any Master, Officer or crew member

10.3.9 fines or penalties arising from overloading or illegal fishing

10.3.10 pollution or contamination of any real or personal property or thing whatsoever (This Clause 10.3.10 shall not exclude any amount recoverable under Clause 10.1.5)

10.3.11 general average, sue and labour and salvage charges, salvage, and/or collision liability to any extent that they are not recoverable under Clauses 8, 12 and 14 by reason of the agreed value and/or the amount insured in respect of the vessel being inadequate.

10.4 The indemnity provided by this Clause 10 shall be in addition to the indemnity provided by the other terms and conditions of this insurance.

10.5 Where the Assured or the Underwriters may or could have limited their liability the indemnity under this Clause 10 in respect of such liability shall not exceed Underwriters' proportionate part of the amount of such limitation.

10.6 In no case shall the Underwriters' liability under this Clause 10 in respect of each separate accident or occurrence or series of accidents arising out of the same event, exceed their proportionate part of the insured value of the vessel.

10.7 PROVIDED ALWAYS THAT

10.7.1 prompt notice must be given to the Underwriters of every casualty event or claim upon the Assured which may give rise to a claim under this Clause 10 and of every event or matter which may cause the Assured to incur liability costs or expense for which he may be insured under this Clause 10.

10.7.2 the Assured shall not admit liability for or settle any claim for which he may be insured under this Clause 10 without the prior written consent of the Underwriters.

## 11. NOTICE OF CLAIM AND TENDERS

11.1 In the event of accident whereby loss or damage may result in a claim under this insurance, notice shall be given to the Underwriters prior to survey and also, if the vessel is abroad, to the nearest Lloyd's Agent so that a surveyor may be appointed to represent the Underwriters should they so desire.

11.2 The Underwriters shall be entitled to decide the port to which the vessel shall proceed for docking or repair (the actual additional expense of the voyage arising from compliance with the

Underwriter equirements being refunded to the Assured) shall have a right of veto concerning a place of repair or a repairing firm.

11.3 The Underwriters may also take tenders or may require further tenders to be taken for the repair of the vessel. Where such a tender has been taken and a tender is accepted with the approval of the Underwriters, an allowance shall be made at the rate of 30% per annum on the insured value for time lost between the despatch of the invitations to tender required by Underwriters and the acceptance of a tender to the extent that such time is lost solely as the result of tenders having been taken and provided that the tender is accepted without delay after receipt of the Underwriters' approval.

Due credit shall be given against the allowance as above for any amounts recovered in respect of fuel and stores and wages and maintenance of the Master Officers and Crew or any member thereof, including amounts allowed in general average, and for any amounts recovered from third parties in respect of damages for detention and/or loss of profit and/or running expenses, for the period covered by the tender allowance or any part thereof.

Where a part of the cost of the repair of damage other than a fixed deductible is not recoverable from the Underwriters the allowance shall be reduced by a similar proportion.

11.4 In the event of failure to comply with the conditions of this Clause 11, a deduction of 15% shall be made from the amount of the ascertained claim.

## 12. GENERAL AVERAGE AND SALVAGE

12.1 This insurance covers the vessel's proportion of salvage, salvage charges and/or general average, reduced in respect of any under-insurance, but in case of general average sacrifice of the vessel the Assured may recover in respect of the whole loss without first enforcing their right of contribution from other parties.

12.2 Adjustment to be according to the law and practice obtaining at the place where the adventure ends, as if the contract of affreightment contained no special terms upon the subject; but where the contract of affreightment so provides the adjustment shall be according to the York-Antwerp Rules.

12.3 When the vessel sails in ballast, not under charter, the provisions of the York-Antwerp Rules, 1974 (excluding Rules XX and XXI) shall be applicable, and the voyage for this purpose shall be deemed to continue from the port or place of departure until the arrival of the vessel at the first port or place thereafter other than a port or place of refuge or a port or place of call for bunkering only. If at any such intermediate port or place there is an abandonment of the adventure originally contemplated the voyage shall thereupon be deemed to be terminated.

12.4 No claim under this Clause 12 shall in any case be allowed where the loss was not incurred to avoid or in connection with the avoidance of a peril insured against.

## 13. DEDUCTIBLE

13.1 No claim arising from a peril insured against shall be payable under this insurance unless the aggregate of all such claims arising out of each separate accident or occurrence (including claims under Clauses 8, 10, 12 and 14) exceeds {Response} in which case this sum shall be deducted. Nevertheless the expense of sighting the bottom after stranding, if reasonably incurred specially for that purpose, shall be paid even if no damage be found. This Clause 13.1 shall not apply to a claim for total or constructive total loss of the vessel or, in the event of such a claim, to any associated claim under Clause 14 arising from the same accident or occurrence.

13.2 Excluding any interest comprised therein, recoveries against any claim which is subject to the above deductible shall be credited to the Underwriters in full to the extent of the sum by which the aggregate of the claim unreduced by any recoveries exceeds the above deductible.

13.3 Interest comprised in recoveries shall be apportioned between the Assured and the Underwriters, taking into account the sums paid by the Underwriters and the dates when such payments were made, notwithstanding that by the addition of interest the Underwriters may receive a larger sum than they have paid.

