John A. Treptow, ABA #7605059
Wendy E. Leukuma, ABA #0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501-5907
Telephone: (907) 276-4557
Facsimile: (907) 276-4152

Attorneys for Inlet Fisheries, Inc.
 and Inlet Fish Producers, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc.,

    Plaintiff,

vs.

INLET FISHERIES, INC., an Alaska corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation,

    Defendants and Third-Party Plaintiffs,

vs.

TOTEM AGENCIES, INC., a Washington corporation,

    Third-Party Defendant.

Case No. A04-0058 CV (JWS)

**AFFIDAVIT OF VINCENT L. GODDARD IN SUPPORT OF INLET ENTITIES' OPPOSITION TO TOTEM AGENCIES' MOTION FOR SUMMARY JUDGMENT**

STATE OF ALASKA )
         ) ss.
THIRD JUDICIAL DISTRICT )

  I, VINCENT L. GODDARD, being first duly sworn upon oath, depose and state as follows:

1. I serve as president and owner of defendants Inlet Fisheries, Inc. ("IFI") and Inlet Fish Producers, Inc. ("IFP") (collectively "Inlet" or "Inlet entities"). In that capacity, I am familiar with the facts set forth in this affidavit.

2. During my depositions in November 2005, I could not recall why Inlet's P&I coverage had not been extended in the spring of 2002. After reviewing the relevant insurance quotes, attached hereto as Ex. A, it is all very clear now in my memory. I had not reviewed these quotes prior to my depositions and was not shown them during either deposition.

3. Although the Inlet entities wanted to renew their P&I and Hull & Machinery insurance coverage in May 2002, the Underwriters would only renew the policies subject to the Underwriters' sight and approval of up-to-date out-of-water surveys for each vessel.

4. Obtaining out-of-water surveys was not practical or possible. The surveys could not be conducted in Bethel, where the vessels were located. (The Underwriters' quote seems to indicate that the HARVESTER BARGE was located in Homer, which is incorrect.) Since the vessels were not self-propelled, they had to be towed to either Kodiak or Seward, the only locations to which the vessels could be towed for such surveys.

5. Towing the vessels to these locations was cost-prohibitive ($100,000 to $150,000 per vessel) and would have required a tow survey. I am not even sure whether the vessels could have obtained tow survey approval, as it is likely an out-of-water survey would have been required to tow the vessels to either location.

6. Timing was an even bigger problem. The quote for the QP was for insurance to commence on April 30, 2002. However, the quote was "subject to

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

AFFIDAVIT OF VINCENT L. GODDARD IN SUPPORT OF INLET ENTITIES'
OPPOSITION TO TOTEM AGENCIES' MOTION FOR SUMMARY JUDGMENT
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al*, Case No. A04-0058 CV (JWS)   Page 2 of 5

underwriters sight and approval of up-to-date out of water surveys for each vessel prior to attachment." In April, the QP was still in its off-season location in the Steamboat Slough adjacent to the main stem of the Kuskokwim River. The river was frozen solid, and even in a normal year, it would not have been possible to move the vessel to a location outside the Kuskokwim River until at least June. Thus the QP quote was basically dead on arrival.

7. The quote for the HARVESTER BARGE was at least somewhat more lenient. It gave us 60 days from attachment (May 5) to obtain the surveys. I inquired as to what would happen if we paid the premium but were not able to get a survey, and was told that the insurance company would happily keep our money but would refuse coverage for any loss after the 60-day period.

8. We discussed these problems with Totem Agencies and requested waiver of the out-of-water requirement (i.e., that we be permitted to conduct in-water surveys), but were told that was not possible.

9. Because the water levels on the Kuskokwim River were extremely low in 2002, the tug companies could not move the QP or the HARVESTER BARGE from their off-season location in Steamboat Slough to the Bethel Seawall until mid-August. Thus there was no way to comply with the survey requirements imposed by the Underwriters.

10. The QP spill occurred on August 25 or 26. Regardless of the deadlines, therefore, there was no way that the vessel could have been towed and surveyed by this date.

