Thomas A. Matthews
Matthews & Zahare, P.C.
431 W. 7th Ave., Suite 207
Anchorage, Alaska  99501
Phone: (907)276-1516/Fax: (907)276-8955
tom.matthews@matthewszahare.com

Counsel for Totem Agencies Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., | |
| | IN ADMIRALTY |
| Plaintiffs, | |
| vs. | |
| INLET FISHERIES, INC., an Alaska Corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation, | Case No.:  A04-0058 CV (JWS) |
| Defendants and Third-Party Plaintiffs, | |
| vs. | |
| TOTEM AGENCIES, INC., a Washington Corporation, | |
| Third-Party Defendant. | |

## TOTEM'S REPLY TO INLET ENTITIES' OPPOSITION TO TOTEM'S MOTION FOR SUMMARY JUDGMENT

The Inlet Entities[1] oppose entry of summary judgment in favor of Totem

Agencies, Inc. ("Totem"), and against them.  However, summary judgment in favor

of Totem is appropriate for various reasons.  As argued and factually supported in

_____

[1] The "Inlet Entities" are Inlet Fisheries, Inc. ("IFI"), and Inlet Fish Producers, Inc. ("IFP").

Totem's December 16, 2005, Motion for Summary Judgment, the Inlet Entities have failed to establish that any breach by Totem has caused them harm because there is no genuine issue of material fact that stand-alone marine pollution insurance was not available to cover the Inlet Entities or their vessels.  In addition, the Lloyds Policy is an indemnity policy, requiring that IFI become liable for <u>and pay</u> damages before it can recover under the Policy.  IFI, a bankrupt entity with no assets or operations, cannot pay any damages imposed against it, so it would not recover under the policy.  Third, the Inlet Entities could not have recovered under the Lloyds Policy because they breached their obligation to maintain P&I insurance on the vessels at issue.  Finally, some of the amounts incurred as a result of the *QP* incident (wreck removal expenses) would have been recovered under a P&I policy.  However, the Inlet Entities did not maintain such insurance on the vessel, despite their obligation to do so, which failure precludes their recovery of such expenses under the Lloyds Policy.  The Inlet Entities have failed to create genuine issues of material fact on any of the above points.  Accordingly, as a matter of law, summary judgment should be entered in favor of Totem and against the Inlet Entities.

## I.    THE ABSENCE OF STAND-ALONE MARINE POLLUTION INSURANCE PRECLUDES THE INLET ENTITIES FROM ESTABLISHING CAUSATION

The Inlet Entities attempt to avoid the rule, recognized by the Alaska Supreme Court, that the commercial availability of coverage requested by a customer is relevant to the customer's claim against its broker.[2]  The Inlet Entities' attempt is

---

[2] *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1374 (Alaska

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                          Page 2 of 24

based upon three legally or factually incorrect premises.  The Inlet Entities' first incorrect premise is that Totem did not obtain the requested coverage.  While the Court, in its September 12, 2005, Order (Docket No. 181) declared the Lloyds' Policy void *ab initio*, that declaration did not occur until long after the requested coverage had been obtained in August 2000 from Lloyds (and renewed in 2001 and 2002) and long after the August 2002 and May 2003 incidents upon which claims against the Inlet Entities are premised.  Thus, Totem did not know of the absence of coverage and could not have advised the Inlet Entities of the absence of coverage until long after the underlying incidents occurred.

The Inlet Entities' second incorrect premise is its legal argument that the rule recognizing the relevance of the existence or not of commercially available insurance does not apply when a broker fails to obtain insurance.[3] The Inlet Entities attempt to distinguish, on that basis, Alaska Supreme Court precedent and cases upon which that precedent is based.  As explained below, the distinction for which the Inlet Entities argue does not exist in the law.  Accordingly, the absence of commercially available insurance precludes the Inlet Entities from establishing that any negligence or breach by Totem has caused them damage.

Finally, the Inlet Entities' third incorrect premise is that genuine issues of material fact exist on whether commercially available insurance was available to

---

1995)*(citing Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.3d 239, 243-44 (Colo. 1987)).  The Inlet Entities, by failing to argue that some other law governs, apparently do not dispute Totem's position, supported in Totem's Motion at 11 n. 27, that Alaska law governs a customer's claim against its broker.
[3] Inlet Entities' Opposition at 7.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 3 of 24

cover the Inlet Entities and the vessels for which they sought coverage. As Totem

has factually supported, the two major providers of stand-alone marine pollution

insurance have testified they would not have provided coverage, if they had known

all facts the Court has deemed material. Totem has also provided evidence that a

third very minor insurer would not have provided such coverage. The Inlet Entities

provide no admissible evidence to create a genuine issue of material fact on this

point. Accordingly, regardless of who has the burden of establishing the existence

or not of commercially available insurance providing the coverage sought by the

Inlet Entities, the evidence is that such insurance was not available here, supporting

summary judgment for Totem.

