John A. Treptow, ABA #7605059
Wendy E. Leukuma, ABA #0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska  99501-5907
Telephone: (907) 276-4557
Facsimile:  (907) 276-4152

Attorneys for Inlet Fisheries, Inc.
 and Inlet Fish Producers, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., | |
| Plaintiff, | |
| vs. | |
| INLET FISHERIES, INC., an Alaska corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation, | |
| Defendants and Third-Party Plaintiffs, | Case No. A04-0058 CV (JWS) |
| vs. | |
| TOTEM AGENCIES, INC., a Washington corporation, | **INLET ENTITIES' REPLY TO TOTEM'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Third-Party Defendant. | |

## I.    INTRODUCTION

Totem mischaracterizes Alaska law as well as Inlet's breach of contract and

negligence claims.  Under Alaska law, Totem had a duty to either procure the requested

marine pollution insurance or promptly advise Inlet of its inability to do so.[1] As a result of its failure to exercise reasonable care, Totem did neither and instead lulled the Inlet entities into a false sense of security. Accordingly, Totem is liable to Inlet for any resulting loss, including Inlet's attorney's fees in defending against the Lloyds' action, and any additional losses caused by Totem's breach as determined by the jury in an amount to be determined by the jury.

## II.    CORRECTION REGARDING FACTS AND PROCEEDINGS

Before addressing the merits of Totem's argument, Inlet notes that its prior statement of facts incorrectly asserted that the surveys requested by WQIS in June 2000 were out-of-water surveys. A review of the cited authority indicates that the out-of-water surveys were requested in conjunction with the 2002 renewal of the Inlet entities' P&I coverage. [See Goddard Dep., pp. 56-57, attached as Ex. A to opening motion (discussing out-of-water surveys in conjunction with the lack of P&I coverage following the spring of 2002); see also Goddard Aff., dated February 1, 2006, ¶¶ 3-10, filed in support of the Inlet Entities' Opposition to Totem Agencies' Motion for Summary Judgment (hereinafter Inlet Opp.).] Prior to May 2002, the Inlet entities had never been required or asked to furnish out-of-water surveys for any nonmotorized vessel for which they sought or desired to maintain insurance coverage. [See Goddard Aff., dated February 15, 2006, filed herewith.]

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

---

[1] See Peter v. Schumaker Enterprises, Inc., 22 P.3d 481, 485-86 (Alaska 2001) (observing insurance agent's "well-established common-law duty 'to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so'") (quoting Murphy v. Kuhn, 682 N.E.2d 972, 974 (1997)); Jefferson v. Alaska 100 Ins., Inc., 717 P.2d 360, 363-64 (Alaska 1986) (charging insurance agents and brokers who undertake to procure insurance with same duties to prospective insured).

III.    **ARGUMENT**

  A.    **Totem fails to address the failure to notify component of Inlet's breach of contract and negligence claims**

Turning to the merits of Totem's opposition, Totem does not address the failure to notify component of Inlet's breach of contract and negligence claims. Instead, Totem's opposition appears premised on the assumption that Alaska case law treats failure to procure and failure to notify claims as one and the same and all failure to procure cases alike. Neither assumption is accurate.

In <u>Jefferson v. Alaska 100 Insurance, Inc.</u>, the Alaska Supreme Court recognized that a broker may become absolutely liable to the "insured" where the broker makes an unconditional promise to insure or the broker misleads the "insured" to its detriment. 717 P.2d 360, 363-64 & n.7 (Alaska 1986). The Court further recognized that a broker's liability may be based strictly on a failure to notify of its inability to obtain the requested insurance. <u>Id.</u> at 364. In affirming the superior court's determination that Alaska 100 had fulfilled all obligations to the prospective insureds, the court observed that Alaska 100 never promised to provide the requested insurance and that:

> The record evinces Alaska 100's diligent efforts to obtain workers' compensation insurance for Big Four despite the latter's previous poor payment record. Alaska 100 promptly notified Big Four of its inability to secure insurance coverage. Alaska 100 did all that was required under its duty as an agent for Jefferson, Wilson and Big Four.

<u>Jefferson</u>, 717 P.2d at 364.

