IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc.,<br><br>                 Plaintiffs,<br><br>   v.<br><br>INLET FISHERIES, INC., an Alaska corporation; and INLET FISH PRODUCERS, INC., an Alaska corporation,<br><br>                 Defendants.<br><br>INLET FISHERIES, INC., an Alaska corporation; and INLET FISH PRODUCERS, INC., an Alaska corporation,<br><br>                 Third-Party Plaintiffs,<br><br>   v.<br><br>TOTEM AGENCIES, INC., a Washington corporation; and AMERICAN E&S INSURANCE BROKERS CALIFORNIA, INC., a Washington corporation,<br><br>                 Third-Party Defendants, | Case No. 3:04-cv-00058-JWS<br><br>ORDER FROM CHAMBERS<br><br>[Re:  Motions at Dockets 203 and 204] |

## I.  MOTIONS PRESENTED

At docket 204 defendants Inlet Fisheries, Inc. ("IFI") and Inlet Fish Producers, Inc. ("IFP") (collectively "Inlet") have moved for reconsideration of the order entered by this court at docket 181 denying Inlet's motion for summary judgment and granting the motion of plaintiff Certain Underwriters at Lloyds, London ("Lloyds") for summary

judgment. At docket 203, Inlet has requested the court relax the requirement of the local rules that a motion to reconsider an order be filed within five days of its entry.[1/] The basis for both motions is newly discovered evidence. Lloyds has opposed the motions. Oral argument was not requested and would not assist the court.

## II.  STANDARD OF REVIEW

Inlet cites FED. R. CIV. P. 59(e) as the authority for the motion and Lloyds' opposition in part suggests the motion is untimely under Rule 59(e). Rule 59 governs post-judgment motions to amend judgment or for new trial, not interlocutory orders. Although the court entered an order granting summary judgment, no final judgment was entered;[2/] therefore, Rule 59 does not apply.[3/] However, as long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause.[4/] That inherent power is not unfettered: "the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice."[5/] Only the second ground, newly discovered evidence, is raised in the case at bar.

To succeed, Inlet must show that (1) the evidence is newly discovered or was unknown until after the prior motions were submitted for decision *and* (2) that with reasonable diligence such evidence could not be discovered and produced prior to their

---

[1/] D.AK. LR 59.1.

[2/] FED. R. CIV. P. 54(b); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL, §2715 (3d ed. 1998).

[3/] *United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000).

[4/] *City of Los Angeles, Harbor Division v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001)

[5/] *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also School District No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("[r]econsideration [of grant of summary judgment] is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law").
.

submission.[6] The newly discovered evidence must also be of sufficient probative value to change the disposition of the motions.[7]

### III. BACKGROUND/PROCEDURAL HISTORY[8]

In May 2004 Lloyds filed its original motion for summary judgment.[9] Inlet, in response to that motion, filed an affidavit under FED. R. CIV. 56(f), seeking a continuance until such time as Inlet could conduct discovery to oppose that motion.[10] Although somewhat critical of the dilatory tactics employed by Inlet in defending against this action, the court granted Inlet's request.[11] In March 2005 Lloyds renewed its motion for summary judgment.[12] A month later Inlet opposed this motion and cross-moved for summary judgment.[13] On June 15 Lloyds filed its combined opposition to Inlet's cross-motion and reply to Inlet's opposition to Lloyds' motion.[14] On July 11 Inlet filed its reply to Lloyds' motion.[15] Inlet did not request a continuance under Rule 56(f). The court granted Lloyds' motion and denied Inlet's motion.[16]

In support of its motion for summary judgment and in opposition to Inlet's cross-motion, Lloyds submitted the declaration of Russell Brown, a vice president of Water

---

[6] *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003); *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 211 (9th Cir. 1987)

[7] *Id.*

[8] The facts and procedural history, which are well known to the parties and extensively set out in the prior orders of the court at dockets 114 and 181 are not repeated here except as necessary to an understanding of the current motions at bar.

[9] Docket 55.

[10] Docket 87.

[11] Docket 114. Because an intervening amended complaint had been filed, the court also denied Lloyds' motion for summary judgment without prejudice.

[12] Docket 135.

[13] Docket 151.

[14] Docket 164.

[15] Docket 172.

[16] Docket 181.

Quality Insurance Syndicate ("WQIS"), the prior pollution insurance carrier for Inlet, to establish the industry standard on the materiality of information not disclosed by Inlet in applying to Lloyds for insurance. The newly discovered evidence consists of the deposition testimony of Brown and numerous documents he produced at a deposition taken in December 2005 under FED. R. CIV. P. 30(b)(6). Inlet argues that this evidence is newly discovered because Brown was not identified as a witness until Lloyds filed its reply to Inlet's motion for summary judgment and, therefore, Inlet had no opportunity to depose Brown prior to completion of briefing on summary judgment.

## IV.  DISCUSSION

A *vel non* for evidence to be considered "newly discovered" is that the evidence could not have been discovered and produced at the hearing through the use of reasonable diligence.[17] Although Inlet may not have known that Lloyds intended to introduce the declaration of Russell Brown until June 2005, clearly Inlet certainly knew long before then that the materiality of the omitted information, *i.e.,* the prior cancellation by WQIS and pollution history of Inlet, were dispositive issues in this litigation. As Lloyds points out, Inlet also knew, or at least by the exercise of reasonable diligence should have known, what information Inlet provided WQIS in obtaining coverage. Inlet was also aware that WQIS was a significant player in the pollution insurance industry and that its underwriting standards were likely to be of significant importance to the resolution of the issue of the materiality of the undisclosed information (cancellation of the WQIS policy and pollution history). Instead of inquiring of WQIS as to its position on the materiality of the undisclosed information, as did Lloyds, Inlet chose to rely on the affidavit of Forrest V. ("Woody") Wilton to establish the existence of a triable issue of fact. The inadmissability of Wilton's opinion on the underwriting standards for stand-alone pollution insurance policies rendered the evidence introduced by Lloyds, including the Brown declaration, uncontradicted. This was, simply put, a tactical litigation decision that proved to be wrong.

