Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone:  907-277-9511
Facsimile:  907-276-2631

Christopher W. Nicoll, WSBA No. 20771
NICOLL BLACK MISENTI & FEIG PLLC
816 Second Avenue, Suite 300
Seattle, Washington 98104
Telephone:  206-838-7555
Facsimile:  206-838-7515
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>INLET FISHERIES, INC., *et al.*,<br><br>　　　　　Defendants/Third-Party Plaintiffs,<br><br>v.<br><br>TOTEM AGENCIES, INC., *et al.*,<br><br>　　　　　　　Third-Party Defendants. | IN ADMIRALTY<br><br>Case No. 3:04-cv-00058-JWS<br><br>**MOTION FOR<br>AWARD OF ATTORNEYS' FEES** |

COME NOW, plaintiff Certain Underwriters at Lloyds, London and third-party defendant American E&S Insurance Brokers California, Inc., by and through counsel, and move this Court for an award of attorneys' fees pursuant to Rule 82 of the Alaska Rules of Civil Procedure and this Court's Local Rule 54.3.

## I. BACKGROUND

AE&S was granted summary judgment with respect to claims asserted by the defendants Inlet Fisheries, Inc. ("IFI") and Inlet Fish Producers, Inc. ("IFP") (collectively, the "Inlet Entities") on October 20, 2004.  Summary judgment was subsequently granted to Underwriters on September 12, 2005.  Judgment was entered in favor of Underwriters and AE&S on March 31, 2006.

## II. ARGUMENT

### A. STATE LAW GOVERNS AVAILABILITY OF ATTORNEYS' FEES IN THIS CASE.

Admiralty jurisdiction extends over maritime contracts, including most aspects of marine insurance. Insurance Co. v. Dunham, 78 U.S. 1, 15 (1870). Generally, "with admiralty jurisdiction[] comes the application of substantive admiralty law." East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864 (1986). The Supreme Court has carved out an exception concerning marine insurance. Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310 (1955). The Wilburn Boat rule has been summarized by the Ninth Circuit as follows:

> Disputes arising under marine insurance contracts are governed by federal admiralty law when an established federal rule addresses the issues raised. In the absence of an established federal rule, a federal court may, in certain circumstances, fashion one. State law governs disputes arising under marine insurance contracts only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice.

Kiernan v. Zurich Cos., 150 F.3d 1120, 1121 (9th Cir. 1998). Because there is no established federal maritime rule that governs the issue of availability of attorneys' fees to prevailing parties in marine insurance coverage disputes, state law applies.

Four courts have directly examined the issue of whether there is an established federal rule that would prevent a prevailing party in a marine insurance coverage case from recovering attorneys' fees despite a state rule permitting such a recovery. All Underwriters v. Weisberg, 222 F.3d 1309, 1315 (11th Cir. 2000); Am. Nat'l Fire Ins. Co. v. Kenealy, 72 F.3d 264, 270-71 (2nd Cir.1995); INA of Texas v. Richard, 800 F.2d 1379, 1381 (5th Cir.1986); Axess Intern. Ltd. v. Intercargo Ins. Co., 30 P.3d 1, 7-8 (Wash. App. 2001).[1] Only the Second Circuit in Kenealy found that an established federal maritime rule prohibited an award of fees by a prevailing maritime insured under state law. 72 F.3d at 270-71. In each of the remaining cases, the Fifth Circuit, Eleventh Circuit, and Washington Court of

---

[1] Several other courts have considered a related question, namely: whether a state's fair claims handling statutes permitting recovery of punitive damages and attorneys fees for unfair claims handling practices can be applied to cases involving marine insurance. Those courts uniformly apply state law. See, Pace v. Insurance Co. of North America, 838 F.2d 572, 579 (1st Cir. 1988) (applying Rhode Island fair claims handling law, upholding fee award); Bohemia, Inc. v. Home Insurance Co., 725 F.2d 506, 511 (9th Cir.1984) (applying, without discussion, Oregon law but finding no bad faith).

