John A. Treptow, ABA #7605059
Wendy E. Leukuma, ABA #0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska  99501-5907
Telephone: (907) 276-4557
Facsimile:  (907) 276-4152

Attorneys for Inlet Fisheries, Inc.
 and Inlet Fish Producers, Inc.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., <br><br>               Plaintiff, <br><br> vs. <br><br> INLET FISHERIES, INC., an Alaska corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation, <br><br>               Defendants and Third-Party Plaintiffs, <br><br> vs. <br><br> TOTEM AGENCIES, INC., a Washington corporation, <br><br>               Third-Party Defendant. | Case No. A04-0058 CV (JWS) <br><br><br> **INLET'S OPPOSITION TO MOTION FOR AWARD OF <u>ATTORNEY'S FEES</u>** |

Inlet Fisheries, Inc., ("IFI") and Inlet Fish Producers, Inc. ("IFPI") (collectively "Inlet") hereby oppose the Motion for Award of Attorney's Fees submitted by Plaintiff Certain Underwriters at Lloyds, London ("Lloyds") and Third-Party Defendant American E&S Insurance Brokers California, Inc. ("American") (collectively "Lloyds").

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

Lloyds' motion is unprecedented in the courts of this Circuit; there is no controlling Ninth Circuit authority authorizing the relief Lloyds seeks, nor is there persuasive precedent supporting Lloyds' position from other District Courts of this Circuit.  Moreover, the legal basis for Lloyds' request can hardly be considered firmly established.  Instead, it is the subject of a split among the circuits where this issue has been addressed.  Lloyds is, in short, asking this Court to create a significant new provision of federal common law in this Circuit.

In this case, however, there is no legal, equitable, or factual reason to accept Lloyds' invitation to "crawl out on this limb."  This insurance giant seeks a windfall attorney's fees award of nearly $400,000 – an extraordinary amount for a matter determined on summary motion – as a punitive measure against Inlet, which has just been saddled, due to its broker's mistakes, with responsibility for a massive and unexpected financial obligation.  It seeks this windfall in the face of reasonable, settled expectations that the "American Rule" regarding attorney's fees applies in non-diversity cases in this Court.  Indeed, such expectations are only more settled in the present context, in which an insurer has brought suit to limit the scope of its coverage.  Inlet does not believe the rule Lloyds seeks is appropriate in any case.  This case, however, is an especially inappropriate matter in which to create, as a matter of first impression, such a far-reaching rule.  Lloyds' motion should be denied.

## I.      LLOYDS' ARGUMENT FOR APPLICATION OF STATE LAW TO ITS ATTORNEY'S FEES REQUEST IS UNPERSUASIVE

Lloyds' central argument is that, under the *Wilburn Boat* rule, state law applies to the issue of whether attorney's fees are available in a marine insurance matter heard pursuant to admiralty jurisdiction.  As this Court has determined that the applicable state

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

law is that of Alaska, Lloyds asserts, Alaska Civil Rule 82 applies and provides for an

award of attorney's fees to Lloyds as the "prevailing party."

> The Ninth Circuit has construed the *Wilburn Boat* rule as follows:
>
> Disputes arising under marine insurance contracts are governed by federal admiralty law when an established federal rule addresses the issues raised. In the absence of an established federal rule, a federal court may, in certain circumstances, fashion one. State law governs disputes arising under marine insurance contracts *only* in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice.

*Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir. 1998) (emphasis added). Thus

under the *Wilburn Boat* rule, federal law is presumptively applicable, and recourse to

state law can <u>only</u> be had when all three questions presented by *Wilburn Boat* can be

definitively answered in the negative: (1) there is no established federal rule; (2) the

federal court cannot fashion an applicable federal rule; and (3) there is no need for

uniformity in admiralty practice.

As demonstrated below, and contrary to Lloyds' assertions, there is an

"established federal rule" with respect to the availability of attorney's fees in admiralty

jurisdiction matters – the "American Rule." Under *Wilburn Boat*, that rule applies by

default and precludes Lloyds' request for an award of attorney's fees.

