Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL PC
301 W. Northern Lights Blvd., Suite 301
Anchorage, AK 99503-2648
Telephone:  (907) 277-9511
Facsimile:  (907) 276-2631

Christopher W. Nicoll
NICOLL BLACK MISENTI & FEIG PLLC
816 Second Avenue, Suite 300
Seattle WA 98104
Telephone:   (206) 838-7555
Facsimile:    (206)838-7515
Attorneys for Plaintiffs & American E&S Insurance Brokers California, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> INLET FISHERIES, INC., an Alaska corporation, and INLET FISH PRODUCERS, INC., an Alaska corporation, <br><br> Defendants. | |
| INLET FISH PRODUCERS, INC., an Alaska corporation, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> TOTEM AGENCIES, INC., a Washington corporation, and AMERICAN E&S INSURANCE BROKERS CALIFORNIA, INC., a Washington corporation, <br><br> Third-Party Defendants. | **IN ADMIRALTY** <br><br><br> Case No. A04-0058 CV (JWS) <br><br> **UNDERWRITERS' AND AES' REPLY TO INLET'S OPPOSITION TO UNDERWRITERS' MOTION FOR ATTORNEYS FEES** |

## I. INTRODUCTION

Plaintiffs Certain Underwriters at Lloyds, London, Subscribing To Certificate Of Insurance OP01 0025 ("Underwriters") and Third Party Defendant American E&S Insurance Brokers California, Inc. ("AE&S") file this Reply Brief in response to the Inlet Entities' Opposition to Motion for Award of Attorneys' Fees.

## II. ARGUMENT

### A. INLET CANNOT ESCAPE A WILBURN BOAT ANALYSIS.

Because this case concerns a policy of marine insurance, it is, as this Court has held, within the federal admiralty jurisdiction. Usually cases within the admiralty jurisdiction are governed by federal substantive law whether filed in a U.S. District Court or, pursuant to the savings to suitors clause, in a state court. Marine insurance litigation is, perhaps, the main exception to this rule. See David W. Robertson, Court-Awarded Attorneys' Fees in Maritime Cases: The "American Rule" in Admiralty, 27 J. Mar. L. & Com. 507, 562-566 (1996) [hereinafter "Court-Awarded Attorneys' Fees"]. As noted by Professor Robertson, Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310 (1955), "carved out a huge exception" to the requirement that federal maritime law be applied to cases within the admiralty jurisdiction. Robertson, Court-Awarded Attorneys' Fees, at 562. In Wilburn Boat, the Supreme Court established that marine insurance disputes are governed by state laws and regulations in the first instance. Wilburn Boat, 348 U.S. at 314-319.

The Inlet Entities (hereinafter "Inlet") concede, as they must, that the Supreme Court's decision in Wilburn Boat supplies the framework for this Court's analysis of Underwriters' motion for attorneys fees. Inlet, however, frames the issue too broadly, disconnecting Wilburn Boat from both its rationale and its objective – regulation of marine insurance matters by the States, or by Congress – rather than by the federal courts. Id. at 314-319. Inlet argues that the marine insurance context of the instant case has no bearing upon Underwriters' motion for fees, urging application of the so-called "American Rule."

In <u>Wilburn Boat</u>, the Court was confronted with the issue of whether an insured's breach of a warranty against the commercial use of a houseboat moored on an inland lake should result in the policy's forfeiture, despite the fact that the warranty breached had no causal relationship to the fire that destroyed the boat.  348 U.S. at 311-314.  The insurer argued that the strict rule against breach of warranty found in the English Marine Insurance Act of 1906 should govern the issue.  The insured argued that the Texas statute requiring a causal nexus between the loss and the breached warranty applied and that the breach should therefore not void the policy.  The Court framed the issue as follows:  "Consequently the crucial questions in this case narrow down to these: (1) Is there a judicially established federal admiralty rule governing these warranties? (2) If not, should we fashion one?"  <u>Id.</u> at 314.  The Court surveyed the case law and found "very few" federal cases to have considered the effect of a breached warranty in a marine policy and concluded that those to consider the question tended to rely on State or general commercial law rather than federal maritime law.  <u>Id.</u> at  314-316.  As a consequence, the Court ruled that the so-called "literal performance" rule was not part of the established body of federal admiralty law.  <u>Id.</u> at 316.  The Court then considered whether it should fashion a federal rule requiring an insured's literal performance of warranties in marine insurance policies.  <u>Id.</u> at 316-319.  Declining to do so, the Court said:  "The whole judicial and legislative history of insurance regulation in the United States warns us against the judicial creation of admiralty rules to govern marine policy terms and warranties."  <u>Id.</u> at 316.  Thus, <u>Wilburn Boat</u> establishes the rule that in questions concerning litigation over marine insurance policies, applicable state law governs *unless* there is an established federal maritime rule to the contrary *or* a need to fashion a contrary federal maritime rule.  The case cautions that federal courts should resist fashioning federal rules governing marine insurance.