**14. DUTY OF ASSURED (SUE AND LABOUR)**

14.1 In case of any loss or misfortune it is the duty of the Assured and their servants and agents to take such measures as may be reasonable for the purpose of averting or minimising a loss which would be recoverable under this insurance.

14.2 Subject to the provisions below and to Clause 13 the Underwriters will contribute to charges properly and reasonably incurred by the Assured their servants or agents for such measures. General average, salvage charges (except as provided for in Clause 14.5) collision defence or attack costs and costs incurred by the Assured in avoiding, minimising or contesting liability covered by Clause 10 are not recoverable under this Clause 14.

14.3 Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

14.4 When expenses are incurred pursuant to this Clause 14 the liability under this insurance shall not exceed the proportion of such expenses that the amount insured hereunder bears to the value of the vessel as stated herein, or to the sound value of the vessel at the time of the occurrence giving rise to the expenditure if the sound value exceeds that value. Where the Underwriters have admitted a claim for total loss and property insured by this insurance is saved, the foregoing provisions shall not apply unless the expenses of suing and labouring exceed the value of such property saved and then shall apply only to the amount of the expenses which is in excess of such value.

14.5 When a claim for total loss of the vessel is admitted under this insurance and expenses have been reasonably incurred in saving or attempting to save the vessel and other property and there are no proceeds, or the expenses exceed the proceeds, then this insurance shall bear its pro rata share of such proportion of the expenses, or of the expenses in excess of the proceeds, as the case may be, as may reasonably be regarded as having been incurred in respect of the vessel; but if the vessel be insured for less than its sound value at the time of the occurrence giving rise to the expenditure, the amount recoverable under this clause shall be reduced in proportion to the under-insurance.

14.6 The sum recoverable under this Clause 14 shall be in addition to the loss otherwise recoverable under this insurance but shall in no circumstances exceed the amount insured under this insurance in respect of the vessel.

**15. NEW FOR OLD**

Claims payable without deduction new for old.

**16. BOTTOM TREATMENT**

In no case shall a claim be allowed in respect of scraping gritblasting and/or other surface preparation or painting of the vessel's bottom except that

16.1 gritblasting and/or other surface preparation of new bottom plates ashore and supplying and applying any "shop" primer thereto,

16.2 gritblasting and/or other surface preparation of:

the butts or area of plating immediately adjacent to any renewed or refitted plating damaged



during the c[illegible]e of welding and/or repairs,

areas of plating damaged during the course of fairing, either in place or ashore,

16.3 supplying and applying the first coat of primer/anti-corrosive to those particular areas mentioned in 16.1 and 16.2 above,

shall be allowed as part of the reasonable cost of repairs in respect of bottom plating damaged by an insured peril.

17. WAGES AND MAINTENANCE

No claim shall be allowed, other than in general average, for wages and maintenance of the Master, Officers and Crew, or any member thereof, except when incurred solely for the necessary removal of the vessel, with the agreement of the Underwriters, from one port to another for the repair of damage covered by the Underwriters, or for trial trips for such repairs, and then only for such wages and maintenance as are incurred whilst the vessel is under way.

18. AGENCY COMMISSION

In no case shall any sum be allowed under this insurance either by way of remuneration of the Assured for time and trouble taken to obtain and supply information or documents or in respect of the commission or charges of any manager, agent, managing or agency company or the like, appointed by or on behalf of the Assured to perform such services.

19. UNREPAIRED DAMAGE

19.1 The measure of indemnity in respect of claims for unrepaired damage shall be the reasonable depreciation in the market value of the vessel at the time this insurance terminates arising from such unrepaired damage, but not exceeding the reasonable cost of repairs.

19.2 In no case shall the Underwriters be liable for unrepaired damage in the event of a subsequent total loss (whether or not covered under this insurance) sustained during the period covered by this insurance or any extension thereof.

19.3 The Underwriters shall not be liable in respect of unrepaired damage for more than the insured value at the time this insurance terminates.

20. CONSTRUCTIVE TOTAL LOSS

20.1 In ascertaining whether the vessel is a constructive total loss, the insured value shall be taken as the repaired value and nothing in respect of the damaged or break-up value of the vessel or wreck shall be taken into account.

20.2 No claim for constructive total loss based upon the cost of recovery and/or repair of the vessel shall be recoverable hereunder unless such cost would exceed the insured value. In making this determination only the cost relating to a single accident or sequence of damages arising from the same accident shall be taken into account.

21. FREIGHT WAIVER

In the event of total or constructive total loss no claim to be made by the Underwriters for freight whether notice of abandonment has been given or not.

22. DISBURSEMENTS WARRANTY

22.1 Additional insurances as follows are permitted

22.1.1 *Disbursements, Managers' Commissions, Profits or Excess or Increased Value of Hull and Machinery.* A sum not exceeding 25% of the value stated herein.

22.1.2 *Freight, Chartered Freight or Anticipated Freight, insured for time.* A sum not exceeding 25% of the value as stated herein less any sum insured, however described, under 22.1.1.