11. I specifically recall conversations that must have occurred with Eric Parthemer of Totem Agencies regarding what would happen if the P&I and Hull & Machinery coverage could not be extended. During at least one of these conversations, I

explained that my primary concern regarding Inlet's exposure on the vessels was marine pollution, and that even though we would not have P&I and Hull & Machinery coverage, at least we would have marine pollution coverage. Despite this, Totem never advised Inlet that it needed to maintain its P&I coverage to maintain its marine pollution coverage. Nor did Totem advise Inlet of any other options for obtaining P&I coverage. It remains my understanding that, absent the requested surveys, P&I coverage was not available.

12.     Following the QP spill and Lloyds' reservation of rights, Inlet Fish Producers, Inc. made renewed efforts to sell the HARVESTER BARGE and thereby eliminate the risk of another pollution incident. Beginning in 2001, IFP had discussions regarding the sale of the vessel with a proposed price of $60,000 to $70,000. Following the QP spill and Lloyds' reservation of rights, IFP dropped its asking price to $30,000. IFP had located a serious buyer and was attempting to close the sale when the HARVESTER BARGE incident occurred in May 2003. As a result of the incident, the sale was delayed until completion of the clean-up efforts and the price reduced to $5,000. Had IFP known of the lack of marine pollution coverage in August 2000, the vessel would have been sold much sooner at a significantly higher price.

13.     I disagree with Totem's contention that the $380,000 paid by the NPFC to Magone would have been covered under a P&I policy. The scuttling of the QP itself was less than half the total billed by Magone, and Magone did much more than simply raise and scuttle the vessel. Based on my estimate, P&I insurance would realistically have covered $150,000 to $250,000 at most, but not the full $380,000.

14.     While trying to get assistance from the Underwriters in conjunction with the QP spill, I advised both Amanda Schaeffer and Dave Willoughby of American E&S

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

that the clean-up efforts would be federalized if Lloyds did not step in. Both Schaeffer and Willoughby expressed concern about the federalization of the clean-up efforts. Willoughby indicated that federalization would increase clean-up costs by 30 to 40%.

_____
VINCENT L. GODDARD

SUBSCRIBED AND SWORN to before me this 1st day of February, 2006.

_____
NOTARY PUBLIC in and for Alaska
My commission expires: 2/20/2007

CERTIFICATE OF SERVICE

This certifies that on the 3rd day of February, 2006, a copy of the foregoing document was served electronically on:

Thomas A. Matthews
Matthews & Zahare, P.C.
431 W. 7th Avenue, Suite 207
Anchorage, AK 99501
Email: tommatthews@matthewszahare.com

Brewster H. Jamieson
Lane Powell
301 West Northern Lights Boulevard, Suite 301
Anchorage, AK 99503-2648
Email: jamiesonb@lanepowell.com

Christopher W. Nicoll
Nicoll Black Misenti & Feig, PLLC
816 Second Avenue, Suite 300
Seattle, WA 98104-1502
Email: cnicoll@nicollblack.com

s/Wendy E. Leukuma
*Certification Signature*

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

AFFIDAVIT OF VINCENT L. GODDARD IN SUPPORT OF INLET ENTITIES'
OPPOSITION TO TOTEM AGENCIES' MOTION FOR SUMMARY JUDGMENT
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al*, Case No. A04-0058 CV (JWS)   Page 5 of 5

Jul.31. 2002 10:08AM   Roanoke Trade Services, Inc.   ID 00156259085  No.3472   P. 4/04/04

| BROKER BGG | BROKER L.P.S.O. No. .75 | CURRENCY INSD | | GROSS PREMIUM | |
|---|---|---|---|---|---|
| ATTACHING TO POLICY No. To be assigned | ENDORSEMENT REF. | | | IN ALL | MARINE WAR |
| | | | TOTAL | | |
| REGISTRATION | V.A.T. | T.O.C TRIBUNAL | LLOYD'S | | |
| SERIAL | BINDING AUTHORITY REG. No & DATE | SETT. DUE DATE | DEF. ADJ. | | |
| | | | ILU | | |
| | | | LIRMA | | |
| ASSURED/ACCOUNT Inlet Fisheries, Inc. etal. | | LEADING U/WR | OTHER COMPANIES | | |

London, 30th April, 2002.