### A.    Totem Did Obtain Stand-Alone Marine Pollution Coverage for the Inlet Entities

The Inlet Entities take a broker's obligation to inform its client of an inability to

obtain insurance to a logical absurdity. They argue that Totem should be found

liable not just for failing to procure the stand-alone marine pollution coverage sought,

but also for failing to inform them that Totem was not able to obtain that insurance.[4]

The Inlet Entities' argument overlooks the fact that, in 2000, and again on renewal in

2001 and 2002, Totem did obtain the insurance requested. It was not until the

Court's September 12, 2005; Order (Docket No. 181), that Totem learned, at the

same time as the Inlet Entities, that the coverage was deemed void. Accordingly,

the Inlet Entities' attempt to apply the failure-to-inform principle is logically absurd.

The Court, in its September 12, 2005, Order at 3 (Docket No. 181),

---

[4] Inlet Entities' Opposition at 4-5.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 4 of 24

recognized that in 2000 Totem, on behalf of the Inlet Entities, applied for and obtained from Lloyds a marine pollution policy covering the Inlet Entities and certain of their vessels.  The Court also recognized that the Lloyds Policy was renewed in August 2001 and again in August 2002.  In August 2002, the *QP* incident occurred, following which Lloyds reserved its rights on several grounds and subsequently sought a declaration that the Lloyds Policy was void *ab initio*.  The Court granted Lloyds' motion for summary judgment, declaring the Lloyds' Policy void, in its September 12, 2005, Order.  Under this chronology, it was not until September 12, 2005, that Totem knew it had not obtained the stand-alone marine pollution policy sought by the Inlet Entities.[5]  Under agency principles, an agent's duty to keep a principal informed exists when the agent learns of facts the principal would desire to know.[6]  Accordingly, the Inlet Entities' argument that Totem failed to procure the requested coverage and failed to advise them that the coverage had not been obtained is without factual foundation.

### B.    The Existence or Not of Commercially Available Insurance is Relevant to the Inlet Entities' Causation Burden Regardless of the Theory of Recovery Against Totem

Even if the Court were to find that, retroactively, Totem knew in 2000 it could not obtain the coverage the Inlet Entities sought, that finding does not render the

---

[5] This fact distinguishes *Nu-Air Manufacturing Co. v. Frank B. Hall & Co. of New York*, 822 F.2d 987 (11th Cir. 1987), cited in the Inlet Entities' Opposition at 6. There, the broker failed to inform its principal, after the insurer had informed the broker that there was no insurance.  Similarly, it distinguishes cases such as *Clary Ins. Agency v. Doyle*, 620 P.2d 194 (Alaska 1980), where no insurance was obtained and the agent did not so advise its customer.
[6] Restatement (Second) of Agency §381.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 5 of 24

existence or not of commercially available insurance irrelevant to the Inlet Entities'

burden of establishing causation.  Using as support non-Alaska cases stating a

minority position, the Inlet Entities attempt to distinguish Alaska precedent applying

the availability-of-insurance requirement to claims against a broker.  The Inlet

Entities' attempt is without merit.

### 1.     Courts Apply the Availability-Of-Insurance Rule Even When No Insurance is Obtained.

The Inlet Entities argue, without any controlling legal authority on point, that

the availability-of-insurance requirement does not apply when the broker does not

obtain the insurance,[7] as opposed to when the broker only obtains inadequate

insurance.  The Inlet Entities' position is also legally incorrect.  The Alaska Supreme

Court's acceptance of the availability-of-insurance requirement was set forth in

*Blomfield*.[8] The primary case the *Blomfield* Court relied upon was *Bayly, Martin &*

*Fay, Inc. v. Pete's Satire, Inc.*[9]  A review of cases that the *Bayly* court cited to

support its position and cases that have relied upon the *Bayly* decision show that

Inlet Entities proposed distinction does not exist.

The Colorado precedent upon which the *Bayly* court premised its decision

was *Heller-Mark & Co v. Cimarron Ins. Co.*[10]  *Heller-Mark* involved a claim against

---

[7] Inlet Entities' Opposition at 7. As explained above, this argument is premised upon the incorrect position that Totem did not obtain the insurance sought. Totem did obtain that insurance and did not know, until the Court's September 12, 2005, Order (Docket No. 181), that the coverage was void.

[8] *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1374 (Alaska 1995).

[9] 739 P.2d 239 (Colo. 1987).

[10] 544 P.2d 995 (Colo. App. 1976).

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 6 of 24

an agent for failing to obtain coverage for the current owners on a building subsequently destroyed by fire. The court rejected plaintiff's position that it did not need to show the availability of insurance, agreeing with the trial court that, in failing to do so, the property owner "failed to show the causal connection between the defendant's acts and the injury."[11] In *Heller-Mark*, as here, the plaintiff was left with no coverage for the loss, yet the court still required the plaintiff to establish the existence of available insurance to meet its causation burden.