The foregoing analysis indicates that the Alaska Supreme Court would reach a different conclusion under the facts of this case. Unlike the broker in <u>Jefferson</u>, Totem concedes that it failed to exercise reasonable care in completing Inlet's application for insurance. Likewise, although Totem now claims that Inlet was uninsurable, it is

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

INLET ENTITIES' REPLY TO TOTEM'S OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al,* Case No. A04-0058 CV (JWS)     Page 3 of 15

undisputed that Totem never advised Inlet of its inability to obtain the requested coverage.  To the contrary, Totem's conduct caused the Inlet entities to justifiably believe they were insured when, in fact, they were not.  Accordingly, it is beyond dispute that Totem breached its duty to Inlet.

**B.    Totem's "lack of damage" arguments ignore controlling principles of Alaska law**

Totem's misplaced assumptions carry over into its "lack of damages" arguments. Not only does Totem again focus on failure to procure case law, Totem ignores controlling principles of breach of contract and negligence law in arguing that the Inlet entities have not suffered any damage.  Although both claims require proof of causation to award damages, the Alaska Supreme Court has never endorsed the strict damage limitations urged by Totem.

**1.    Totem understates the damages recoverable in a breach of contract or negligence action against a broker**

Totem's first error lies in its assertion that Inlet's damages are limited to the amount of money that would have been due under the Lloyds' Policy.  [Totem's Opp. at 12-13.]  In support of this assertion, Totem relies on the Alaska Supreme Court's decision in Johnson & Higgins of Alaska, Inc. v. Blomfield, 907 P.2d 1371 (Alaska 1996).  But that decision did not directly address the scope of damages available in a breach of contract or negligence action based on a broker's failure to procure or notify.  Although the court affirmed the superior court's entry of judgment which held the broker liable to the insureds for an amount representing the insurance coverage that would have covered the losses sustained had the broker not been professionally negligent, the insureds stipulated to this measure of damages prior to trial.  See id. at 1373, 1377.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

Rather than supporting Totem's attempt to limit its liability, <u>Johnson & Higgins</u> indicates that the Alaska Supreme Court treats breach of contract and professional negligence claims against a broker like any other breach of contract or negligence action. <u>Id.</u> at 1374, 1375 n.2 (explaining that "[l]ike other negligence actions, a claim of professional negligence requires proof of duty, causation, breach, and damages" and distinguishing a plaintiff's burden of proof in a breach of contract action). Likewise, in <u>Tripp Inc. v. Kenneth A. Murray Ins., Inc.</u>, the court relied on traditional negligence principles to determine whether the insured had established that the broker's conduct was the proximate cause of the insured's asserted loss. 600 P.2d 1361, 1365-66 & n.8 (Alaska 1979). The court has never applied any other standards in an action based on a broker's failure to procure or notify, nor has the court made any attempt to distinguish such cases from other breach of contract or negligence actions. Hence, there is no reason to depart from the court's accepted principles regarding of the measure of damages available in a breach of contract or negligence action.

With respect to the measure of damages available in a breach of contract action, the Alaska Supreme Court has adopted Section 351 of the Restatement (Second) of Contracts. <u>See</u> <u>Alaska Tao Woong Venture, Inc. v. Westward Seafoods, Inc.</u>, 963 P.2d 1055, 1065 (Alaska 1998). Section 351 provides, in relevant part,

> (1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
>
> (2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
>
> > (a) in the ordinary course of events, or
> >
> > (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

Restatement (Second) of Contracts § 351 (1981). Thus, in a breach of contract action, the nonbreaching party is entitled to recover all foreseeable damages, including incidental and consequential damages. Id., § 347(b); see also Murray E. Gildersleeve Logging Co. v. Northern Timber Corp., 670 P.2d 372, 380 (Alaska 1983) (providing that damages available are those expenses which are a "natural consequence of the breach").

The damages recoverable in a negligence action are somewhat broader. Generally, "all damages, whether special or general, which are proximately caused by a party's tortious actions are recoverable." Era Helicopters, Inc. v. Digicon Alaska, Inc., 518 P.2d 1057, 1060 (Alaska 1974). Proximate or legal cause is established if the party's breach of duty is a substantial factor in bringing about the harm caused. See Restatement (Second) of Torts § 430 and comment d, § 431 and comment a (1965), as cited in Sharp v. Fairbanks North Star Borough, 569 P.2d 178, 181 (Alaska 1977) and State v. Abbott, 498 P.2d 712, 727 (Alaska 1972). "Normally, in order to satisfy the substantial factor test it must be shown both that the accident would not have happened 'but for' the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable men would regard it as a cause and attach responsibility to it." Abbott, 498 P.2d at 727.