---

[17] *Engelhard Industries, Inc. v. Research Instrumental Corp.,* 324 F.2d 347, 352 (9th Cir. 1963).

More tellingly, Inlet does not explain the reason relief was not sought under Rule 56(f),[18] or the delay of nearly six months after learning of the Brown testimony and more than two months after the court entered its order to take the Rule 36(b)(6) deposition of Brown.  At the time Lloyds renewed its motion for summary judgment, this action had been pending for more than two years.  As the court noted in its September 2004 order granting Inlet relief under Rule 56(f), Inlet had already been dilatory at that point in defending this matter and conducting discovery.

Even if the evidence now sought to be considered as newly discovered had been proffered in connection with the summary judgment motions, it would not have altered the outcome.  Viewed in the light most favorable to Inlet, and contrary to its assertions, the so-called newly discovered evidence does not contradict the testimony contained in the Brown affidavit.[19]  At most, the evidence may tend to undermine the credibility or weight to be given to Brown's testimony.  Once the moving party has properly supported a motion for summary judgment, the opposing party must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial.[20]  In ruling on a motion for summary judgment, the court may not base its decision on credibility; for the purpose of ruling on a summary judgment motion the facts asserted in an affidavit are accepted as true.[21]

---

[18]  *See Barber v. State of Hawai'i*, 42 F.3d 1185, 1198 (9th Cir. 1994).

[19]  In fact, in his deposition Brown reaffirmed that the statements made in his declaration were true and accurate.

[20]  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–257 (1986); *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985).

[21]  *Dominguez-Curry v. Nevada Transp. Dept.*, 437 F.3d 1027, 1035–36 (9th Cir. 2005); *see Bodett v. CoxCom, Inc.,* 366 F.3d 736, 742 (9th Cir. 2004) ("[i]n other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does not require that the court make a credibility determination on the [movant's] evidence at the summary judgment stage, even if it has reason to disbelieve that evidence); *see also Williams v. Calderon,* 48 F. Supp.2d 979, 989 (C.D.Cal.1998) (noting in the context of a habeas claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom., Williams v. Woodford,* 384 F.3d 567 (9th Cir. 2004).

Creating a triable issue of fact by discrediting the testimony of Brown is precisely what Inlet is attempting in its motion for reconsideration. Inlet has not produced any direct evidence that prior policy cancellations and pollution history of an applicant are not material facts, the nondisclosure of which violates the maritime doctrine of *uberrimae fidei*. Instead, Inlet argues that the fact that from the time WQIS first insured Inlet it did not at any time inquire about the condition of the insured vessels, the pollution history of the insureds, or any information concerning prior policies undermines Brown's testimony that these are material factors in the underwriting decision.

Inlet's argument is undercut by several factors. There is no evidence that prior to the time WQIS first issued a policy to Inlet that any carrier had canceled or declined pollution coverage for Inlet or Inlet had been involved in any marine pollution incidents. The action by WQIS requiring a survey of the vessels in June 2000 immediately following the *Maren I* incident is indicative that condition of the vessels is in fact a material factor in underwriting decisions. The argument advanced by Inlet also misses the basic premise of the doctrine of *uberrimae fidei* as applied in this circuit—a material fact must be disclosed *even in the absence of a request*.[22] Just as Lloyds, WQIS was entitled to rely on that doctrine to provide it with all the information material to the underwriting decision.

Finally, even if this court were to discount or even disregard the Brown testimony, the testimony of the Lloyds' personnel familiar with underwriting standards for stand-alone marine pollution policies stands uncontradicted. While, as Inlet continues to argue that the testimony of the Lloyds' personnel is self-serving, the court is not free to disregard the testimony of a party that is not inherently incredible simply because it is self-serving.[23] In this case, the deposition testimony of Lloyds' personnel is not only uncontradicted by Inlet, but also consistent with established judicial precedent that both

---

[22] *Cigna Property & Casualty Co. v. Polaris Picture Corp,* 159 F.3d 412, 418 (9th Cir. 1998); *Certain Underwriters at Lloyds v. Montford*, 52 F.3d 219, 222 (9th Cir 1995).

[23] *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1157–58 (9th Cir. 1999).

an insurance applicant's loss history and cancellation of a prior policy are material.[24] Their testimony is not inherently incredible. If competent evidence contradicting the testimony proffered by Lloyds exists, Inlet has an obligation to produce that evidence, which would create a triable issue of fact. This, despite having more than sufficient time to discover and produce, Inlet has not done. Instead, Inlet attempts to attack the strength or weight of the evidence produced by Lloyds. Unfortunately for Inlet, even weak evidence that is uncontradicted is sufficient to establish the lack of a triable issue of fact.

### IV.  CONCLUSION

For the foregoing reasons the motions at dockets 203 and 204 are **DENIED**.

DATED at Anchorage, Alaska, this 24th day of February, 2006

>                             /s/
>                     JOHN W. SEDWICK
>              UNITED STATES DISTRICT JUDGE

---

[24]  *See e.g., Certain Underwriters at Lloyds v. Montford, supra* (applicant's loss history); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 13 (2nd Cir. 1986) (prior policy cancellation).