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

**Motion for Award of Attorneys' Fees**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* (Case No. 3:04-cv-00058-JWS)    Page 2 of 12

Appeals applied state law, awarding fees to the prevailing party, after concluding that there was no established federal rule prohibiting fee awards in marine insurance cases. Weisberg, 222 F.3d at 1315; Richard, 800 F.2d at 1381; Axess, 30 P.3d at 7.

Weisberg is the leading case. There, the Eleventh Circuit applied Florida's statute permitting an insured to recover fees after successfully establishing coverage against an insurer, ruling that (a) there was no established federal rule to the contrary, and (b) there was no need for a uniform admiralty rule to the contrary. 222 F.3d at 1315. In so ruling, the court examined and distinguished Kenealy, the only contrary case, stating: "[T]he cases relied upon by Kenealy do not support the Kenealy court's proposition. . . . In addition, Underwriters do[] not provide any reason, nor have we found one, to require a unitary and uniform federal rule respecting attorney's fees in maritime insurance litigation." Weisberg 222 F.3d at 1314-1315. Weisburg specifically examined the cases relied upon by the Kenealy court and found that those cases did not concern marine insurance. Id. at 1314.

In Richard, the Fifth Circuit stated:

There is no specific and controlling federal rule of law relating to attorney's fees in maritime insurance litigation. On the contrary, we have consistently found state law to govern precisely the issue presented here: whether or not attorney's fees lie in the context of a marine insurance dispute.

800 F.2d at 1381.

The Washington court, in Axess, rejected the argument that an established rule existed: "there is no such uniform rule." 30 P.3d at 7. The court expressly rejected Kenealy and endorsed Weisburg. Id. at 7 n.43. The court stated:

Intercargo contends that a uniform rule of admiralty jurisprudence prohibits attorney fees unless there is a finding of bad faith.

First, there is no such uniform rule. Further, Intercargo offers no reason to believe that a state fee award would disrupt the harmony and uniformity of maritime law. . . .

The state of Washington has a strong interest in protecting insureds who must resort to litigation to establish coverage. The federal interest in a rule limiting fees to a bad faith context is not apparent. Indeed, the Eleventh Circuit discerned no federal interest at all. It is highly unlikely a fee award in Washington would alter the business practices of insurers who issue bonds to NVOCCs. Insurers already have legal incentives to pay on the bonds.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

> The uniformity requirement is not absolute, and state law must yield only where its application would frustrate a fundamental tenet of admiralty law. Intercargo provides no argument, reasoned or not, as to why the federal interests here should prevail over Washington's substantial interest. We hold the harmony and uniformity of maritime law does not mandate preemption of the attorney fees determination.

Axess, 30 P.3d at 7-8 (footnotes omitted).

Underwriters and AE&S urge the Court to follow the decisions in Weisburg, Richard, and Axess. Those decisions correctly hold that there is no established federal rule governing the availability of attorneys' fees in a marine insurance dispute. The one case to the contrary, Kenealy, precedes Weisberg and Axess and relies upon inapposite authority.[2] Alaska law permitting recovery of fees by a prevailing party does not conflict with an established federal maritime rule and, therefore, governs the issue of the availability of attorneys' fees in this marine insurance coverage case.

### B. UNDER ALASKA LAW, UNDERWRITERS AND AE&S ARE ENTITLED TO ATTORNEYS' FEES.

This Court has already decided that, to the extent state law applies, Alaska law applies. (Docket 127 at p.5). Alaska Rule of Civil Procedure 82, in pertinent part, provides:

> In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred. The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk.

The District of Alaska has adopted Rule 82 for those cases in which Alaska law governs the substantive issues. D. AK. LR 54.3. Thus, in deciding whether to award fees and in what amount, this Court should apply Rule 82.