### A.  The "American Rule" is Uniformly Applied in Non-Diversity Actions and Supplies an "Established Federal Rule" Under *Wilbur*

"[T]he 'American Rule' [holds] that, at least absent express statutory authorization

[or enforceable contractual commitment] to the contrary, each party to a lawsuit

ordinarily shall bear its own attorney's fees." *City of Riverside v. Rivera*, 477 U.S. 561,

567 (1986); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 95 S. Ct. 1612,

421 U.S. 240, 44 L.Ed.2d 141 (1975). The "American Rule," with its limited statutory

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

INLET'S OPPOSITION TO MOTION FOR AWARD OF ATTORNEY'S FEES
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al.*, Case No. A04-0058 CV (JWS)    Page 3 of 20

and common law exceptions, is generally applicable in non-diversity cases before the federal courts. *See Alyeska*, *supra*, 95 S. Ct. at 1616; *Rivera*, *supra*, 477 U.S. at 567 (federal question jurisdiction); *American Union Transport Co. v. Aguadilla Terminal, Inc.*, 302 F.3d 394, 396 (1st Cir. 2002) (admiralty). Since the Supreme Court famously spoke to the matter in its 1975 *Alyeska* decision, this general rule has been a matter of settled expectations in the federal courts.

In *Am. Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270-71 (2d Cir. 1995), a case forthrightly cited by Lloyds, the Second Circuit directly considered whether there was an established federal admiralty rule regarding the availability of attorney's fees, and specifically concluded that there is such a rule – the "American Rule." *Id*. at 270-71. Relying on its holding in *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir. 1987), *cert. den. sub nom. J.E. Bernard & Co. v. Ingersoll Milling Mach. Co.*, 484 U.S. 1042, 108 S. Ct. 774, 98 L.Ed.2d 860 (1988), the Second Circuit recognized the "'general rule … that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith.'" *Kenealy, supra*, 72 F.3d at 270, *quoting Ingersoll*, *supra*, 829 F.2d at 309. As there was clearly an established and applicable federal rule, the *Wilburn Boat* exception simply did not apply.

**B.    The Cases Relied Upon by Lloyds For the Assertion That There is No Established Federal Rule Under *Wilburn Boat* Regarding the Availability of Attorney's Fees Are Unpersuasive**

Lloyds takes the position that there is no "established federal rule" with respect to the availability of attorney's fees in admiralty actions, citing cases from two other federal circuit courts of appeal.[1] As shown below, however, the cases cited by Lloyds recognize

---

[1] Lloyds' citation of *Axess International Ltd. v. Intercargo Insurance Co.*, 30 P.3d 1 (Wash. App. 2001), appears inapposite. *Axess* involved a matter in state court, in which

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

INLET'S OPPOSITION TO MOTION FOR AWARD OF ATTORNEY'S FEES
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al.*, Case No. A04-0058 CV (JWS)    Page 4 of 20

this issue, but do not address it in any substantive manner, and do not provide this Court with any substantive justification for adopting, as a matter of first impression in this Circuit, the new doctrine that Lloyds advances.

In *INA of Texas v. Richard*, 800 F.2d 1379, 1381 (5th Cir. 1986), the Fifth Circuit, in a *per curiam* opinion, remanded a judgment denying an insured's request for attorney's fees because it was unable to determine whether the ruling had been made under state or federal law. The Fifth Circuit recognized that "[t]he *general* federal rule in admiralty is, of course, that attorney's fees may not be recovered absent statutory authorization." *Id*. at n.2 (emphasis in original). The Court, however, cited cases in which it had, without analysis, simply applied state law regarding the availability of fees in the context of marine insurance disputes. *Id*. The Court then stated that such a rule "is *sui generis* because state law supplies the rule of decision," and instructed that state law should guide the lower court's determination of the issue on remand. *Id* at n.2.[2]

The Eleventh Circuit reached the same result in a similar fashion in *All Underwriters v. Weisberg*, 222 F.3d 1309, 1315 (11th Cir. 2000). The *Weisberg* court also recognized the rule cited in *Kenealy* that, "in general, attorney's fees are not recoverable in admiralty actions." *Id*. at 1313. Like the Fifth Circuit in *Richard*, however, the Eleventh Circuit looked to its own precedent to determine that this rule did not apply in the context of marine insurance disputes. Oddly, the court admitted that, in

---

the fees question arose in the context of a federal preemption argument. *Id*. at 6. The legal standards in such a context are distinct from those presented in this case, and so *Axess* has little to offer this Court's analysis.