The cases relied upon by Underwriters in support of the instant motion for attorney fees have analyzed these issues.[1] Both the analyses and the limited number of cases[2] to address the issue support Underwriters' main contention that there is no established federal maritime rule that dictates availability or unavailability of fees for a prevailing party in a marine insurance dispute.[3] As a consequence, in line with the holding and the rationale of Wilburn Boat, this Court should apply Alaska law and award fees to Underwriters as the prevailing party.[4]

### B. A SIGNIFICANT MAJORITY OF OTHER COURTS TO CONSIDER THE ISSUE HAVE HELD THAT STATE LAW APPLIES TO FEE AWARDS IN MARINE INSURANCE DISPUTES.

There are five cases that have addressed the issue of whether the general admiralty rule disfavoring attorney fee awards is properly applied in a marine insurance coverage dispute. Four of those decisions have ruled that there is no federal statute and no established federal rule that addresses availability of attorney fees to a prevailing party in a marine insurance dispute.[5] The same decisions also assessed and concluded that there is no need to create a uniform federal maritime rule for marine insurance disputes. Thus, the majority approach to this issue supports Underwriters'

---

[1] See All Underwriters v. Weisberg, 222 F.3d 1309, 1315 (11th Cir. 2000); INA of Texas v. Richard, 800 F.2d 1379, 1381 (5th Cir.1986); Axess Intern. Ltd. v. Intercargo Ins. Co., 30 P.3d 1, 7-8 (Wash. App. 2001).

[2] Underwriters have located an additional case that addressed the issue of fee recovery under state law in a marine insurance dispute. In Carney Family Inv. Trust v. Insurance Co. of North America, 296 F. Supp. 2d 629, 631 (D. Md. 2004), the federal court in Maryland refused to dismiss state law claims for fees in a marine insurance coverage dispute brought against a yacht insurer by its insured. Id. at 630. As in the instant case, the district judge had no binding precedent from the Fourth Circuit. The court concluded: "Most persuasive on the current question, however, are opinions involving marine insurance contracts, including bad faith failure to settle claims such as that asserted by [the insured]. The weight of authority, which is consistent with this court's view, finds that state law should provide the governing rules." Id. at 631 (citing cases, footnote omitted).

[3] Underwriters do not dispute that, in general, the rule in Admiralty disfavors attorney fee awards. Consonant with the holding and purpose of Wilburn Boat, however, Underwriters have examined whether there is an established federal rule governing fee awards in marine insurance coverage disputes, for that is the context to which Wilburn Boat applies and the only federal admiralty context in which it makes sense. There are only five reported decisions. Of those five, only one, American National Fire Insurance Co. v. Kenealy, 72 F.3d 264, 270-71 (2nd Cir. 1995), concluded that the American rule displaces state law and applies to marine insurance coverage disputes.

[4] Inlet argues that Alaska's rule awarding fees to the prevailing party is procedural rather than substantive and should therefore not be applied here. Underwriters note, however, that by local rule the judges of the District of Alaska have adopted Alaska's Rule 82 for diversity cases handled within the District and that apply Alaska substantive law under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

[5] See supra notes 1 & 2.

argument that the Alaska rule on fee awards (adopted as LR54.3 by the District of Alaska for cases applying Alaska law) should be applied in this marine insurance coverage dispute. Both the prevailing view and the paucity of federal cases to address the question support Underwriters' argument under Wilburn Boat that there is no established federal rule prohibiting the fee award requested by Underwriters here.