22.1.3 *Freight or Hire, under contracts for voyage.* A sum not exceeding the gross freight or hire for the current cargo passage and next succeeding cargo passage (such insurance to include, if required, a preliminary and an intermediate ballast passage) plus the charges of insurance. In the case of a voyage charter where payment is made on a time basis, the sum permitted for insurance shall be calculated on the estimated duration of the voyage, subject to the limitation of two cargo passages as laid down herein. Any sum insured under 22.1.2 to be taken into account and only the excess thereof may be insured, which excess shall be reduced as the freight or hire is advanced or earned by the gross amount so advanced or earned.

22.1.4 *Anticipated Freight if the vessel sails in ballast and not under Charter.* A sum not exceeding the anticipated gross freight on next cargo passage, such sum to be reasonably estimated on the basis of the current rate of freight at time of insurance plus the charges of insurance. Any sum insured under 22.1.2 to be taken into account and only the excess thereof may be insured.

22.1.5 *Time Charter Hire or Charter Hire for Series of Voyages.* A sum not exceeding 50% of the gross hire which is to be earned under the charter in a period not exceeding 18 months. Any sum insured under 22.1.2 to be taken into account and only the excess thereof may be insured, which excess shall be reduced as the hire is advanced or earned under the charter by 50% of the gross amount so advanced or earned but the sum insured need not be reduced while the total of the sums insured under 22.1.2 and 22.1.5 does not exceed 50% of the gross hire still to be earned under the charter. An insurance under this Section may begin on the signing of the charter.

22.1.6 *Premiums.* A sum not exceeding the actual premiums of all interests insured for a period not exceeding 12 months (excluding premiums insured under the foregoing sections but including, if required, the premium or estimated calls on any Club or War etc. Risk insurance) reducing pro rata monthly.

22.1.7 *Returns of Premium.* A sum not exceeding the actual returns which are allowable under any insurance but which would not be recoverable thereunder in the event of a total loss of the vessel whether by insured perils or otherwise.

22.1.8 *Insurance irrespective of amount against:*

Any risks excluded by Clauses 6, 24, 25, 26 and 27.

22.2 Warranted that no insurance on any interests enumerated in the foregoing 22.1.1 to 22.1.7 in excess of the amounts permitted therein and no other insurance which includes total loss of the vessel P.P.I., F.I.A., or subject to any other like term, is or shall be effected to operate during the currency of this insurance by or for account of the Assured, Owners, Managers or Mortgagees. Provided always that a breach of this warranty shall not afford the Underwriters any defence to a claim by a Mortgagee who has accepted this insurance without knowledge of such breach.

**23. RETURNS FOR CANCELLATION**

To return pro rata monthly net for each uncommenced month if this insurance be cancelled either by agreement or by the operation of Clause 3 provided that a total loss of the vessel, whether by insured perils or otherwise, has not occurred during the period of this insurance or any extension thereof.

TOT 03033

**The following clauses shall be paramount and shall override anything contained in this insurance inconsistent therewit'**

**24. WAR EXCLUSION**

In no case shall this insurance cover loss damage liability or expense caused by

24.1 war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power

24.2 capture seizure arrest restraint or detainment (barratry and piracy excepted), and the consequences thereof or any attempt thereat

24.3 derelict mines torpedoes bombs or other derelict weapons of war.

**25. STRIKES EXCLUSION**

In no case shall this insurance cover loss damage liability or expense caused by

25.1 strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions

25.2 any terrorist or any person acting from a political motive.

**26. MALICIOUS ACTS EXCLUSION**

In no case shall this insurance cover loss damage liability or expense arising from

26.1 the detonation of an explosive

26.2 any weapon of war

and caused by any person acting maliciously or from a political motive.

**27. NUCLEAR EXCLUSION**

In no case shall this insurance cover loss damage liability or expense arising from any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

20/7/87
CL312 © Copyright The Institute of London Underwriters

## INSTITUTE PROTECTION & INDEMNITY CLAUSE AMENDMENT

Where any of the following sub-clauses are incorporated in this insurance they shall be deemed to be deleted

**Clause 9.1.5 of the Institute Time Clauses - Hulls - Port Risks 20/7/87**

**Clause 10.1.5 of the Institute Time Clauses - Hulls - Port Risks including Limited Navigation 20/7/87**

**Clause 1.1.5 of the Protection & Indemnity Clauses - Hulls - Time 20/7/87**

**Clause 1.1.5 of the Protection & Indemnity Clauses - Hulls - Time 20/7/87 as incorporated into the Institute Protection & Indemnity War and Strikes Clauses - Hulls - Time 20/7/87**

and the following substituted:-

liability under clause 1(a) of Lloyd's Standard Form of Salvage Agreement 1980 in respect of unsuccessful, partially successful, or uncompleted services if and to the extent that the salvor's expenses plus the increment exceed any amount otherwise recoverable under the Agreement, also liability for special compensation payable under Article 14 of the International Convention on Salvage 1989 or under that Article as incorporated in Lloyd's Standard Form of Salvage Agreement 1990.

1/6/91
CL357 © Copyright The Institute of London Underwriters

TOT 03035

EXHIBIT V
Page 22 of 22