It is hereby noted and agreed, effective noon, 5th May, 2002, Local Standard Time, fleet coverage hereon amended to include the following additional vessels;

Vessel:
    1) "INLET HARVESTER"  1945 (Rebuilt) 156ft. Steel Processor.
    2) "HARVESTER BARGE"  1944 (Rebuilt) 110ft Steel Processor.

Interest:    Hull and Machinery and everything connected therewith valued: 1) USD250,000 (2) USD250,000.

Situated:    Whilst laid-up afloat alongside, not under repair, Homer, Alaska, pending sale.

Subject to a hull deductible of USD25,000 each and every accident or occurrence each vessel excepting total loss which payable in full.

Warranted no processing or cargo storage whilst laid up.
Warranted no known pre-existing structural damage.

All other terms, limits and conditions as fleet policy.

Subject to Underwriters sight and approval of up to date out of water surveys for each vessel within maximum sixty (60) days from attachment.

Premium:    Premium in full for period: 1) USD 6,875  (2) USD 9,063
    Subject three (3) months minimum premium
    Full annual premium if lost - peril insured against.

Information:    Vessel 1) Laid up pending sale.
N.L.O.W.    2) Vessel to be used as work platform/dock and/or housing.

All other terms, limits and conditions remain unaltered.

mrwp\honey\hon_inlet.2002

TOT 03088

Exhibit A
Page 1 of 2.

CONTRACT NO:   XXXXXXXXXX                                                                 875  BGG

TYPE:         Marine.

FORM:         MAR 91 (and/or slip policy, as required).

ASSURED:      Inlet Fisheries, Inc., Inlet Fish Producers, Inc. and Arctic Salmon, Inc.

ADDITIONAL
ASSURED:      "Sea-Land Services Inc.", as respects "QUANIRTUUQ PRINCESS".
              "Harvester Fisheries Inc." as respects "FORT YUKON".
              "Jack Miceli" as respects "QUANIRTUUQ PRINCESS".

LOSS PAYEE:   AFCO.

VESSELS:      As per schedule attached.

PERIOD:       Twelve months at noon, 30th April, 2002, Local Standard Time.

INTEREST:     Hull and Machinery and everything connected therewith valued: As per Schedule.

SUM INSURED:  100% of value and limits.

SITUATED:     Whilst laid-up afloat, not under repair, but;
              (A) "Q.PRINCESS"   Laid up at the Bethel Sea Wall during the summer season
                                 and at Bethel/Kuskokwim River Slough for the remainder
                                 of the policy period. Including tows between locations.
              (B) "YUKON II"     Laid up at Egegik Bay with no operations whatsoever.
              (C) "FORT YUKON"   Laid up at Naknek.

CONDITIONS:   Institute Time Clauses Hull-Port Risks 20.7.87 CL312 with the words "This
              Insurance is subject to English Law and Practice" deleted.
              Subject to hull deductibles as schedule, applicable each and every accident or
              occurrence excepting total loss which payable in full.
              Including Strikes Clauses (including Vandalism) – Hulls – Time (893CW00111).
              Protection and Indemnity, subject to Lazards SP.23 (Revised 1/56) Form to limit of
              USD500,000 each vessel any one accident any one occurrence, except vessel (B)
              "YUKON II" which excluding Protection and Indemnity absolutely.
              Excluding crew liabilities.
              Excluding pollution.
              Warranted cranes not exceeding safe working load.
              Institute Service of Suit Clause (CL 355).
              Subject to Cancelment Notice Clause (893CW00105).
              Institute Radioactive Contamination Exclusion Clause (CL 356).
              Subject to the XL Brockbank Premium Payment Clause 01/01 LSW 1123.
              Subject to Underwriters sight and approval of up-to-date out of water surveys for
              each vessel prior to attachment.

PREMIUM:      Premium in full for period as per schedule attached.
              Subject three (3) months minimum premium.
              Full annual premium if lost - peril insured against.

INFORMATION:  Vessel   A)  Used as work platform/dock and/or housing.
(N.L.O.W.)             B)  Used as dock/support station, providing meals.
                       C)  Non-working.

TOT 03087

Page 2

Exhibit  A
Page  2 of 2