A non-Colorado decision the *Bayly* court used for support was *Smither v. United Benefit Life Ins. Co.*,[12] which the *Heller-Mark* court also cited. There, through the alleged fault of a general agent, the requested accident insurance was not obtained. The *Smither* court found that, in order to recover damages, the plaintiff had "the burden of proving that if it had notified him sooner, he could have obtained other insurance."[13]

Another decision relied upon in both *Bayly* and *Heller-Mark* was *Wallace v. Metropolitan Life Ins. Co.*[14] Again, no policy was even issued and a claim was made against an agent. The appellate court affirmed the decision for the agent, finding that, even if negligence or breach of contract were shown, no damages could be established because the plaintiff had failed to make "any showing that other insurance could have been obtained."[15]

---

[11] *Id.* at 996-97.
[12] 190 P.2d 183 (Kan. 1948).
[13] *Id.* at 189 (emphasis added).
[14] 248 N.W. 435 (Wisc. 1933).
[15] *Id.* at 436.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                      Page 7 of 24

Finally, the *Bayly* and *Heller-Mark* courts relied upon *MacDonald v. Carpenter & Pelton, Inc.*[16] There, the plaintiff brought breach of contract and negligence claims against an insurance agent (deemed a broker) because the agent never placed the requested insurance and did not inform plaintiff of that fact.[17] Although the agent breached it duties, the court imposed upon the plaintiff the requirement to show that insurance could have been obtained.[18] Since the plaintiff had not met this burden, the decision in its favor was reversed.

The *Bayly* court also cited *Stinson v. Cravens, Dargan & Co.*[19] in which a boat owner brought breach of contract and negligence claims against an insurance agent. An insurance application had been made, but no policy of insurance was issued.[20] The court first noted the general requirement that an insurance agent agreeing to obtain insurance must obtain it or, if he cannot, must notify his principal of his failure.[21] Like the other decisions cited above, the *Stinson* court noted that evidence must be presented showing the loss would be covered by some insurance shown to be available.[22]

The above decisions, issued in cases in which no insurance covering the potential insured was issued, formed the basis for the *Bayly* court's statement of the rule that the plaintiff must establish the availability of commercially available

---

[16] 298 N.Y.S.2d 780 (Sup. Ct. 1969).
[17] *Id.* at 782.
[18] *Id.* at 784.
[19] 579 S.W.2d 298 (Tex. App. 1979).
[20] *Id.* at 299.
[21] *Id.* at 300.
[22] *Id.*

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                        Page 8 of 24

insurance.  The Alaska Supreme Court, in adopting the principle recognized by *Bayly*, implicitly recognized that the availability-of-insurance requirement applies regardless of whether a policy is obtained or is issued but does not cover the particular loss incurred.

Since *Bayly*, courts have continued to apply the availability-of-insurance requirement in circumstances where insurance is not obtained in the first instance. For example, *Bias v. Advantage International, Inc.*[23] after a basketball player's death, the estate sued an agent for failing to obtain life insurance on the player.  The appellate court affirmed summary judgment for the agent, based upon the estate's failure to establish that any insurer would have insured the player.[24]

Similarly, in *Philadelphia Suburban Dev. Corp. v. The Stoll Agency, Inc.*,[25] the agent let a binder expire, but did not advise the property owner of this fact.  Citing *Bayly*, the court recognized that evidence must be presented that some type of insurance was available to cover the loss.[26]

Thus, the Inlet Entities' attempt to create a distinction between application of the requirement in cases where insurance is not obtained and cases in which inadequate insurance is obtained is without legal foundation.  The principle, stated in *Blomfield* and *Bayly*--that the availability of insurance is relevant--applies here

---

[23] 905 F.2d 1558 (D.C. Cir. 1990).
[24] *Id.* at 1562-63.
[25] 1990 Phila. Cty. Rptr. LEXIS 26 (Common Pleas 1990).
[26] *Id.* at **16.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                Page 9 of 24

regardless of whether the case is viewed as a complete failure to procure insurance or a failure to procure adequate insurance.[27]

### 2. The Availability-of-Insurance Requirement Has Been Applied Regardless of Legal Theory Against the Broker

Courts have applied the rule requiring proof of commercially available insurance in a variety of factual settings and in the face of a variety of legal theories for the claims against the broker. The rule applies whether the customer's claim against the broker is premised upon a negligence theory[28] or a breach of contract theory.[29] While the Alaska Supreme Court, in *Blomfield* queried whether the principle applied in breach of contract cases, it recognized that *Bayly,*[30] upon which it relied, treated the requirement as an element of causation, not duty, which element exists for both tort claims and contract claims.[31] Numerous other courts have recognized that the obligation to establish the existence of commercially available insurance is

---

[27] Totem advises the Court that *Grande v. St. Paul Fire & Marine Ins. Co.*, 365 F. Supp. 57 (D. Me. 2005), cited in Totem's Motion at 11-12, has been recently vacated. *See* 2006 U.S. App. LEXIS 2567 (1st Cir. 2006).

[28] *See Lifespan/Physicians Professional Services Org., Inc. v. Combined Insurance Company of America*, 345 F. Supp.2d 214, 227-28 (D.R.I. 2004); *Bayly*, 739 P.2d at 244; *Rodriguez v. Investors, Ins. Co. of America*, 607 N.Y.Supp.2d at 329, 330 (Supr. Ct. 1994); *Morgan Int'l Realty, Inc. v. Dade Underwriters Ins. Agency, Inc.*, 524 So.2d 451, 452 (Fla. App. 1988)(citing Bayly); *Bangor-Brewer Bowling Lanes, Inc. v. Commercial Union-York Ins. Co.*, 2001 Me. Super. LEXIS 174, **14-16 (Me. Super. 2001)(citing *Blomfield* and *Bayly*).