Application of these principles demonstrates that Inlet's damages are not limited to the limit of the Lloyds' Policy. In addition to the damages associated with Inlet's lack of coverage, as a direct, foreseeable, and proximate result of Totem's breach, Inlet incurred significant expense in defending against Lloyds' action to declare the policy void as well as increased clean-up costs based on Lloyds' failure to respond to the QP spill and the resulting federalization of the clean-up efforts. Inlet is therefore entitled to pursue these damages before a jury.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

INLET ENTITIES' REPLY TO TOTEM'S OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al,* Case No. A04-0058 CV (JWS)     Page 6 of 15

## 2.    Inlet is entitled to recover its attorney's fees and costs in defending against the Lloyds action

Contrary to Totem's contention, established principles of contract and tort law permit Inlet to recover its expenses in defending against the Lloyds' action.  As explained above, the Alaska Supreme Court has adopted Section 351 of the Restatement (Second) of Contracts.  Comment c to this section, expressly recognizes the recovery of attorney's fees and costs as an aspect of recoverable damages where the breach results in claims by third parties against the nonbreaching party.  Under such circumstances, the Restatement provides that "[t]he party in breach is liable for the amount of any judgment against the injured party together with his reasonable expenditures in the litigation, if the party in breach had reason to foresee such expenditures as the probable result of his breach at the time he made the contract."  Id. at cmt. c.

Likewise, the Restatement (Second) of Torts, which has also been adopted by the Alaska Supreme Court, provides that, although attorney's fees and costs are generally not recoverable as damages in a tort action,

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts, § 914(2).  Although the Restatement refers to fees and costs incurred in an earlier action, the First Circuit has applied this provision to permit the recovery of attorney's fees and costs as damages in an action nearly identical to this one.  See Mutual Fire, Marine and Inland Ins. Co. v. Costa, 789 F.2d 83, 88-89, 1986 A.M.C. 2813 (1st Cir. 1986).  In Costa, the insurer filed a declaratory action, disclaiming coverage on various grounds, including the fact that insured vessel was carrying more passengers than permitted by the insurance contract.  Id. at 85.  The insured filed a third-party

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

INLET ENTITIES' REPLY TO TOTEM'S OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al,* Case No. A04-0058 CV (JWS)    Page 7 of 15

complaint against its broker, claiming that if the insurer obtained the declaration sought, the broker would be liable to the insured for breach of contract and negligence in failing to procure the insurance it had promised to obtain.  Id.  The district court granted summary judgment to the insurer, but denied the insured recovery for attorney's fees and costs incurred in defending against the declaratory action because the fees and costs were incurred in the same action.  Id. at 89.  On appeal, the First Circuit affirmed entry of summary judgment for the insurer, but held that the insured was entitled to recover its fees and costs in defending against the insurer's declaratory action.  In reaching this decision, the court acknowledged that some cases discussing the "third party exception to counsel fees" have referred to a requirement that the litigation involving a third party take place in a prior proceeding,

> More recently, however, courts have clarified that it is not necessary for the litigation against the third party to have been separate from the litigation between the plaintiff and the defendant.  See, e.g., Wood v. Old Security Life Insurance Co., 643 F.2d 1209, 1218 (5th Cir.1981) (interpreting Highlands Underwriters to not require a separate proceeding).  The Massachusetts Supreme Judicial Court has adopted this approach.  In Roach, the court noted the plaintiff had not first sued the third party and then sought to recover counsel fees from the tortfeasor in a second action, but had rather joined both claims in one lawsuit.  Following the approach of the Supreme Court of California in Prentice v. North American Title Guaranty Corp., 59 Cal.2d 618, 30 Cal.Rptr.  821, 381 P.2d 645 (1963), the court ruled that it was irrelevant that the actions had been tried in the same court at the same time. As the court explained:  "It would be unjust to deprive the plaintiff of its damages from the tortfeasor merely because it has conserved judicial resources by bringing one suit instead of two.  Of course, it can be allowed only those counsel fees incurred in suing the third party."

Costa, 789 F.2d at 89-90.  Accordingly, the Court held that the insured's costs in defending against the insurer's declaratory judgment "fell squarely within this third-party exception" to the rule generally prohibiting the recovery of attorney's fees as damages.  Id. at 90.