---

[2] The 1976 decision by Judge von der Heydt in Kalmbach v. Insurance Co. of Pennsylvania, 422 F. Supp. 44, 45-46 (D. Alaska 1976), rev'd on other grounds, 529 F.2d 552 (9th Cir. 1976), is not controlling and was wrongly decided. There, the court refused to apply the Alaska attorneys' fee rule in a marine insurance case without first assessing whether the Alaska rule was in conflict with an established federal principle of marine insurance law. Id. at 45. For reasons that are not explained in the decision, the Kalmbach court failed to analyze the attorney fee issue under Wilburn Boat as mandated by the Supreme Court. See 348 U.S. at 315. On appeal the Ninth Circuit reversed the court's decision on coverage, mooting the attorneys' fee issue. Thus, Kalmbach and is neither controlling nor persuasive authority.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

### C. AN UPWARD VARIATION OF THE STANDARD ATTORNEYS' FEE AWARD IS WARRANTED.

Under Rule 82, Underwriters and AE&S are automatically entitled to recover 20 percent of their actual attorneys fees necessarily incurred. In cases like this, however, the rule allows the Court to vary the fee award if warranted after examining several enumerated factors:

(A) the complexity of the litigation;
(B) the length of trial;
(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
(D) the reasonableness of the number of attorneys used;
(E) the attorneys' efforts to minimize fees;
(F) the reasonableness of the claims and defenses pursued by each side;
(G) vexatious or bad faith conduct;
(H) the relationship between the amount of work performed and the significance of the matters at stake;
(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
(K) other equitable factors deemed relevant.

Alaska RCP 82(b)(3). The Inlet Entities never acted in good faith toward Underwriters or AE&S. From the beginning of their relationship, Inlet withheld key information germane to the risks they were asking Underwriters to insure. After the loss of the QP, Inlet and its agents failed or refused to cooperate with Underwriters' efforts to diligently and thoroughly investigate. When litigation was initiated by Underwriters, Inlet embarked on litigation strategies that increased Underwriters' and AE&S' costs and protracted the litigation. Inlet transferred venue from Seattle to Alaska; filed coverage claims in State court after Underwriters had initiated the federal action; and sought and obtained delays of Underwriters' motions for summary judgment in order to engage in discovery that failed to yield new evidence. Inlet's conduct before and during this coverage litigation significantly increased the cost and personal wear and tear of litigating this matter. Therefore, for the reasons that follow, Underwriters and AE&S ask the Court to significantly increase the attorneys' fees award above the minimum 20 percent required by Rule 82:

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

- Underwriters were forced to file this litigation because the Inlet Entities refused to cooperate in Underwriters' investigation. (See Docket 55, exh. 11). The Inlet Entities refused to permit Underwriters to review WQIS records by arguing the MAREN 1 was owned by IFP while the QP was owned by IFI. (See id.). The Court found that "from the outset Inlet and Totem, its agent, were dilatory in responding to Lloyds' requests for information, and to a significant extent, obstructive." (Docket 181 at pp. 39-40). The Court stated that the responses to Underwriters' inquiries to "display disregard for the insurer's right to determine what is material to undertaking the risk," and further found that IFI's December 10, 2002 response "was particularly disingenuous." (Id.). The Court characterized the behavior of the Inlet Entities' principal, Mr. Vincent Goddard, as "unexplained and unexcused." (Id.). The Inlet Entities engaged in "stonewalling" during this period. (Id.). "One might even reasonably infer that this was a continuation of an intent to conceal the information." (Id.). Had the Inlet Entities simply cooperated with Underwriters' investigation, Underwriters would have learned of the Inlet Entities' pervasive breach of uberrimae fidei, declared the policy void, and this lawsuit would not have been necessary. Instead, Underwriters were forced to litigate the issue over a three year period.
- As originally filed, this case was relatively straightforward. The complaint was brought by the plaintiffs and named only the two Inlet Entities as defendants. However, the Inlet Entities' brought counterclaims against Underwriters and filed Third Party Complaints against AE&S and Totem Agencies, Inc. The Inlet Entities then participated minimally in the discovery process, instead "coat-tailing the efforts of Totem." (Docket 120 at p. 4). As a result, the complexity of the litigation was significantly heightened due to the Inlet Entities' actions.
- Underwriters brought a motion for summary judgment in May 2004. (Docket 55). Despite the fact that the Inlet Entities had not served a single discovery request on Underwriters nor deposed a single witness in the year preceding Underwriters'

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

motion,[3] the Inlet Entities moved for a continuance under Federal Rule of Civil Procedure 56(f). (Docket 87). With some reluctance, the Court granted the Rule 56(f) motion. (Docket 120). The Court noted that "Inlet has made no showing as to why it was unable to initiate discovery at an earlier date" and concluded that "Inlet appears to have been generally dilatory." (Id. at p. 4). The Court warned the Inlet Entities: "Inlet is admonished that requests for additional delays will not likely be looked upon with favor by the court unless the cause of that delay is clearly beyond the control of Inlet." (Id. at p. 5).