[2] Lloyds mistakenly asserted that the Fifth Circuit in *Richard* "applied state law, awarding fees to the prevailing party." Clerk's Docket 232 at 3. As noted above, the *Richard* court simply remanded to the district court for further proceedings, and did not mandate a fee award.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

the previous cases was relying upon, "this Court did not address expressly whether an established federal maritime policy existed. Rather, this court assumed without any discussion that state law applied." *Id.* at 1313. Even more oddly, the court again forswore any analysis of the matter, choosing instead to simply apply case authority that it admitted was not the product of any thoughtful analysis. *Id.*

The authorities relied upon by Lloyds simply do not contain sufficient substantive analysis of this issue to offer persuasive justification for adopting the new rule that Lloyds seeks. The Eleventh Circuit's determination in *Weisberg* that there was no applicable federal rule was based on earlier decisions that had simply presumed this to be the case. This is little more than circular reasoning; the court never addressed the issue of whether its previous cases were correctly decided. The Eleventh Circuit's respect for its own precedent simply does not, in and of itself, provide a persuasive justification for application of that precedent, as a matter of first impression, in a court of the Ninth Circuit. Similarly, the Fifth Circuit relied on its own precedent to reach the result in *Richard*, again without engaging in substantive analysis of the issue. Respect for the Fifth Circuit's precedent is simply not a persuasive reason for a district court in this Circuit to do anything, much less to create a significant new provision of admiralty common law in a matter of first impression.

## II.   THE SUBSTANTIVE JUSTIFICATION FOR LLOYDS' PROPOSAL IS UNPERSUASIVE ON ITS MERITS, ESPECIALLY UNDER THE CIRCUMSTANCES PRESENTED HERE

The minimal substantive justifications that can be teased out of the *Weisberg* and *Richard* cases are also unpersuasive, and do not in any event support the applicability of the fee-shifting provisions of the Alaska Civil Rules under the present circumstances.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

### A.      Federal Law, Not State Law, Provided the Basis For the Decision in This Case

The Fifth Circuit's pithy substantive justification for its decision in *Richard* is that application of state law regarding the availability of attorney's fees is "*sui generis* because state law supplies the rule of decision." *Richard, supra,* 800 F.2d at 1381 n.2. As this Court's recent experience has demonstrated, however, application of state law to marine insurance claims is not the broad, general truth that the Fifth Circuit presumes it to be.  The Fifth Circuit's reasoning sweeps away the *Wilburn Boat* rule in favor of a rule in which state law always "supplies the rule of decision" in marine insurance cases. While this has the benefit of simplicity, it is an incorrect statement of the law – especially with respect to the present case.  The substantive justification for *Richard* is simply unsound, and the rule announced in that case is concomitantly unsound.  It does not support creation of the significant and broad new legal right Lloyds seeks here, in a matter where state law did <u>not</u> "suppl[y] the rule of decision."

*Weisberg* similarly opined that the "American Rule" was inapplicable because it was not specific to marine insurance context.  *Id.  Wilburn Boat* does not require, however, that every rule must be unique to the marine insurance context in order to be applicable in that context.  It simply asks whether there is "an established federal rule [that] addresses the issues raised." *Kiernan, supra,* 150 F.3d at 1121.  As the Second Circuit determined in *Kenealy,* the "American Rule" is just such an "established federal rule" with respect to the issue of the availability of attorney's fees in admiralty jurisdiction matters.  *Kenealy, supra,* 72 F.3d at 270-71.

In short, federal law provided the basis for this Court's determination of this case, and there is a federal rule of general applicability in admiralty that covers the issue of when attorney's fees awards are available.  Application of the "American Rule" has long

been a matter of settled expectations in admiralty matters. *See, e.g., Sosebee v. Rath*, 893 F.2d 54, 56 (3d Cir. 1990); *American Union Transport Co. v. Aguadilla Terminal, Inc.*, 302 F.3d 394, 396 (1st Cir. 2002); *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 598 F. Supp. 45, 47-48 (D.V.I. 1984), *aff'd*, 760 F.2d 257 (3d Cir. 1985). In the context of this Court's decision in the present case, there is simply no reason to reach into the provisions of state law on this particular issue, especially where the substantive basis for the decision was based in the federal common law of admiralty.

**B.    Alaska Civil Rule 82 is Not "Substantive" For the Purposes of *Wilburn Boat***

On analysis of the *Weisberg* decision, it is clear that Lloyds' argument that *Weisberg* supports Lloyds' request for attorney's fees in this case is on shaky ground. The substantive underlay of *Weisberg* can be discerned in the section of the opinion rejecting *Kenealy*. *Weisberg*, *supra*, 222 F.3d at 1315. *Weisberg* cited a law review article criticizing *Kenealy*. *Id*. The law review article cited by the *Weisberg* court is worth attention, because, even though the article asserts that *Kenealy* was "mistakenly decided," it nonetheless militates against Lloyds' position in this case. *See* Robertson, D., "Court-Awarded Attorney's Fees In Maritime Cases: The 'American Rule' In Admiralty," 27 *J. Mar. L. & Comm.* 507 (1996) (hereinafter "*Robertson*").