Inlet argues for the minority approach as set forth by the Second Circuit in Kenealy. Inlet asserts that the other decisions either do not stand for the propositions urged by Underwriters or that the cases fail to fully consider the application of the general maritime rule on attorney fee awards, describing decisions of the Fifth and Eleventh Circuits as "pithy" and "odd." The cases speak for themselves. Weisburg specifically, and in detail, addressed these issues, concluding there is no established federal marine insurance precedent governing fee awards. Weisberg, 222 F.3d at 1314 – 1315. Professor Robertson also agrees, having analyzed in detail the origins of the so-called "American Rule" and concluding that there is no judicially established federal admiralty rule that limits the award of fees under state substantive law in marine insurance litigation. Robertson, Court-Awarded Attorneys' Fees, at 566. Professor Robertson argued that the Kenealy case was wrongly decided by the Second Circuit, concluding:

> It thus appears that [Kenealy] was wrongly decided. The court mistakenly took the American rule--a general federal procedural rule--for a substantive rule of maritime law, and wrongly used that rule to displace state substantive law. The result the court reached would have been correct only if it had determined that the free flow of maritime commerce required it to displace the state law with a newly-fashioned substantive rule of marine insurers' liability for attorneys' fees. For the reasons just stated, it is evident that the court did not think it was making new law; if it had set out to make new law, the resultant rule would have looked different from the one announced.

Id.

Our own research confirms that the only cases to consider the issue now before this Court are the ones cited in Underwriters' Motion and this Reply. The majority of courts considering this issue conclude that state law should apply because there is no controlling federal maritime rule and no

need for a new uniform rule to be established for marine insurance disputes. Robertson, Court-Awarded Attorneys' Fees, sides with the majority view. In the absence of an established rule to the contrary, the Supreme Court has mandated in Wilburn Boat that this Court (and all courts) look to state law in marine insurance disputes.

**C.    RULE 82 IS SUBSTANTIVE.**

Inlet next argues that even if this Court is obliged by Wilburn Boat and the majority view to look to state law, Rule 82 of the Alaska Rules of Civil Procedure is procedural and not substantive, relying on Robertson, Court-Awarded Attorneys' Fees as support. This Court is, of course, bound by Ninth Circuit precedent, which has specifically held that Rule 82 is substantive and not procedural. In re Larry's Apartment, L.L.C., 249 F.3d 832, 838 (9th Cir. 2001); Klopfenstein v. Pargeter, 597 F.2d 150, 152 (9th Cir.1979). In Klopfenstein, the Ninth Circuit examined the origins of Rule 82 and concluded that Rule 82 was the substantive law of Alaska:

> Rule 82(a), which allows for the recovery of reasonable attorney's fees, is supported by legislation which specifies that the Supreme Court shall determine when attorney's fees are to be awarded. Alaska Statutes 09.60.010. Thus, the award of attorney's fees is authorized, though not mandated, by statute. Furthermore, the Supreme Court has indicated that state law regarding attorney's fees governs, whether its source is case law or statutory law.

Id. at 152 (citing Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 259 n. 31(1975)) (footnote omitted). Similarly, by local Rule, the District of Alaska has recognized that Rule 82 is part of the substantive law of Alaska. D. Ak. LR 54.3.

Characterizing District of Alaska Local Rule 54.3 and Klopfenstein as "other legal baggage," Inlet next asks this Court not to be "unduly attached" to that precedent, arguing that the distinction between "substantive" and "procedural" means something different in the federal admiralty context than it does in the diversity context. The cases cited by Inlet for this proposition are, however, inapposite. They do not address the question presented here: whether there is an established federal maritime rule governing fee awards in marine insurance cases that displaces the

contrary substantive Alaska law. Unlike the generalized admiralty cases cited by Inlet, this marine insurance dispute is subject to Wilburn Boat, which has made state law predominant, giving way only in the face of a contrary established federal maritime rule applicable to marine insurance (such as, e.g., the rule of uberrimae fidei).