[29] *See Bendis v. Alexander & Alexander*, 1995 U.S. App. LEXIS 26487, *7) (10th Cir. 1995); *Sheehan v. Northwestern Mutual Life Ins. Co.*, 44 S.W.3d 389, 393 (Mo. App. 2000); *Russell v. Reliance Ins. Co.*, 672 S.W.2d 693, 694 (Mo. App. 1984)(cited in *Blomfield*, 907 P.2d at 1374); *Rodriguez*, 607 N.Y.Supp.2d at 330; *Morgan*, 524 So.2d at 452; *Bangor-Brewer*, 2001 Me. Super LEXIS 174, **14-16.

[30] 739 P.2d at 243-44.

[31] 907 P.2d at 1375 n.2.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 10 of 24

an element of causation, not duty.[32] Given the weight of this authority, the requirement should apply equally to negligence and breach of contract claims against a broker.

The rule that the insured must demonstrate the coverage requested was commercially available has also been applied in failure-to-procure cases in which the insurer subsequently denied coverage for the loss. For instance, in *Bayly*, a case arising from a liquor liability claim, the broker obtained a multi-peril policy which contained an exclusion for liquor liability.[33] The court states: "Where, as here, a claim for relief is predicated on the negligent failure of an insurance broker or agent to procure a particular type of insurance coverage sought by the plaintiff, it is incumbent upon the plaintiff to prove by a preponderance of the evidence, <u>as an aspect of causation and damages</u>, that such insurance was generally available . . . ."[34] Other courts also have applied the principle in failure to procure cases.[35] Thus, there is no distinction to be made in applying the rule depending upon the type of broker error or the type of claim asserted against the broker.

### 3. The Inlet Entities' Reliance Upon Non-Alaska Cases Stating an Apparent Minority View is Misplaced

The Inlet Entities do not address their obligation, as an element of their

---

[32] *See Sheehan*, 44 S.W.3d at 393; *Haggans v. State Farm*, 803 So.2d 1249,1252 (Miss. App. 2002).

[33] 739 P.2d at 241.

[34] *Id.* at 244 (emphasis added).

[35] *See Bendis*, 1995 U.S. App. LEXIS 26487, **3-4, 5, 19-20; *Kabban v. Mackin*, 801 P.2d 883, 433-34 (Or. 1990); *Haggans*, 803 So.2d at 1252; *Morgan*, 524 So.2d at 452.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 11 of 24

burden to prove causation,[36] to show the existence of commercially available

insurance.  Instead, they rely upon three cases that are contrary to the proof-of-

available-insurance requirement recognized by *Blomfield*.

First, Inlet Entities rely on *Wood v. Newman, Hayes & Dixon Insurance

Agency*.[37]  *Wood* was a failure to procure case in which it was alleged the agent was

negligent because it obtained insurance that did not provide ice and snow coverage.

For the proposition that it is irrelevant whether or not the requested coverage was

available, *Wood* relied upon *Bell v. O'Leary*,[38] and *Boothe v. American Assurance

Co.*,[39] two decisions upon which the Inlet Entities also rely.[40]  *Bell*, decided before

*Bayly*, and the Alaska Supreme Court's decision in *Blomfield*, involved a negligence

claim against a broker and relied only upon *Boothe* to hold that the existence or not

---

[36] The Alaska Supreme Court has identified the following elements of a broker negligence claim: proof of duty, breach, causation, and damages.  *Blomfield*, 907 P.2d at 1374.  While the Alaska Supreme Court has not specifically identified the elements of a breach of contract claim in a broker action, it is clear that causation must link any breach of contract and damages.  Restatement (Second) of Contract §347.  Alaska has adopted the Restatement (Second) of Contract principles in analyzing contract claims in Alaska.  *See Alaska Tae Woong Venture, Inc. v. Westward Seafoods, Inc.,* 963 P.2d 1055, 1063 (Alaska 1998).

[37] 905 S.W.2d 559 (Tenn. 1995). *See* Inlet Entities' Opposition at 11. It is interesting to note that *Woods* does not fit the distinction the Inlet Entities attempt to make between a broker's failure to obtain any insurance and to notify the customer of such failure and broker's failure to obtain adequate insurance.  In *Woods*, the court disregarded the insurance availability requirement even though the broker obtained insurance, but the insurer denied coverage for the particular loss.  This further supports the illusory nature of the Inlet Entities' argument that such a distinction exists in the application of the available insurance requirement.

[38] 744 F.2d 1370 (8th Cir. 1984).  As in *Woods, Bell* also was a case in which insurance was obtained, although erroneously.  It also supports the conclusion that the distinction the Inlet Entities attempts to create is an illusion.

[39] 327 So.2d 477 (La. App. 1976).