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

This "third-party exception" embraced by both the Restatement (Second) of Contracts and Torts, is consistent with Alaska case law. Although the Alaska Supreme Court has asserted that "attorney's fees for work in the case under review are not recoverable as an element of damages,"[2] the Court has never addressed the recovery of attorney's fees and costs associated with defending an action brought by a third-party as a direct result of the breaching party's conduct. Instead, each of the Court's former decisions addressed the recovery of attorney's fees in the context of the prevailing party's ability to recover its fees and costs in successfully prosecuting or defending against the instant action from the non-prevailing party. See id. at 1008; Fairbanks Firefighters Ass'n, Local 1324, Int'l Ass'n of Fire Fighters v. City of Fairbanks, 934 P.2d 759, 761-62 & n.5 (Alaska 1997) (plaintiffs sought attorney's fees and costs as damages for breach of covenant of good faith and fair dealing); Ehredt v. DeHavilland Aircraft Co., 705 P.2d 446, 452 n.8 (Alaska 1985) (explaining that, under Alaska law, Rule 82 would control an award of attorney's fees).

Given the Alaska Supreme Court's emphasis on making an injured party whole,[3] it is reasonable to conclude that the court would allow Inlet to recover its litigation expenses in defending against the Lloyds' action. See Fidelity and Deposit Co. of

---

[2] Sisters of Providence in Washington v. A.A. Pain Clinic, Inc., 81 P.3d 989, 1008 (Alaska 2003).

[3] The Alaska Supreme Court has repeatedly held that the goal of contract damages is to place the nonbreaching party in as good a position as if the contract had been fully performed. See, e.g., Alyeska Pipeline Serv. Co. v. H.C. Price Co., 694 P.2d 782, 787 (Alaska 1985). Likewise, the court has repeatedly stated that the general principle underlying the assessment of damages in tort cases is that an injured person is entitled to be placed as nearly as possible in the position he or she would have occupied had it not been for the defendant's tort. See, e.g., Beaulieu v. Elliott, 434 P.2d 665, 670-71 (Alaska 1971), citing Restatement of Torts § 924, comment d at 634-35 (1939) and C. McCormick, Handbook on the Law of Damages § 86 at 394 (1935).

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

<u>Maryland v. Krebs Engineers</u>, 859 F.2d 501, 506-07 (7th Cir. 1988) (determining that the Wisconsin Supreme Court would permit the recovery of third-party litigation expenses, given the court's emphasis on making the injured party whole).  As observed by one court, "if the agent does not act with reasonable care, it is reasonably foreseeable that any policy issued could be subject to rescission…."  <u>Golden Rule Ins. Corp. v. Greenfield</u>, 786 F. Supp. 914, 916 (D. Colo. 1992).

### 3.    Totem misconstrues the relevance of "commercial availability"

Totem's reliance on the Inlet entities alleged inability to prove commercial availability is inexplicable.  As thoroughly explained in Inlet's opposition to Totem's motion for summary judgment, and as implicitly acknowledged by Totem in its briefing, evidence regarding commercial availability is relevant in cases where the plaintiff alleges that "but for" the defendant's negligence the plaintiff would have been insured against the particular loss suffered.  [<u>See</u> Inlet Opp. at 5-11.]  Under such circumstances, most courts appropriately view commercial availability — or lack thereof — as an element of causation and damages.  [<u>Id.</u> at 7-8.]

Commercial availability does not control, however, where the broker's conduct prevents the insured from pursing other opportunities to protect against loss.  [<u>See</u> Inlet Opp. at 8-11 and cases cited therein]; <u>accord</u> <u>Huval v. Offshore Pipelines, Inc.</u>; 86 F.3d 454, 458, 1996 A.M.C. 2765 (5th Cir. 1996) (agent could not rely on alleged unavailability of insurance where agent failed to advise insured of lack of coverage).  Indeed, two of the cases cited by Totem endorse this approach.  <u>See</u> <u>Lazzara v. Howard A. Esser, Inc.</u>, 802 F.2d 260, 266 (7th Cir. 1986) (rejecting agent's assertion that summary judgment was inappropriate because there was no evidence that coverage was commercially available where agent failed to so notify insured); <u>Haggans v. State Farm</u>,

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

803 So.2d 1249, 1252 (Miss. App. 2002) (affirming summary judgment for agent where insured did not show that requested insurance was commercially available *or what else he would have done to avoid the loss*).  As explained in these cases, where a broker's conduct lulls the "insured" into believing that no further action is necessary, the broker forecloses the insured's opportunity to consider other options, thus satisfying the requirement of causation.  [See Inlet Opp. at 8-11 and cases cited therein.]  Consistent with this approach, the Alaska Supreme Court has distinguished cases where the agent's conduct "misleads the 'insured' to [his] detriment."  See Jefferson, 717 P.2d at 363-64 (also explaining that prompt notification "assures the insured the opportunity to make other arrangements to protect against subsequent losses").