- The Inlet Entities named Underwriters and AE&S as Third Party Defendants in the litigation filed in Alaska state courts. (See Docket 54 at p. 4). As a result, Underwriters and AE&S were forced to litigate the complex issue of whether the state court or federal court should take the lead role in determining coverage issues. (See Docket 54, 63, 77). In September 2004, the Court denied the Inlet Entities' Motion for Stay. (Docket 114).

- This case was originally filed in the U.S. District Court for the Western District of Washington. (Docket 37). The Inlet Entities motioned the Washington federal court to transfer the action to this Court, in part on the basis that the vast majority of witnesses and documents were located in Alaska. (See Defendant's Motion to Transfer, 12/17/03). After the case was transferred, the parties engaged in a two-day document review in Seattle and deposed four witnesses in Seattle. (Docket 131). No such activities took place in Alaska prior to the grant of summary judgment in favor of AE&S and Underwriters.

- Underwriters' May 2004 motion for summary judgment argued that the Inlet Entities' violated their duty of utmost good faith on the basis of their failure to disclose pollution loss history, the condition of their vessels, and the cancellation by WQIS. (See Docket 55). Following the Inlet Entities' Rule 56(f) continuance, Underwriters were forced to engage in significant discovery activities. (See Docket 131). Among

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

---

[3] (See Docket 96 at p. 5).

the discovery were videotaped depositions of seven witnesses in London, England, the depositions of several individuals in Seattle, and the exchange of thousands of pages of documents. (See id.). Despite these significant discovery activities, Underwriters' subsequent motion for summary judgment, filed in March 2005, continued to assert the same basic arguments that were stated in the May 2004 motion. (Cf. Docket 55 to Docket 135). The Inlet Entities' Rule 56(f) continuance greatly increased the cost of litigation but did not significantly alter the bases upon which Underwriters were ultimately entitled to summary judgment.

- Following the filing of Underwriters' March 2005 motion for summary judgment, the Inlet Entities failed to obtain Underwriters' consent to an extension for filing a response and brought a motion for extension only after the deadline to file their response had passed. (See Docket 144, 145). Despite the Inlet Entities' repeated delays in this case, the Court granted their motion. Underwriters were forced to litigate this issue by the Inlet Entities' dilatory actions.

- The Inlet Entities brought a motion for summary judgment on the issue of ambiguity in June 2004. (Docket 88). The Court denied the motion, finding it to be fundamentally deficient because "it is not supported by any evidence in the record." (Docket 127). Underwriters were forced to respond to a motion that contained no evidentiary support.

- AE&S moved for summary judgment in September 2004. (Docket 111). The Inlet Entities responded by seeking another Rule 56(f) continuance. (Docket 116). The court denied the request, noting that "Inlet has been generally dilatory in conducting discovery in this case." (Docket 126).

- The Inlet Defendants brought AE&S into this litigation. In October 2004, AE&S was granted summary judgment. The Court found that the Inlet Entities' claims against AE&S were wholly lacking. (See Docket 126). The Court ruled that, as a matter of law, the Inlet Entities failed to establish any of the required elements of negligence, causation, or harm. (See id.). In light of the Inlet Entities' complete failure to support

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

- their claims against AE&S, it is questionable whether AE&S should have been sued in the first instance.

- The Inlet Defendants attempted to defeat Underwriters' motion for summary judgment, in significant part, by relying upon an expert witness who was not qualified to opine on the issues upon which he testified. (Docket 152 at pp. 30-36; Docket 181 at pp. 39-40). Underwriters were forced to depose the Inlet Entities' expert and move to strike his testimony, which motion was granted. (Docket 181 at pp. 39-40).

- In granting summary judgment in favor of Underwriters, the Court, at a minimum, concluded that there was a strong likelihood that the Inlet Entities intended to conceal their prior loss history. (Docket 181 at pp. 16-17 n.35).