Professor Robertson's argument on this point was that there is a distinction between what he termed "substantive" and "procedural" fee-shifting provisions, and that under *Wilburn Boat* federal courts should apply state fee-shifting provisions when they are "substantive," but not when they are "procedural." *Id*. at 561-62. Significantly, however, Professor Robertson relied on his own definitions what constituted "procedural" rules as opposed to "substantive" rules:

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

> In the present context – maritime federalism – a workable test for distinguishing between substantive and procedural rules is this: Procedural rules are those whose purposes are limited to "the fairness or efficiency of the litigation process;" any rule whose purposes include any matter not confined to litigation management is typed as substantive for present purposes. … Under this test, the hallmarks of a particular rule's substantive nature include the fact that it is "limited to a particular substantive area," such as contract law or insurance, and that it is designed to influence "primary behavior," i.e., "conduct outside the courtroom." Procedural rules' purposes are limited to "improv[ing] the accuracy [and hence fairness] or lower[ing] the cost of the judicial process."

*Id*. at 561-62 (citations omitted); *see also* Parness, "Choices About Attorney Fee-Shifting Laws: Further Substance/Procedure Problems Under Erie And Elsewhere," 49 *U. Pitt. L. Rev*. 393, 401 (hereinafter "*Parness*") ("Procedural fee-shifting laws typically govern conduct during litigation, often by permitting recovery of fees from those who abuse the judicial process. Substantive fee-shifting laws typically relate to the remedies available for certain claims, often encouraging assertions of these claims by providing that prevailing complainants are entitled to recovery of fees.").

Application of the provisions regarding attorney's fees thus makes sense under this analysis, within the context presented by *Weisberg*. At issue in *Weisberg* was a section of the Florida insurance code. *Weisberg*, *supra*, 222 F.3d at 1311-12. Fla. Stat. § 627.428 allows a first party insured to obtain attorney's fees against its insurer where it had to bring suit in order to receive its benefits under the policy at issue. Fla. Stat. § 627.428. This is "substantive" under Professor Robertson's analysis because: (1) as it is contained within the insurance code and speaks only to actions by first-party insureds against their insurers, it is "'limited to [the] particular substantive area' … [of]

INLET'S OPPOSITION TO MOTION FOR AWARD OF ATTORNEY'S FEES
*Certain Underwriters at Lloyds et al. v. Inlet Fisheries, Inc. et al.*, Case No. A04-0058 CV (JWS)    Page 9 of 20

insurance"; and (2) it is directed toward affecting "primary" behavior within the context of the regulated industry – i.e., claims settlement practices.[3]

The Alaska fee-shifting rule, however, is not "substantive" within Professor Robertson's definition of the term.  It is a rule of general applicability, contained within the Civil Rules and backed by a statutory provision allowing the Alaska Supreme Court to make procedural rules.  Alaska R. Civ. P. 82; AS 09.60.010.  It is directed specifically at litigation behavior, as opposed to "primary" behavior.  *See*, *e.g.,* Alaska R. Civ. P. 82(b)(3) (listing litigation behaviors affecting attorney's fees awards).  Alaska Civil Rule 82 is clearly centrally directed toward "'improv[ing] the accuracy [and hence fairness] or lower[ing] the cost of the judicial process,'" and is thus "procedural" as Professor Robertson uses the term.  *Robertson*, *supra* at 562.

Admittedly, the terms "substantive" and "procedural" carry other legal baggage.  The question of whether Alaska Civil Rule 82 is "substantive" for *Erie* purposes in diversity matters, for example, has long been answered in the positive.  *E.g.,* D. Ak. L.R. 54.3; *Klopfenstein v. Pargeter* 597 F.2d 150 (9th Cir. 1979).  Inlet urges the Court not to be unduly attached to the more commonly-applied *Erie* analysis, however.  This Court is not sitting in diversity, *Erie* is not directly applicable, and the terms "substantive" and "procedural" mean different things in different contexts.  It is clear that a rule can

---

[3] As this Court is no doubt aware, numerous states have enacted such fee-shifting provisions in the context of coverage claims by first-party insureds with the purpose of "leveling the playing field" for consumers in the unique context of the insurance industry, and of incentivizing insurers to reduce coverage disputes for public policy reasons.  *See*, *e.g.* Stephens, "The Fees Stop Here: Statutory Purposes Limit Awards To Defendants" *DePaul L. Rev.* Summer, 1987 ; Note, "State Attorney Fee Shifting Statutes: Are We Quietly Repealing the American Rule?," 47 *Law & Contemp. Probs.* 321 (1984).  Many state insurance codes contain a similar statute.  *Id.*

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

properly be deemed "substantive" for *Erie* purposes, but procedural for other purposes, even within the context of the same case. *E.g.,* Parness, *supra*, 49 *U. Pitt. L. Rev*. at 401 (citing cases).