Moreover, the Supreme Court has never announced that the terms "substantive" and "procedural" carry different meanings depending upon whether jurisdiction is premised on admiralty as opposed to diversity of citizenship. To the contrary, application of federal admiralty law by a state court has been held by the Supreme Court to require application of Erie in reverse:

> The saving to suitors clause leaves state courts competent to adjudicate maritime causes of action in proceedings in personam and means that "a state, having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit so long as it does not attempt to [give in rem remedies or] make changes in the substantive maritime law. Stated another way, the saving to suitors clause allows state courts to entertain in personam maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-Erie" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.

Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-223 (1986) (internal quotes and citations omitted). Adoption for federal marine insurance cases of a meaning for "substantive" and "procedural" that differs from the distinction that has already been successfully drawn by the thousands of cases decided in the decades following Erie is both unnecessary and unwise. It would conflict with the above-quoted guidance provided by Justice O'Connor in Tallentire and make compatibility between admiralty and diversity jurisdiction, as well as between state and federal admiralty jurisprudence, even more unwieldy.

**D.  INLET'S ARGUMENT THAT FEDERAL MARITIME LAW APPLIES TO THE ATTORNEYS' FEE ISSUE BECAUSE IT APPLIED TO THE ISSUE OF UTMOST GOOD FAITH IS FUNDAMENTALLY FLAWED.**

Inlet argues that because this Court applied the federal maritime doctrine of uberrimae fidei, all substantive issues in the case must be determined under federal maritime law. The opposite is true. Because this case concerns a policy of marine insurance, courts are obliged under Wilburn

Boat to apply state law unless there is a contrary established federal maritime rule. Questions about whether there is an established rule are decided on an issue by issue basis. See, e.g., Yu v. Albany Ins. Co., 281 F.3d 803, 806-809, 807 n.3 (9th Cir. 2002) (conducting separate Wilburn Boat analyses for the issues of (1) general rules of contract construction and (2) the affect of a violation of a Captain Warranty). Here, the Court properly applied the established federal marine insurance doctrine of uberrimae fidei to the conduct of Inlet, but must apply state law to other substantive issues for which there is no established federal maritime rule. Availability of attorneys' fees to the prevailing party in marine insurance is such an issue.

### E. INLET'S ARGUMENT THAT UNDERWRITERS' ATTORNEYS' FEES ARE UNREASONABLE LACKS MERIT.

Inlet next argues that Underwriters' fee claim should be disallowed even if Rule 82 is applied by this Court, arguing that Underwriters have failed to establish that the fees were reasonably incurred.[6] Attached to the Second Declaration of Christopher W. Nicoll is a letter from counsel for Inlet which redacts portions that are unnecessary and would be objectionable under FRE 407. In that letter, counsel for Inlet asserted that his client had expended over $400,000 in fees on this matter and related cases.[7] Inlet's assertion that Underwriters' counsel's fees, which were expended in a winning

---

[6] Inlet variously refers to the potential fee award in favor of Underwriters as "punitive," a "windfall," and "onerous." As stated herein, Underwriters attempted to resolve this matter quickly and without great expense. Those efforts were thwarted by Inlet. Inlet, as a litigant in Alaska who itself asserted claims against Underwriters in Alaska state courts, was certainly aware of the risk of an award of fees under Alaska state law and, in fact, sought such an award itself. Inlet cannot be said to have been unaware of this potential. Similarly, equity cannot be done in this case unless Underwriters are put back into the position they should have occupied but for Inlet's breach of their duty of good faith.

Inlet's characterizations of a fee award as "punitive" and a "windfall" is disingenuous. A punitive award is one that goes beyond remediation. Underwriters have actually incurred and paid the attorneys' fees they are seeking. In fact, Underwriters are not seeking all of the attorneys fees they paid in this matter; only those related to the coverage investigation and litigation. Ordering Inlet to reimburse Underwriters for amounts that were actually paid is remedial, not punitive. Similarly, it cannot fairly be characterized as a "windfall" if Underwriters are merely made whole.