[40] *See* Inlet Entities' Opposition 6, 8-11.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 12 of 24

of commercially available insurance was irrelevant. *Boothe*, which also appears to involve only a negligence claim, relied upon another Louisiana decision, issued in 1973, which did not even discuss commercial availability as an element of a broker claim.[41] Thus, *Boothe's* statement about the issue has no underlying foundation.

While the Alaska Supreme Court in *Blomfield* did not discuss the view held by *Bell* or *Boothe*, those decisions existed at the time of the *Blomfield* decision and the conclusion of those courts, and the *Wood* court, certainly is contrary to the direction adopted by the Alaska Supreme Court. Thus, the primary cases upon which the Inlet Entities rely to ignore their burden of establishing the existence of commercially available insurance, at best, state a very much minority view.[42]

---

[41] *See Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728 (La. 1973).

[42] The Alaska federal district court decision the Inlet Entities rely upon, *Jonas v. Bank of Kodiak*, 162 F. Supp. 751 (D. Alaska 1958), was decided before statehood, and thus well before the Alaska Supreme Court's *Blomfield* decision. The Inlet Entities also rely upon two treatises – B. Harnett, *Responsibilities of Insurance Agents and Brokers,* and L. Russ, *Couch on Insurance.* However, in language the Inlet Entities apparently overlook, both treatises recognize the insurance-availability requirement recognized in *Blomfield.* Harnett states: "[A]n agent may not be held liable if there is no showing that the requested coverage was available at the time or that the loss would not have been covered under the policy. Plainly, if the desired coverage cannot be obtained in the market place, the agent has no duty to procure it." 1 B. Harnett, *Responsibilities of Insurance Agents and Brokers* § 3.02 [1], at 3-7 (2005)(attached hereto as Exhibit P). *Couch* recognizes the principle that an insured's agent is not liable for failing to obtain coverage where the coverage was unavailable and that it is a defense for liability for failure to procure insurance that the person requesting insurance was uninsurable.  3 L. Russ, *Couch on Insurance* §46:67 (3d ed.).  Even R. Ey, Cause of Action Against Insurance Agent for Broker for Failure to Procure Insurance, 14 *Causes of Action* 881, § 51 (1st Series 2005), which treatise also is cited by the Inlet Entities, Opposition at 17, recognizes that the unavailability of insurance is a causation defense.  In any event, given the Alaska Supreme Court's stated principles guiding the broker-customer issues here, reference to general treatises is unnecessary.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                          Page 13 of 24

**C.     There is No Genuine Issue of Material Fact that the Stand-Alone Marine Pollution Coverage Sought by the Inlet Entities Was Not Available for the Inlet Vessels**

The Inlet Entities present no admissible evidence to rebut the testimony from WQIS and Lloyds that, had they known information they deem material, they would not have provided marine pollution insurance for the Inlet vessels Nor do they rebut the Declaration of Valerie Dickover, a marine insurance expert whose declaration was submitted with Totem's Motion, that no other insurer would have provided such coverage.  Thus, the Inlet Entities fail to meet their burden of providing evidence to establish a genuine issue of material fact on causation, a key element of their claims, and summary judgment in favor of Totem should be entered.

Instead of providing evidence to establish that the stand-alone marine pollution insurance the Inlet Entities sought was commercially available for the Inlet vessels, the Inlet Entities attempt to divert the Court into consideration of Totem's role in the loss of the WQIS coverage.  However, as the Inlet Entities acknowledge, Totem advised Inlet of WQIS's demand that the Inlet vessels be surveyed by WQIS's designated surveyor.[43] The Inlet Entities also lose sight of the fact, as stated at the WQIS deposition, that when WQIS cancelled in 2000, it was unwilling to continue on the risk regardless of surveys or any other matter.[44]  Thus, the Inlet Entities' argument as to what WQIS "may very well have accepted,"[45] is speculative and not supported by admissible evidence.

---

[43] Inlet Entities' Opposition at 12.
[44] *See* Exhibit B, Brown Depo. at 50, 77 (attached as an exhibit to Totem's Motion).
[45] Inlet Entities' Opposition at 13.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                        Page 14 of 24

Similarly, the Inlet Entities' argument that Lloyds "could have chosen to 'load' the premium rather than reject Inlet's application,"[46] is not supported by the evidence.  To the contrary, the deposition testimony of Philip Sandle of Lloyds and Chris Elliot of AE&S, the Lloyds' agent, was that the coverage would have been declined.[47]  Thus, the Inlet Entities' arguments are without factual support and do not create a genuine issue of material fact.

## II.    POLICY DEFENSES PRECLUDE INLET ENTITIES' RECOVERY

### A.    If Liable To The Inlet Entities, Totem Can Avail Itself Of Any Defense Available To Lloyds

The Inlet Entities' argument that Totem cannot rely on the terms and conditions of the Lloyds' Policy to defend itself[48] is not correct.  It is axiomatic that in an action for failure to procure, the agent may avail itself of any defense the insurer could have obtained.[49]  Here, Lloyds could have, and did, reserve its rights and seek a declaratory judgment on a variety of bases.  Thus, Totem, stepping into the shoes of Lloyds, can do the same.