Likewise, all of the treatises cited by Inlet and Totem generally recognize the unavailability of insurance as a bar to damages in the context of a pure failure to procure claim as opposed to a claim based on the broker's failure to notify or a claim based on detrimental reliance.  Cf. 1 B. Harnett, RESPONSIBILITIES OF INSURANCE AGENTS AND BROKERS, § 3.02[1] at 3-7 (addressing failure to procure claim) with § 3.04 at 3-50 to 3-52 (addressing failure to notify claim) (2005) (attached to Inlet's opening motion as Ex. H); 3 L. Russ, COUCH ON INS. § 46:67 ("An insured's agent is not liable for failing to obtain coverage where such coverage is unavailable because it is not offered by the insurer or other insurance companies, unless the agent falsely informs the applicant that the insurance has been obtained.") with § 46:48 (discussing liability for failure to notify) (3d ed. 2005 electronic update); R. Ey, *Cause of Action Against Insurance Agent or Broker for Failure to Procure Insurance*, 14 CAUSES OF ACTION 881, § 21 (1st Series 2005) (providing that the commercial availability of the requested insurance is generally required to show causation and damages in a failure to procure claim, but "where

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

defendant is alleged to have breached a duty to notify the client of a failure to obtain

coverage or to have mislead the client into incorrectly believing that coverage is obtained,

the plaintiff may be able to establish causation by showing that … the client could have

avoided or reduced the risk").

Contrary to Totem's contention, the Alaska Supreme Court has never established

commercial availability as a prerequisite to recovery in every case involving a broker's

failure to procure insurance.  Rather, in <u>Johnson & Higgins</u>, the court addressed

commercial availability in the context of the insured's duty to establish causation in a

failure to procure adequate insurance claim.  Although the broker had agreed to procure

an all-risk policy, the broker procured a policy that contained an exception which

ultimately resulted in a denial of coverage by the insurer.  In response to the agent's

assertion that the insureds' failure to procure claim required proof of commercial

availability, the court acknowledged that the broker had proffered what appeared to be

the majority rule.  <u>Id.</u> at 1374.  The court declined, however, to decide whether to adopt

the rule noting that the insured's expert had testified that another carrier would probably

have provided such coverage and thus had satisfied their burden of proving causation and

damages.  <u>Id.</u> at 1375.  The court went on to note that although some courts treat

> commercial availability as a requirement for both contract and professional
> negligence actions … [t]here may be a valid distinction between the two.  If
> a broker makes an explicit promise to obtain a type of insurance and does
> not disclose that he or she has been unable to do so, the commercial
> availability of such coverage logically may be irrelevant to the contract
> action.  Instead, the requirement may more properly be viewed as an
> element of only the tort action.  Because we conclude that the evidence was
> sufficient on this point, we need not resolve this question.

<u>Johnson & Higgins</u>, 907 P.2d at 1375 n.2.  Notably, the court's decision did not expressly

address a claim based on a complete failure to procure insurance or a failure to notify.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

Rather, the court addressed the insureds' claim that the broker's negligence caused the absence of coverage and hence the resulting loss.

Here, however, Inlet's breach of contract and negligence claims are based on the fact that Totem neither procured the requested insurance or advised Inlet of its inability to do so, and that, as a result, Totem's conduct misled Inlet to its detriment. As recognized by the Alaska Supreme Court, this type of action is fundamentally different from a typical failure to procure case. See Jefferson, 717 P.2d at 364.

> **4.    Inlet has established any burden it may have with respect to commercial availability**

Alternatively, and as explained in Inlet's opposition to Totem's motion for summary judgment, Inlet has established any burden it may have with respect to commercial availability. [Inlet Opp. at 11-14.] Whether Inlet was truly "uninsurable" thus presents a question of fact for the jury. [Id.]