- The Court found that the Inlet Entities' explanations for their failure to comply with survey requirements "ring hollow and are at odds with independently established facts." (Docket 181 at p. 28).

- The Court found that the Inlet Entities "had full knowledge" that vessel condition was a material item and that the seaworthiness of the Inlet vessels was questionable, yet still failed to disclose facts concerning vessel condition to Underwriters. (Docket 181 at 29). The Inlet Entities' willful and knowing failure to act in utmost good faith constitutes bad faith.

- The Inlet Entities filed a second motion for summary judgment on the issue of ambiguity in April 2005. (Docket 151). Underwriters were forced to respond to the motion for the second time. (Docket 166). The Court denied the motion, finding (in part) that the Inlet Entities failed to show that the second motion was based upon new evidence. (Docket 181 at pp. 13-18). Underwriters should not have been forced to re-litigate this issue in the absence of new evidence, especially in light of the Inlet Entities' repeated dilatory actions.

- The Inlet Entities moved to reconsider the Court's summary judgment in favor of Underwriters. (Motion for Reconsideration, 1/6/06). The Court denied the motion after requesting briefing from Underwriters. The Court again noted that the Inlet Entities had been dilatory and could have obtained the evidence upon which their

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

motion was based at a much earlier time in the litigation, and had not raised any new issues. (See Order, 2/22/06).

- Underwriters and AE&S incurred significant attorneys' fees in this case. (See Nicoll Dec.). However, this case involved what may be the single most important principle governing marine insurance, and one that a few courts in the United States have abandoned. Additionally, the case involved a significant oil spill and a substantial amount of potential liability resulting from the spill, including, among others, the lawsuits filed in state court. Thus, the amount of work performed is in line with the significance of the matters at stake.

In light of the foregoing facts, and the Rule 82(b)(3) factors Underwriters and AE&S ask the Court to order a full recovery of their attorney fees from the Defendants. This lawsuit was necessitated by the refusal of the Inlet Entities to cooperate in a reasonable and necessary investigation. From the sinking of the Quanirtuug Princess until the present, the Inlet Entities have engaged in a pervasive effort to delay, stonewall, and frustrate Underwriters' efforts to promptly uncover the facts and reach a conclusion to this matter. The policy that was litigated would never have been issued had the Inlet Entities been forthright about their loss record, the condition of their vessels and the cancellation of their prior policy. Underwriters should be put back in the same position they would have been in had the Defendants done what the law required of them.

**D.   EVEN IF RULE 82 IS NOT APPLIED, THIS COURT SHOULD EXERCISE ITS DISCRETION TO AWARD ATTORNEY FEES AND COSTS TO UNDERWRITERS AND AE&S DUE TO THE BAD FAITH OF THE INLET ENTITIES.**

Even if the Court refuses to follow Weisberg and concludes that the general Admiralty rule on attorneys' fee awards applies in a marine insurance coverage dispute, the Court retains discretion under that rule to award Underwriters and AE&S their attorneys' fees and costs in view of the bad faith of the Inlet Entities. The so-called "American Rule" that generally prohibits an award of attorneys' fees includes an exception for when the losing party acts in bad faith. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 245 (1975); see also, Kenealy, 72 F.3d at 270 (stating that "the award of fees and expenses in admiralty actions is discretionary with the

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

district judge upon a finding of bad faith" (quoting <u>Ingersoll Milling Machine Co. v. M/V Bodena</u>, 829 F.2d 293, 309 (2d Cir.1987)).

This Court has already concluded that the Inlet Entities violated their obligations of utmost good faith. (Doc. at 181). Among other acts, the Court found:

> The evidence in this case establishes that . . . upon learning of it, Lloyds immediately started an investigation into the <u>Maren I</u> incident. The evidence also shows that from the outset Inlet and Totem, its agent, were dilatory in responding to Lloyds' requests for information, and to a significant extent, obstructive. The responses by Totem and counsel for IFI display disregard for the insurer's right to determine what is material to undertaking the risk; instead of providing information, both questioned the need for or relevance of the requested information. The December 10, 2002, response of counsel for IFI was particularly disingenuous. Three months after the initial request to IFI/IFP and two months after the initial request from counsel for Lloyds, counsel for IFI took the position that (1) the <u>Maren I</u> was owned by IFP not IFI, (2) he does not represent IFP, (3) IFI has no authority to release the information, and (4) it was being referred to counsel for IFP for appropriate response. This response disregarded the facts that IFI and IFP were co-insureds on the WQIS policy, Vincent Goddard, the president of IFI, was also the president of IFP and certainly had the authority to authorize the release of the WQIS files, and, according to the official U.S. Coast Guard documentation IFI, not IFP, was the owner of the <u>Maren I</u>. Goddard, who was aware of the situation and privy to the fact the request was directed to both IFI and IFP, waited three months before consulting the attorney representing IFP, a company he owned, controlled and served as president. His behavior is unexplained and unexcused. This stonewalling by Inlet through its agent, Totem, and its counsel, in responding to Lloyds' multiple requests for information regarding the <u>Maren I</u> incident and the files of WQIS during the months following revelation of the <u>Maren I</u> incident certainly demonstrates that Inlet was not acting in utmost good faith. One might even reasonably infer that this was a continuation of an intent to conceal the information.

(Docket at 181 at pp. 39-40 (footnote omitted)). The Court also found that there was a significant possibility that the Inlet Entities intended to conceal their prior losses (Docket at 181 pp. 16-17 n.35) and that the Inlet Entities willfully failed to disclose the condition of their vessels despite possessing actual knowledge that the condition was "not only material but that the [former] underwriter had reason to doubt the seaworthiness of the vessels." (Doc. at 181 p. 29).[4] Thus,

---

[4] A more detailed listing of acts by the Inlet Entities that could support a bad faith argument is provided <u>supra</u>, Part II.C.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

even if the Court refuses to follow the majority rule as announced in <u>Weisberg</u>, an award of attorneys' fees is within the Court's discretion because the Inlet Entities engaged in bad faith.

### E. UNDERWRITERS' AND AE&S' REQUEST FOR ATTORNEYS' FEES.

Underwriters and AE&S request the Court order the Defendants to reimburse their attorneys' fees jointly and severally. Under Rule 82, the award should be a minimum of 20% of the total attorneys' fees necessarily incurred in this case. Under subpart (b)(3) of that rule, the Court has discretion to increase the percentage award. Underwriters and AE&S has established ample grounds to justify a larger fee award.

The attorneys' fees incurred and paid by Underwriters[5] are summarized and detailed in the contemporaneously filed Declaration of Christopher W. Nicoll (hereinafter "Nicoll Dec."). The fees were necessarily incurred. (Nicoll Dec. ¶ 7). The Declaration complies with Local Rule 54.3.

Under the circumstances, Underwriters and AE&S ask that the Court award a full reimbursement of their attorneys' fees, for a total of $385,834.00. An award for the full amount of attorneys' fees incurred is appropriate in light of the equities of this case, the Inlet Entities' failure to act in good faith; Underwriters' good faith efforts to obtain resolution without litigation, and then to achieve an early conclusion to the case; the Inlet Entities' refusal to cooperate with Underwriters' investigation; and the conduct of the Inlet Entities' during the litigation that resulted in increased cost and delay.

DATED this 14th day of April, 2006.

> LANE POWELL LLC
> Attorneys for Certain Underwriters and American E&S Insurance Brokers California, Inc.,
>
> By  s/ Brad E. Ambarian
> 301 West Northern Lights Boulevard, Suite 301
> Anchorage, Alaska  99503-2648
> Tel:  907-277-9511
> Fax: 907-276-2631
> Email:  ambarianb@lanepowell.com
> ASBA No. 8711072

I certify that on April 14, 2006, a copy of the foregoing was served by ECF on:

Thomas A. Matthews, tom.matthews@matthewszahare.com
John A. Treptow, treptow.john@dorsey.com

  s/ Brad E. Ambarian
053081.0001/154670.1

---

[5] Underwriters provided AE&S with a defense and Underwriters' counsel handled that defense in this Court.

**Motion for Award of Attorneys' Fees**
*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.* **(Case No. 3:04-cv-00058-JWS)**            Page 12 of 12