For example, in *City of Carter Lake v. Aetna Casualty & Surety Co*., 604 F.2d 1052, 1061 (8th Cir. 1979), the Eighth Circuit illustrated the dual characterizations attending some fee-shifting laws. In *Carter Lake*, an insured sought payment under an insurance policy governed by Iowa law, along with reimbursement of attorney's fees as provided by a Nebraska statute. The Eighth Circuit concluded that, for *Erie* purposes, the issue of granting or denying attorney's fees to the insured was a question of substantive law. *Id*. Analyzing the issue in a choice of law setting, however, (to determine whether the Iowa or Nebraska attorney's fees law applied), the Eighth Circuit determined that the statute in question was "procedural" as the term is used in choice of law analysis. *Id*.[4]

In short, "substantive" for *Erie* purposes does not mean "substantive" for all purposes. With this understanding, it is significant that the notion that Alaska Civil Rule 82 would be a "procedural" rule under Professor Robertson's analysis (which is the lynchpin of the *Weisberg* case relied upon by Lloyds), and would not be applied in the present situation, is directly endorsed by Robertson himself:

> In maritime-law and other cases governed by federal law, federal courts apply their own procedural rules, not those of the state in which they sit. The proposition is well accepted and has caused little controversy. Illustrating the proposition, several maritime decisions have rejected the applicability of state procedural rules <u>routinely taxing the losing party with</u>

---

[4] The Seventh Circuit has also opined that rules penalizing abuse of litigation are "procedural in the least controversial sense." *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995), *cert. den.* 116 S. Ct. 566 (1995) (Posner, J., for the court, discussing a hypothetical "pretty easy" Rules Enabling Act case).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

> full costs, including attorneys' fees – i.e., state procedures following the
> English rule.  "Local [procedural] statutes on attorney's fees [are] not
> applicable in admiralty."  *Ocean Barge*, *supra*, 598 F. Supp. at 47.

Robertson, *supra* at 568 (emphasis added).  Alaska Civil Rule 82 is just such a rule – it "routinely" taxes the losing party with attorney's fees.

Finally, there is case law to this effect in a more directly analogous context than is presented in the *Weisberg* case relied upon by Lloyds.  Puerto Rican Rule of Civil Procedure 44.4(d) (repealed in 1979) provided:  "Where a party has been obstinate, the court shall in its judgment impose on such person the payment of a sum for attorney's fees."  Professor Robertson noted that "[t]he Puerto Rican rule's language, its placement in the procedure code, and its provision for judicial discretion all signal that it was purely procedural …. Yet diversity courts regularly applied the Puerto Rican rule, whereas admiralty courts resolutely refused to."  *Id.*, *citing Betancourt v. J.C. Penney Co.*, 554 F.2d 1206, 1209 (1st Cir. 1977); *Pan American World Airways v. Ramos*, 357 F.2d 341, 342 (1st Cir. 1966) (applying rule in diversity under *Erie*). *C.f. Templeman v. Chris Craft Corp.*, 770 F.2d 245, 250 (1st Cir. 1985), *cert. den.* 474 U.S. 1021 (1985) (declining to apply rule in admiralty); *Gradmann & Holler GmbH v. Continental Lines, S.A.*, 679 F.2d 272, 273 (1st Cir. 1982) (same); *Stephenson v. Star-Kist Caribe, Inc.*, 598 F.2d 676, 681 (1st Cir. 1979) (same).

In sum, it is clear that, under the substantive analysis that informed the Eleventh Circuit's opinion in *Weisberg*, Alaska Civil Rule 82 would not be deemed applicable in the marine insurance context.  In this context (as opposed to the *Erie* context), Alaska Civil Rule 82 is a "procedural" rule.  Courts sitting in admiralty apply the federal procedural rules regarding attorney's fees, not the state rules.  *E.g., Sosebee v. Rath*, 893 F.2d 54, 56 (3d Cir. 1990); *American Union Transport Co. v. Aguadilla Terminal, Inc.*,

302 F.3d 394, 396 (1st Cir. 2002); *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 598 F. Supp. 45, 47-48 (D.V.I. 1984), *aff'd*, 760 F.2d 257 (3d Cir. 1985).