[7] Underwriters acknowledge that Inlet's counsel stated the $400,000 in fees were incurred in the coverage litigation as well as the state court claims and the claim asserted by the federal government. Nonetheless, Underwriters were also involved in those matters and Underwriters' fees attributable to those matters are a fraction of the fees related to this matter, as evidenced by the invoices attached to the First Nicoll Declaration (those entries not related to this matter are redacted from the invoices and were not included in Underwriters' calculation of attorneys' fees). It is reasonable to infer that the vast majority of Inlet's $400,000 in attorneys' fees were attributable to this matter.

**Reply to Inlet's Opposition to Underwriters' Motion for Attorneys Fees**
*Certain Underwriters at Lloyds, et al.v. Inlet Fisheries, Inc., et al. (*Case No. A04-0058 CV (JWS))     Page 8 of 12

effort[8] and total less than Inlet's counsel's fees, are unreasonable lacks credibility and should, under the circumstances, be disregarded.

Inlet takes issue with Underwriters' assertion that it was Inlet's conduct that forced Underwriters' to initiate this litigation. Inlet argues that in view of the importance of the case to Inlet, litigation was inevitable. That may be, but Underwriters filed only because Inlet failed to cooperate in Underwriters' attempts to investigate as has been documented in this Court several times already.[9] Underwriters have produced their fee bills which show the work done, the amount charged, who performed the work and the hours spent. In the cases of the bills generated when Underwriters' counsel were at Cozen O'Connor and the Lane Powell invoices, the hourly rates were not broken out, although they are easily discerned. The hourly rates for the work performed by Underwriters' counsel at Nicoll Black are shown and are somewhat lower than was charged per hour while counsel were working at Cozen O'Connor.

Inlet argues that an award of fees against Inlet would be wrong because Underwriters "improperly attempt[] to tar Inlet with the misdeeds of its broker. . . ." Opposition at 13. "Inlet" constitutes two related companies managed by a sophisticated businessman with his own separate

---

Additionally, Inlet, to a significant extent, coat tailed the discovery efforts of Totem in this case. (See Docket 120, at p. 4). Moreover, Underwriters were forced to respond to arguments presented by Inlet and, as an amicus, by Totem. Thus, one could reasonably anticipate that Underwriters' attorneys' fees would be significantly higher than Inlet's. Nonetheless, it appears as though Underwriters' fees were not, in fact, significantly higher than Inlet's. All of this strongly suggests that Underwriters' fees were reasonable.

[8] At various places and in various ways Inlet refers to the instant case as one of first impression. Perhaps as narrowly as Inlet frames the issue, it is. The application of uberrimae fidei to insurance and to marine insurance is not an issue of first impression, nor are the consequences for breach of that duty. The fact that this is the first reported decision to examine the doctrine in the context of stand-alone vessel pollution insurance merely provided an additional point for Inlet to argue – a point it did not raise until very late in the litigation; it did not alter Underwriters' view of the case, nor was it persuasive to this Court.

[9] This assertion by Inlet causes Underwriters to ponder how the attorneys fee issue would come out if Inlet had cooperated in Underwriters' investigation and Inlet eventually filed suit for coverage in state court, as Inlet later attempted to do. If Inlet prevailed it would no doubt seek its fees under Rule 82, arguing for the same majority rule that Underwriters argue for here.

**Reply to Inlet's Opposition to Underwriters' Motion for Attorneys Fees**
*Certain Underwriters at Lloyds, et al.v. Inlet Fisheries, Inc., et al. (***Case No. A04-0058 CV (JWS))**     **Page 9 of 12**

counsel. "The devil made me do it"[10] is no excuse and seems hardly the type of argument that should hold sway here. Inlet's remedy, if any, is against Totem, not against Underwriters and AES.