### B.    Because If Has No Ability To Pay, The Indemnity Nature Of Lloyds Policy Precludes IFI's Recovery

There is no dispute that Inlet Fisheries ("IFI"), at the time of the QP incident and at present, had no ability to pay any losses covered under the Lloyds Policy.  In fact, IFI has not paid any losses whatsoever.  It also is not disputed that the Lloyds Policy was an indemnity policy, requiring the insured to become liable for and pay

---

[46] *Id.*
[47] *See* support cited in Totem's Motion at 7 n.10.
[48] Inlet Entities' Opposition at 14.
[49] *Couch on Insurance* §46:63.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                      Page 15 of 24

covered losses before the Policy's indemnity clause triggered Lloyds' payment obligation.  The Inlet Entities present no facts to dispute either of these points. Since Lloyds' payment obligation has not been and will not be triggered, any breach by Totem has not caused injury to IFI.

In the face of the clear policy pay to be paid requirement, the only authority the Inlet Entities submit are a treatise addressing British marine insurance (*Arnould's Law of Marine Insurance and Average*) and isolated, unsupported dicta in a Kansas state court non-maritime decision.[50]  Neither is binding on this Court.

The Inlet Entities use the *MAREN I* incident as an example of an incident in which a pollution insurer (WQIS) paid cleanup expenses directly.[51]  The *MAREN I*, however, was owned and operated by IFP, a solvent company, not IFI, a bankrupt entity with no assets and or ability to respond to a spill from the *QP*.[52]  In addition, Inlet itself through Arctic Salmon, a related company operating the vessel) managed the *MAREN I* clean-up, then sought reimbursement of its costs from their insurer.[53]

The Inlet Entities also use the deposition testimony of Amanda Schaeffer of AES as evidence that Lloyds would pay cleanup bills directly.[54]  The bills at issue on pages 83-84 of Ms. Schaeffer's deposition, to which the Inlet Entities refer, are those

---

[50] *See* Inlet Entities' Opposition at 16.  *White v. Goodville Mut. Cas. Co.*, 596 P.2d 1229 (Kan. 1979), which the Inlet Entities cite, addressed only the issue of whether Kansas permits a direct action against an auto insurance carrier.
[51] Inlet Entities' Opposition at 16.
[52] *See* Exhibit J, Goddard IFI Depo. at 38-39 (attached as an exhibit to Totem's Motion).  *See also* Affidavit of Vincent L. Goddard ¶ 4, submitted in support of Defendant's Motion to Transfer (IFP owned *MAREN I*).
[53] *See* Exhibit A, Goddard Depo at 92-93, 104-05.
[54] Inlet Entities' Opposition at 16.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                              Page 16 of 24

of Dave Willoughby, who Ms. Schaeffer earlier in her deposition had testified was "Underwriters' 24-hour pollution response adjuster."[55] One would expect the insurer to be paying the expense of its own adjuster.

The Inlet Entities argue that IFI would have been able to secure a loan to pay any judgments against it.  That position is directly contrary to Vince Goddard's testimony that IFI had no assets, lines of credit, or ability to borrow sums with which to pay anything to claimants.[56]  Even Goddard testified that he would loan funds to IFI only if an insurer would guarantee repayment.[57]  No such insurer has been identified.

The Inlet Entities citation to *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*,[58] to argue that "Totem should not be permitted to avoid liability based on a result caused by its own negligence,"[59] is misplaced.  There, the agent argued it could not be liable because the insured had not paid the insurer premiums, when it was the agent who had counseled the insured not to pay the premium.  Here, Totem did not counsel IFI to file bankruptcy, to become insolvent, or to divest itself of all ability to pay judgments against it.  *Offshore* is not on point.

The simple fact is that at the time of the *QP* incident and at present, IFI had and still has no ability to pay any judgment or settlement.  Thus, the indemnity clause in the Lloyds Policy will never have been triggered and Lloyds would not

---

[55] Exhibit Q, Schaeffer Depo. at 24.
[56] *See* Exhibit J, Goddard IFI Depo. at 12-14 (attached as an exhibit to Totem's Motion).
[57] *Id.*
[58] 910 F.2d 224 (5th Cir. 1990),
[59] Inlet Entities' Opposition at 17.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 17 of 24

have had to pay anything.  Accordingly, the indemnity clause precludes IFI's recovery against Totem.

**C.    The Inlet Entities Voided Their Pollution Coverage By Not Maintaining P&I Coverage**

It is undisputed that the Inlet Entities permitted their P&I coverage to lapse prior to the respective losses concerning the *QP* and the *HARVESTER BARGE*. Similarly, it is undisputed that a condition of the Lloyds Policy was that P&I coverage be obtained and maintained.  Finally, it is undisputed that P&I coverage would have responded to the removal and scuttling of the *QP*.  Despite these facts, the Inlet Entities seek to avoid the result of their breach of warranty.[60]  The Inlet Entities' response on the P&I insurance issue requires little comment, although Totem emphasizes the following points.