> **5.    Inlet has established detrimental reliance and, therefore, is entitled to entry of partial summary judgment**

Finally, Inlet has established detrimental reliance and therefore is entitled to entry of summary judgment under the principle set forth in Jefferson v. Alaska 100 Insurance, Inc., 717 P.2d 360, 363-64 & n.7 (Alaska 1986) (distinguishing situations where broker misleads "insured" to its detriment); see also Restatement (Second) of Contracts § 90(1) (providing that "[a] promise which the promisor should reasonably expect to induce action or forebearance is binding if injustice can be avoided only by enforcement of the promise"); Bell v. O'Leary, 744 F.2d 1370, 1373-74 (8th Cir. 1984) (holding broker liable for clients' loss where broker's conduct "precluded the necessity of considering other options"); Wood v. Newman, Hyes & Dixon Ins. Agency, 905 S.W.2d 559, 565 (Tenn. 1995) (holding agent liable for uninsured loss where agent's failure to advise insured of

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

INLET ENTITIES' REPLY TO TOTEM'S OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al,* Case No. A04-0058 CV (JWS)    Page 13 of 15

change in coverage "completely denied them the opportunity to explore other methods of protecting their property"); <u>Boothe v. American Assur. Co.</u>, 327 So.2d 477, 481-82 (1976) (holding agent liable for uninsured loss where client justifiably relied on agent's representation that client was insured). Here, the undisputed evidence demonstrates that Totem agreed to procure marine pollution insurance for the Inlet entities and then caused the Inlet entities to believe that they were covered when, in fact, they were not. It is also undisputed that the Inlet entities could have taken other action to protect against the "insured" loss. [<u>See</u> Inlet's Opp. at 5 & n.4 and record cites therein.] Under these circumstances, it is inappropriate to inquire into exactly what the Inlet entities would have done, since Totem's conduct effectively prevented the Inlet entities from pursuing any other options. To the extent the Court holds otherwise, the question of what the Inlet entities would have done goes to the measure of the Inlet entities' damages and thus should not prevent entry of partial summary judgment.

### C.    Both IFI and IFPII are entitled to entry of partial summary judgment

The Inlet entities simply seek entry of an order holding Totem liable for the damages caused by its breach of duty. Accordingly, entry of partial summary judgment is appropriate with respect to both IFI and IFPI, even though IFPI does not appear liable for any damages associated with the QP spill. Although IFPI agrees that it should not be held liable for any of these damages, IFPI was a named insured on the Lloyds' Policy and has been named as a party in the State court action in which the plaintiffs seek damages in conjunction with both the QP and the HARVESTER BARGE spills. <u>See</u> Ex. M, attached. In the event that IFPI is held liable in conjunction with the QP spill, therefore, it is entitled to indemnification from Totem.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

### D.    Totem's other arguments

The remainder of Totem's arguments are adequately addressed in the Inlet Entities' Opposition to Totem Agencies' Motion for Summary Judgment.  [See Inlet Opp. at 15-17 (addressing the pay-to-be-paid provision), 17 (addressing the appropriate course of action given the ongoing litigation regarding the Inlet entities' liability); 18-26 (addressing the alleged "P&I warranty").] Accordingly, Inlet hereby incorporates its responses by reference to avoid repeating those arguments verbatim.

## IV.    CONCLUSION

Totem's attempt to avoid liability is without merit.  It is beyond dispute that Totem breached its duty to Inlet, causing damage.  The only remaining question is the extent of Totem's liability.  This Court should therefore enter partial summary judgment in favor of the Inlet entities.

DATED this 15th day of February, 2006, at Anchorage, Alaska.

CERTIFICATE OF SERVICE

This certifies that on the 15th day of February, 2006, a copy of the foregoing document was served electronically on:

Thomas A. Matthews
Matthews & Zahare, P.C.
431 W. 7th Avenue, Suite 207
Anchorage, AK  99501

Brewster H. Jamieson
Lane Powell
301 West Northern Lights Boulevard, Suite 301
Anchorage, AK  99503-2648

Christopher W. Nicoll
Nicoll Black Misenti & Feig, PLLC
816 Second Avenue, Suite 300
Seattle, WA  98104-1502

s/John A. Treptow

DORSEY & WHITNEY LLP
Attorneys for Inlet Fisheries, Inc. and
    Inlet Fish Producers, Inc.


By:s/John A. Treptow
    John A. Treptow, ABA #7605059
    Wendy E. Leukuma, ABA #0211048
    DORSEY & WHITNEY LLP
    1031 West 4th Avenue, Suite 600
    Anchorage, Alaska 99501
    Phone: 907-276-4557
    Fax: 907-276-4152
    Email: treptow.john@dorsey.com
    Email: leukuma.wendy@dorsey.com

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

INLET ENTITIES' REPLY TO TOTEM'S OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al, Case No. A04-0058 CV (JWS)    Page 15 of 15