Under the reasoning underlying their own case authority, it is clear that Lloyds should not have recourse to Alaska Civil Rule 82 in this case. Alaska Civil Rule 82 is "procedural" in this context, and should not supplant the long-established federal rule on this subject governing a court sitting in admiralty.

### III.    THE LOCAL RULES DO NOT SUPPORT AN AWARD OF ATTORNEY'S FEES

Lloyds' citation of D. Ak. L.R. 54.3 as a basis for its attorney's fees request must be disregarded. Again, this matter is before the Court pursuant to its jurisdiction over admiralty matters. Local Rule 54.3, which makes the terms of Alaska Civil Rule 82 applicable to matters heard under <u>diversity</u> jurisdiction, does not apply here by its specific terms. *See* D. Ak. L.R. 54.3. Local Rule 54.3 in no way supports Lloyds' position.

### IV.    EVEN IF ALASKA CIVIL RULE 82 DID APPLY, LLOYDS' REQUEST FOR ENHANCED FEES WOULD BE INAPPROPRIATE, AND THE APPROPRIATE CONSIDERATIONS UNDER RULE 82 DEMONSTRATE THAT REDUCED OR NO FEES ARE APPROPRIATE HERE

Lloyds first has failed to meet its burden to demonstrate that the fees it seeks are reasonable and were necessarily incurred. Its request should be denied on this basis alone.

Lloyds' request for enhanced fees under Alaska Civil Rule 82 is meritless. Lloyds improperly attempts to tar Inlet with the misdeeds of its broker, and its claims of litigation misconduct are simple hyperbole. Inlet aggressively litigated its case – as appropriate in what Lloyds admits is a significant matter of first impression – but did not transcend the broad boundaries of acceptable litigation conduct so as to merit an award of enhanced fees under Alaska Civil Rule 82.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

To the contrary, in circumstances like the present, where application of Alaska Civil Rule 82 would contradict long-settled expectations regarding the availability of attorney's fees in admiralty cases, where application of a unique and little-applied federal admiralty rule regarding has ruled the determinative issue, and where Inlet has been saddled with an enormous and unexpected financial obligation, it makes little sense in law or in equity to impose further burdens on Inlet. Such a rule would inappropriately burden insureds, making litigation too expensive for many to pursue, and would improperly incentivize insurers in this context.

### A.     Lloyds Has Failed to Meet Its Burden of Proof

Lloyds has requested an award of its full attorney's fees incurred in this matter – an astounding $385,000 for a matter decided on summary motion. Such an amount should be deemed presumptively unreasonable under these circumstances. And, indeed, the Alaska Civil Rules place the burden on Lloyds to demonstrate that its fees were both "reasonable" and "necessarily incurred." *See* Alaska R. Civ. P. 82.

Inlet submits that this Court's inquiry could end here. Lloyds has failed to specify the rates charged by individual attorneys – its bills only supply the purported hours worked, and a blended total bill per month. *See* Exh. 1 to Declaration of Christopher Nicoll. Lloyds has thus failed to demonstrate that its attorney's rates are reasonable (Mr. Nicoll's vague assertion notwithstanding). *See* Andrews v. Lena, 975 P.2d 54, 59 (Alaska 1999) (prevailing party "was required to submit records with a brief description of the services provided, the hours worked, <u>and the hourly rate</u> to support his motion for enhanced attorney's fees.") (emphasis added).

Lloyds' submission also indicates that the case was staffed by four (4) attorneys working at two separate law firms. *See* Declaration of Christopher Nicoll at Exhs. 1, 2.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

This alone – and especially in concert with Lloyds' bloated $385,000 in fees – indicates that the case was overstaffed, and thus that the fees incurred were not reasonable. Moreover, it is clear that at least some of the work for which Lloyds seeks reimbursement was duplicative.[5]  Such duplicative work cannot fairly be taxed to Inlet.

## B.     Enhanced Fees Are Not Appropriate

Lloyds characterizes Inlet's conduct of this litigation as thoroughly inappropriate from beginning to end, laying out lengthy bullet-points of purported litigation malfeasance.  The last of these bullet points, however, is the most significant, and undermines the basis for Lloyds' request.  In attempting to explain their bloated attorney's fees bill.  Lloyds notes:

> … this case involved what may be the single most important principle governing marine insurance, and one that a few courts in the United States have abandoned.  Additionally, the case involved a significant oil spill and a substantial amount of potential liability resulting from the spill, including, among others, the lawsuits filed in state court.