It is true that this matter was decided on summary judgment. In so saying, Inlet seeks to wipe out with a bold stroke the many thousands of pages of pleadings (4,000 by our estimate), hours spent in the 13 depositions, document productions and on airplanes, repeated motions and cross motions for summary judgment, venue changes, abstention, stays and continuances as well as the over 13,000 pages of documents produced in this litigation, expert costs, etc. This litigation as well as the manner and extent to which it expanded and dragged on resulted entirely from Inlet's conduct. Inlet failed to reveal the true nature of its risk to Underwriters. Inlet failed to cooperate in Underwriters' investigation. Inlet failed to pursue its discovery. When Underwriters sought early determination by summary judgment, Inlet sought and obtained a continuance over Underwriters' objection. Underwriters renewed their summary judgment motion after the discovery was completed. Inlet renewed a motion for summary judgment that had already been decided against Inlet. Thus, while it is true that the ultimate outcome was achieved by summary judgment, the path was not exactly a straight one and Underwriters attempted to get the matter resolved early as a matter of law – which was ultimately the result after Inlet was provided and took every opportunity to support its position.

Applying Alaska's rule on fees in favor of prevailing underwriters in a marine insurance dispute is characterized by Inlet as "unprecedented." Yet, a fee award to the prevailing parties, Underwriters and AE&S is precisely what the law calls for in this case. Federal maritime law does not broadly occupy the field of marine insurance; its role is limited. There is no established federal maritime rule prohibiting the fee award allowed by Alaska substantive law and sought by Underwriters here. As such, Underwriters should be awarded fees in accordance with Rule 82.

---

[10] In this case, Inlet's "devil" (Totem Agencies, its insurance broker) was an "amicus" for matters that were solely between Underwriters and Inlet. Underwriters and Totem had no direct claims against each other. Totem, however, filed many briefs in the litigation, all of which Underwriters had to address themselves to.

**F.  THE AVAILABILITY OF ATTORNEYS' FEES SHOULD NOT TURN ON PUBLIC POLICY; IF IT DOES, PUBLIC POLICY CAN ONLY SUPPORT UNDERWRITERS.**

Inlet argues that an award of fees to insurers is bad policy and would tend to chill insureds from pursuing their rights under insurance contracts. In view of Wilburn Boat's vision of the very limited role federal courts should have in fashioning judicial rules for marine insurance disputes, this Court may wish to leave such concerns to Alaska's legislators or to Congress. Case law favors the result sought by Underwriters in this case: application of Alaska law to the fee recovery issue. There is no strong public policy that should result in a federal court substituting its judgment for that of the Alaska legislature and the state Supreme Court.

If policy rationale is to be considered, then the escalating provisions of Rule 82 can be reviewed in order to assess whether Inlet's or Underwriters' conduct should go unaddressed in this fee award. In any event, a fee award that discourages (1) nondisclosure of loss history; (2) concealment of such critical facts as the extremely poor condition of the insured property and policy cancellation by the previous insurer, (3) attempts to thwart a good faith investigation by an insurer, and that makes the wronged party whole can hardly be characterized as poor public policy.

### III.  CONCLUSION

Alaska substantive law as expressed in Rule 82 supplies the governing authority applicable to the issue of an attorneys' fees award in this marine insurance dispute. Underwriters and AE&S

//

//

//

//

//

//

respectfully request the Court to order the Defendants to reimburse their attorneys' fees jointly and severally.

DATED this 18th day of May, 2006.

                                         NICOLL BLACK MISENTI & FEIG PLLC
                                         Christopher W. Nicoll, WSBA No. 20771

                                         LANE POWELL PC
                                         Brewster H. Jamieson, ASBA No. 8411122

                                         Attorneys for Plaintiffs Certain Underwriters at Lloyds & Third Party Defendant American E&S Insurance Brokers California, Inc.

                                         By    /s/ Christopher W. Nicoll                             .
                                             Christopher W. Nicoll, WSBA No. 20771
                                             Brewster H. Jamieson, ASBA No. 8411122

I certify that on May 18, 2006, a copy of the foregoing was served by ECF on:

Thomas A. Matthews, tom.matthews@matthewszahare.com
John A. Treptow, treptow.john@dorsey.com

  /s/ Christopher W. Nicoll                  .