First, the Inlet Entities rely upon the affidavit from Vince Goddard, their president, to imply that they did not know that their pollution coverage was subject to the maintenance of P&I insurance on the covered vessels.  The evidence is to the contrary, however, because Inlet did know of the condition.  Goddard testified that Patrick Klier, not he, was responsible for dealing with insurance matters for the Inlet

---

[60] The Inlet Entities claim that Totem did not assert the breach of the P&I warranty as an affirmative defense.  However, as Totem's answers to the Inlet Entities' third-party claims show, Totem alleged that the Inlet Entities' damages were the result of their own negligence, acts, or failures to act.  In addition, Lloyds, in its September 10, 2002, reservation of rights letter to the Inlet Entities, specifically raised the Inlet Entities' failure to maintain P&I insurance as a basis for denying coverage.  *See* Exhibit R, Cozen O'Connor Letter.  Thus, the Inlet Entities can hardly claim surprise at Totem asserting as a defense the Inlet Entities' failure to maintain P&I insurance.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                          Page 18 of 24

Entities.[61]  Patrick Klier, Inlet's former controller, acknowledged at his deposition that he had received and reviewed a document describing the Lloyds Policy and clearly stating: "Subject to: P&I insurance maintained during full period of pollution policy."[62] Klier testified that Inlet annually received insurance summaries from Totem, which he would review with Vince Goddard.[63]  One such summary, attached hereto as Exhibit T, was for the 2001 calendar year and, for the Lloyds pollution policy, stated "NOTE: P&I Insurance must be maintained during the full period of policy."  Thus, since at least 2000, the Inlet Entities were fully aware of the P&I insurance condition of their Lloyds Policy.

Second, the distinction between express warranties, implied warranties, and conditions in marine insurance policies is not always clear.[64]   Regardless of how the P&I condition of the Lloyds Policy is characterized, whether the violation of that condition voids or suspends the Lloyds Policy, and whether or not a causal link between the breach and the harm to Lloyds is required,[65] at a minimum it is clear that the Inlet Entities' failure to maintain P&I insurance on its vessels caused an increase to Lloyds' risk on the policy[66] and increased the amount to which Lloyds

---

[61] *See* Exhibit A, Goddard Depo. at 24-26.

[62] *See* Exhibit S, Klier Depo. at 11, 15, and Depo. Ex. 10.

[63] *Id.* at 28-31.

[64] T. Schoenbaum, *Warranties in the Law of Marine Insurance: Some Suggestions for Reform of English and American Law*, 23 Mar. Law. 267, 291-92 (1999)("Schoenbaum, *Warranties*").

[65] *See id.* at 289-90.

[66] *See Yu v. Albany Ins. Co.*, 281 F.3d 803, 810 (9th Cir. 2002)(strictly enforcing warranty permits insurer to control the amount of its risk, enabling the insured to secure a reasonable premium); *Drake Fishing, Inc. v. Clarendon American Ins. Co.*, 136 F.3d 851, 854 (1st Cir. 1998)(conformance to stated conditions essential to the

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                                    Page 19 of 24

was exposed because of the *QP* incident.  As supported in Totem's Motion at 17-18,

21-24, certain of the NPFC's response costs are for the removal and scuttling of the

*QP*.  It is undisputed that those costs would have been covered by a P&I policy.

Thus, the Inlet Entities' failure to maintain their P&I policy is causally related to

increased response costs, to the pollution insurers precluding coverage for such

costs.  While the failure to maintain P&I insurance may not void the Lloyds Policy in

its entirety, because of the causal connection, it certainly voids it for risks that would

have been covered by the P&I insurance.  To find otherwise would be to permit an

insured, with impunity, to disregard any policy condition that is not an express

warranty.

Third, factually, the Inlet Entities attempt to deflect to Totem their own failure

to maintain P&I insurance.[67]  However, later in their Opposition they admit they did

not maintain the insurance because they did not want to expend the funds to comply

with the P&I underwriters' survey requirements.[68]  The Inlet Entities' effort to transfer

blame to Totem for their decision to drop P&I insurance is without foundation.  Vince

Goddard has testified that the Inlet Entities, at times, operated vessels without the

protection of pollution insurance.[69]  Their former controller also has testified that Inlet

made the decision to operate some Inlet vessels without pollution insurance, despite

---

insurer's decision to issue the policy is obligatory).  Mr. Brown of WQIS and Mr.
Elliott of AES both testified that the absence of P&I insurance affects a pollution
insurer's risk.  *See* Exhibit B, Brown Depo. at 21-22; Exhibit D, Elliott Depo. at 75-76
(attached as exhibits to Totem's Motion).
[67] Inlet Entities' Opposition at 19-20.
[68] *Id.* at 24-25.
[69] *See* Exhibit A, Goddard Depo. at 85-90.

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                      Page 20 of 24

the obvious pollution risks.[70] Klier testified that procurement of insurance is a matter of choice, which choices he would make on behalf of Inlet.[71]  The decision to obtain or not to obtain certain insurance is a business decision for the insured, not a decision to be made by a broker.  Similarly, Inlet Entities' decision not to maintain P&I insurance was a business decision based upon Inlet Entities' perceived balancing of the risks and benefits of its decision.