Clerk's Docket 232 at 10.

Inlet could not agree more.  This is a tremendously significant issue – one of first impression in this Court – with a tremendous amount at stake, and the parties had significant incentive to vigorously litigate their positions.  Lloyds' assertions of inappropriate litigation conduct collapse under the weight of this admission.  For example:

---

[5] *Compare*, *e.g.*, Exh. 1 at 3 (B. Jamieson entry re: motion for summary judgment) and Exh. 2 at 62 (various entries re: same motion); Exh. 1 at 3 (re: initial disclosures) and Exh. 2 at 64 (same); Exh. 1 at 4 and Exh 2 at 66 (re: extension of time).  Examples abound throughout the exhibits.  Concerns are also raised regarding the accuracy of these billing statements.  *Compare* Exh. 1 at 3 (showing telephone conference on 5/11/04) and Exh. 2 at 64 (showing same conference on 5/13/04).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

- Lloyds' assertion that the lawsuit could have been avoided (Docket 232 at 6) is absurd. Had Lloyds "declared the policy void," Inlet would have been forced to file suit on the controversial issue of *uberrimae fidei* – indeed, given the unsettled state of the law on this issue, it would have been improper for Inlet not to contest Lloyds' unprecedented assertion of this principle. The notion that Inlet should have simply rolled over on Lloyds' motion for summary judgment (Docket 232 at 6, 7, 8) or that it should not have sought reconsideration (*Id*. at 10) does not hold up to scrutiny.

- It was not clear prior to this Court's decision that the principle of *uberrimae fidei* applied here. In fact, this Court has held that "applicability of the doctrine of *uberrimae fidei* to marine pollution policies appears to be an issue of first impression." (Clerk's Docket 181 at 21).

- With such a significant amount of money at stake, Inlet's decision to bring Third-Party Complaints (Docket 232 at 6, 7, 8) in an attempt to spread the risk was perfectly reasonable – especially, as the facts have played out, as against Totem. The complaint as against AE&S was based on the non-frivolous information and belief Inlet had regarding AE&S's role, due to Inlet's previous dealings with AE&S.

- Lloyds' assertion that the transfer of the case to this Court was inappropriate (Docket 232 at 7) is nonsensical. This is a case about a spill that occurred in Alaska, involving an Alaska vessel owner – the real question is why it was brought in the Western District of Washington in the first place. Lloyds has never sought remand or asserted that venue here was inappropriate. This argument must be disregarded.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

- Throughout its assertions, Lloyds attempts to tar Inlet with actions of its broker, Totem.  For example, the expert Lloyds excoriates (Docket 232 at 9) was retained by Totem, not Inlet, and Inlet had no reason to doubt the expert's credentials.  Similarly, the London and Seattle depositions about which Lloyds complains (Docket 232 at 7-8) were noticed by Totem, not Inlet.  Most significantly, the record shows that Inlet relied on Totem to fill out the application for insurance at issue here, and that Totem decided what information should be included.  (Docket 232 at 9).  Totem's actions are an improper basis upon which to seek a fee award against Inlet.

- Lloyds repeatedly points out purported litigation delays, based on requests for extensions of time that were granted by this Court.  Lloyds does not show that this actually increased its costs of litigation.

This was a difficult and hotly contested case.  The Court was faced with a difficult issue of first impression, and there was a great deal of money at stake.  These circumstances strongly militate against an enhanced award of fees under Alaska Civil Rule 82.

## C.     A Reduced Award of Fees or No Fee Award is Appropriate Here

Alaska Civil Rule 82 specifically enumerates several considerations that favor a significantly reduced fee award, or no fee award, in this case.  The following relevant factors under the rule urge this Court to reduce or nullify a fee award in this case:

(C) the reasonableness of the attorneys' hourly rates and the number of hours expended; …

(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and

(K) other equitable factors deemed relevant.

Alaska R. Civ. P. 82(b)(3).

Lloyds' case was heavily staffed, and Lloyds incurred an onerous amount of attorney's fees.  Inlet does not assert that such fees were improper, but context matters. To an insurance giant such as Lloyds, often engaged in "impact" litigation, such a fee is perhaps not unusual – to entities like Inlet it is overwhelming.  This point encompasses all three of the factors cited above.  Granting Lloyds its massive attorney's fees against Inlet would be inappropriate in the present case and would create an improper precedent with respect to future, similarly situated litigants.