Fourth, the Inlet Entities also attempt to avoid the result of their failure to maintain P&I insurance by arguing that it was commercially impracticable to maintain the insurance.[72]  Commercial impossibility is a defense to a breach of contract action, applied where a party claims its duty to perform should be excused because it is impossible for the performance to occur.  However, "commercial frustration is no defense if the event was foreseeable."[73]  Here, that a P&I insurer would want surveys on vessels to be insured is certainly foreseeable.  Rather than being unforeseeable and commercially impracticable, the Inlet Entities' excuse is simply that it would have cost them money to comply with the survey requirements. It was not, as Inlet argues, commercially impossible.  Instead, Inlet made a business decision not to pay.

Given the requirement that the Inlet Entities maintain P&I insurance as a condition of its pollution coverage, and the Inlet Entities willingness to assume the

---

[70] *See* Exhibit S, Klier Depo. at 146-49.
[71] *Id.* at 147
[72] Inlet Entities' Opposition at 25.
[73] *United States Smelting, Ref. & Mining Co. v. Wigger,* 684 P.2d 850, 857 (Alaska 1984).

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 21 of 24

P&I risk, as they had with other of their vessels, rather than expend the funds necessary to survey and maintain the vessels, their breach of the P&I condition precludes recovery under the Lloyds Policy and against Totem.

Finally, Mr. Goddard's statements that, if Inlet had known the lack of P&I insurance affected their pollution coverage, IFP could have sold the *HARVESTER BARGE* sooner, strains credibility.  If IFP was willing to assume the P&I risks associated with aged vessels, including wreck removal and liability risks, it is equally appropriate to infer they would have been willing to assume the pollution risk.  In fact, the evidence strongly supports this inference.  Even though the *QP* incident occurred in August 2002 and Lloyds reserved rights shortly thereafter, IFP did not sell the *HARVESTER BARGE* until May 2003, after it had suffered its own casualty.  In addition, as stated above, Mr. Goddard has testified that the Inlet Entities, at times, operated certain of their vessels without pollution insurance, assuming the risk of a pollution incident.  Thus, Mr. Goddard's testimony to the contrary is self-serving, speculative, and ultimately inadmissible.

**D.    The Magone Bill Reflects Wreck Removal and Scuttling Expenses**

The Inlet Entities contest the Magone billings based solely on the Affidavit of Vincent L. Goddard.  The billings are discussed in paragraphs 13 and 14 of his Affidavit.  A review of that paragraph shows that there is no foundation disclosed for Mr. Goddard's statements and that, in part, they are based upon hearsay, not personal knowledge.  In addition, Mr. Goddard's current affidavit contradicts his October 10, 2003 Affidavit, submitted to support Inlet's October 2003 Motion to

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                    Page 22 of 24

Transfer, that Magone Marine handled the floating and scuttling of the *QP*.

Accordingly, Mr. Goddard's unsupported statements in his latest affidavit should be

disregarded.

## III.    CONCLUSION

As factually and legally supported in Totem's Motion and above, Totem is

entitled to entry of summary judgment in its favor and against the Inlet Entities on a

variety of grounds.  As supported, the Inlet Entities have failed to establish that any

breach by Totem has caused them harm.  Accordingly, summary judgment in favor

of Totem should be entered as a matter of law.

Dated this 15th day of February 2006, at Anchorage, AK 99501

MATTHEWS & ZAHARE, P.C.
Counsel for Third-Party Defendant Totem
Agencies, Inc.


By s/Thomas A. Matthews
Thomas A. Matthews, ABN:  8511179
Matthews & Zahare, P.C.
431 W. 7th Ave., Suite 207
Anchorage, Alaska  99501
Phone: (907)276-1516/Fax:(907)276-8955
tom.matthews@matthewszahare.com

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                          Page 23 of 24

Certificate of Service

I certify that on this 15th day of February 2006, I
caused to be served by electronic mailing
the foregoing document to the following:

Brewster H. Jamieson, Esq.
Lane Powell Spears Lubersky LLP
301 W. Northern Lights Blvd., Suite 301
Anchorage, AK 99503
Counsel for Certain Underwriters at Lloyds, London
  And American E & S

John A. Treptow, Esq.
Wendy E. Leukuma, Esq
Dorsey & Whitney LLP
1031 West 4th Ave., Suite 600
Anchorage AK 99502
Counsel for Inlet Fisheries, Inc. & Inlet Fish Producers, Inc.

Christopher W. Nicoll, Esq,.
Nicoll Black Misenti & Feig PLLC
816 Second Ave., Suite 300
Seattle, WA 98104
Co-Counsel for Certain Underwriters at Lloyds
  And American E & S


s/Thomas A. Matthews_____
Thomas A. Matthews

Totem's Reply to Inlet Entities' Opposition to Totem's MFSJ
*Lloyds vs. Inlet et al. v. Totem*, A04-0058 CV (JWS)
TAM:KGS:jlw/ReplyTotemMFSJ                                      Page 24 of 24