Again, as Lloyds has argued, this case involved a highly significant and complex matter of first impression.  This issue is of great concern to marine insurance providers like Lloyds, which essentially admits that it had every incentive to throw all of its resources into this case.  This case mattered tremendously to Lloyds – understandably so – and its massive attorney's fees reflect this.

It is also a case in which the ordinary rules regarding the relationship between an insured and its insurer are turned on their head.  As discussed above, almost all of the specific fee-shifting rules in this context exist in order to equalize the bargaining power disparity between an insured and an insurer: they allow the insured to seek attorney's fees, but not the insurer.  *E.g.,* Fla. Stat. §627.428.  In such a case as this, where the insured has already had a new, unique, and high duty imposed – a duty that is the obverse of the industry standard – it would be inappropriate to further burden the insured with potential liability for the insurer's attorney's fees award.  For all of the well-known

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

public policy reasons supporting the traditional rules regarding interpretation of insurance contracts (*e.g., Dugan v. Atlanta Casualty Cos.*, 113 P.3d 652 (Alaska 2006)) and supporting the statutory rules in many states regarding the availability of attorney's fees in coverage actions (*e.g.,* Fla. Stat. §627.428), this Court should decline to award any attorney's fees in this matter.  Such an award would simply create improper incentives regarding claims and litigation practices, and would put too much leverage into the insurer's hands.

Finally, simple equity favors a drastically reduced fee award, or no fee award at all.  Application of the rule of *uberrimae fidei* was hardly a settled question, as this Court has explicitly recognized.  *See* Clerk's Docket 181 at 21.  Under this unique rule, the application of which has just been determined as a matter of first impression in this Court, Inlet has been saddled with a massive and unexpected financial obligation.  It faces further litigation, both in terms of an appeal of this matter and against its broker, Totem.  An award of attorney's fees, much less full attorney's fees, would just add insult to injury.  The application of the "American Rule" in <u>admiralty</u> matters in the federal courts has long been a matter of settled expectations – it would simply be unfair to upset these expectations, in order to provide an insurance giant (which independently had great incentive to aggressively litigate this case) with a massive windfall attorney's fees award.

## V.     <u>LLOYDS IS NOT ENTITLED TO FEES UNDER THE "BAD FAITH" EXCEPTION TO THE "AMERICAN RULE"</u>

For the same reasons discussed above, Lloyds should not be awarded fees under the traditional "bad faith" exception to the "American Rule."  Lloyds improperly conflates a failure to meet the unique and high duty of "utmost good faith" with actual bad faith.  Inlet has always disagreed that this standard governed its behavior:  Inlet was not even aware of such a standard until this litigation commenced, and its application

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

here was only determined, as a matter of first impression, by this Court.  Moreover, Lloyds' motion ignores Inlet's reliance on its broker with respect to many of the actions against which Lloyds complains.  As discussed above, under the present circumstances, Inlet's actions simply do not rise to the high level of "bad faith" required to support an award of attorney's fees under the traditional rule applicable here.

## VI.    <u>CONCLUSION</u>

Lloyds' request for a windfall attorney's fees award of nearly $400,000 is inappropriate and should be denied.  Lloyds seeks such attorney's fees as a punitive measure against Inlet.  Inlet, however, did not transcend the bounds of propriety in litigating this complex and significant issue of first impression, and has already been punished with the unexpected responsibility for a massive financial obligation.  Further, such an award would fly in the face of reasonable, settled expectations that the "American Rule" regarding attorney's fees applies in non-diversity cases in this Court – especially in the present context, in which an insurer has brought suit to limit the scope of its coverage.  This is an especially inappropriate matter in which to create, as a matter of first impression, the rule Lloyds seeks.  Lloyds' motion should be denied.

Date:  <u>May 8, 2006</u>                              DORSEY & WHITNEY LLP
                                                  Attorneys for Inlet Entities

CERTIFICATE OF SERVICE

This certifies that on the 8th day of May, 2006,
a copy of the foregoing document was served
electronically on:

Thomas A. Matthews
Matthews & Zahare, P.C.
431 W. 7th Avenue, Suite 207
Anchorage, AK 99501


s/ John A. Treptow

By:  <u>s/John A. Treptow, ABA #7605059</u>
     DORSEY & WHITNEY LLP
     1031 West 4th Avenue, Suite 600
     Anchorage, Alaska  99501-5907
     Telephone: (907) 276-4557
     Facsimile:  (907) 276-4152
     E-mail: treptow.john@dorsey.com
     ABA #7605059

*(left margin)* **DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557