IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE OP01 0025, through Puget Sound Underwriters, Inc.,**<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**INLET FISHERIES, INC., an Alaska corporation; and INLET FISH PRODUCERS, INC., an Alaska corporation,**<br><br>　　　　　　　Defendants.<br><br>**INLET FISH PRODUCERS, INC., an Alaska corporation,**<br><br>　　　　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>**TOTEM AGENCIES, INC., a Washington corporation; and AMERICAN E&S INSURANCE BROKERS CALIFORNIA, INC., a Washington corporation,**<br><br>　　　　　　　Third-Party Defendants. | 3:04-cv-00058-JWS<br><br>ORDER FROM CHAMBERS<br><br>[Re: Motion at Dockets 232 and 249] |

## I.  MOTION PRESENTED

At docket 232 plaintiff Certain Underwriters at Lloyds London, Subscribing to Certificate of Insurance OP01 0025 ("Lloyds") has moved for an award of attorneys' fees from defendants Inlet Fisheries, Inc. ("IFI") and Inlet Fish Producers, Inc. (IFP") (collectively referred to as "Inlet"), and third-party defendant American E&S Insurance Brokers California, Inc. ("E&S") has moved for an award of attorney's fees from third-party plaintiff Inlet Fish Producers, Inc., in the amount of $385,834.[1]  At docket 245 Inlet has opposed the motion and Lloyds and E&S have replied at docket 246.  Oral argument would not be of material aid to the court.  The request for oral argument at docket 249 will be denied.

## II.  BACKGROUND [2]

Lloyds' commenced this action seeking a declaration that the marine pollution insurance policy issued to Inlet by Lloyds was void *ab initio* under the doctrine of *uberrimae fidei* ("utmost good faith").  Inlet filed a third-party complaint against E&S alleging E&S was negligent in processing the claim made by Inlet under the policy.

The court granted the motion of third-party defendant E&S for summary judgment on October 20, 2004, holding that IFP was not entitled to recovery from E&S on the third-party complaint,[3] and the motion of plaintiff Lloyds for summary judgment on September 12, 2005, holding that the marine insurance contract was void *ab initio* under the doctrine of *uberrimae fidei*.[4]  Final judgment was entered in favor of Lloyds and E&S

---

[1] The motion does not segregate the amount claimed between the amount claimed by Lloyds and the amount claimed by E&S.

[2] The background in this case is well known to the parties and extensively set forth in the prior orders of this Court at dockets 114, 126, 127, and 181.  It is not repeated here except as necessary to an understanding of the instant motion.

[3] Docket 126.

[4] Docket 181.

on March 31, 2006.[5] Lloyds and E&S have timely moved for the award of attorney's fees. Lloyds and E&S are clearly the prevailing parties.

### III. APPLICABLE LAW

Both Lloyds and E&S assume that Alaska law, including the attorney's fee provision in ALASKA R. CIV. P 82, govern.[6] As a rule, "[s]tate law governs disputes arising under marine insurance contracts only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice."[7] When applying state law, a federal court generally applies the law of the forum state, including its choice of law rules. When a case is transferred from one district to another, the law of the transferor state applies.[8] This case was transferred from the Western District of Washington; therefore, to the extent that the law of the forum applies, including the choice-of-law rules, it is the law of Washington. However, as previously ruled by the court, this case invokes the court's admiralty jurisdiction.[9]

> Federal common law applies to choice-of-law determinations in cases based on federal question jurisdiction, such as admiralty. Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws.[10]

---

[5] Docket 230.

[6] "Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule." ALASKA R. CIV. P. 82(a).

[7] *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir.1998) (citation and quotations omitted). *See also* 1 THOMAS J. SCHOENBAUM ADMIRALTY AND MARITIME LAW §4-2 at 165 ("the application of state law in admiralty is a *default* rule: state law applies if there is no well-established federal admiralty rule and there is no need to create one") (emphasis in original).

[8] *International Business Machine Corp. v. Bajorek*, 191 F.3d 1033, 1036–37 (9th Cir.1999).

[9] Order From Chambers at docket 114.

[10] *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997) (citations omitted); *see also Aqua Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 671, 674 (9th Cir.1997).

Applying federal common law, the court ruled that to the extent state law is applicable in this case, it is Alaska law.[11] That is the law of this case.

### IV. DISCUSSION

Lloyds and E&S argue that they are entitled to recover their attorney's fees either: (1) under ALASKA R. CIV. P. 82 or (2) because Inlet acted in bad faith. Under the "American Rule" "the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser."[12] The Supreme Court has also held that an exception to the "American Rule" exists in cases where the non-prevailing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons in either forcing or conducting the litigation.[13] This exception has been recognized as part of federal admiralty law[14]

The law on the recovery of attorney's fees under state law in admiralty cases is less than settled. The Second Circuit, applying the "American Rule" as part of settled maritime law, held that attorney's fees are not recoverable under state law in admiralty maritime insurance contract cases.[15] The Fifth and Eleventh Circuits have held to the contrary.[16]

---

[11] Orders at dockets 126 and 127. The court notes that the result would be the same even if the law of the forum, Washington, applied. *See, e.g., Southwell v. Widing Transp., Inc.*, 676 P.2d 477, 479–480 (Wash.1984).

[12] *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975).

[13] *Id.,* 421 U.S. at 258–259; *F.D. Rich Co, Inc. v. United States ex rel Industrial Lumber Co., Inc.*, 417 U.S. 116, 130 (1974).

[14] *See, e.g., Vaughn v. Atkinson*, 369 U.S. 527, 530–531 (1962)

[15] *Am. Nat. Fire Ins. Co. v. Kenealy,* 72 F.3d 264, 270 (2d Cir.1995) (refusing to allow attorney's fees under New York law); *see also Southworth Mach. v. F/V Corey Pride,* 994 F.2d 37, 41 (1st Cir.1993) (refusing to apply the law of the Virgin Islands to a personal injury case); *Sosebee v. Roth,* 893 F.2d 54, 56 (3d Cir.1989) (refusing to apply Massachusetts law to a breach of contract case).

[16] *See INA of Texas v. Richard*, 800 F.3d 1379, 1381 (5th Cir.1986) (*per curiam*) (allowing recovery of attorney's fees after applying Texas law to the interpretation of a marine insurance contract); *All Underwriters v. Weisberg*, 222 F.3d 1309, 1315 (11th Cir.2000) (allowing as part of state substantive law recovery under a Florida statute; however, the court would not have applied the Florida statute had it been procedural). *But see Texas A&M*

(continued...)

Although it has not decided the precise issue presented here in a published decision, the Ninth Circuit upheld an award of attorney's fees in a marine insurance contract case based upon the "introduction of 'specious arguments and questionable testimony during the course of litigation' and 'bad faith' use of the judicial process."[17] The Ninth Circuit also upheld the award of attorney's fees in a seaman's maintenance and cure case where the shipowner's default was callous, willful, and persistent.[18] However, more recently, the Ninth Circuit reversed the award of attorney's fees in a case involving a seaman's contract governed by federal maritime law because "[u]nder federal maritime law, no attorneys' fees may be awarded in this case, where the district court explicitly held that ASC had acted in good faith."[19]

The Ninth Circuit has, however, held that attorney's fees may be awarded based on state law in diversity actions or in bankruptcy cases where the rule of decision is determined by the application of state law,[20] but attorney's fees may not be awarded where the issue is decided under federal law.[21] Where portions of the case are determined by reference to state law and portions determined by reference to federal

---

[16](...continued)
*Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 406 (5th Cir.2003) ("[w]e likewise conclude that the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fee statutes, * * *, to maritime contract disputes").

[17] *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures, Corp.*, 159 F.3d 412, 421 n.5 (9th Cir.1998).

[18] *Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1503–1504 (9th Cir.1995); *see also Su v. Southern Aster*, 978 F.2d 462, 475 (9th Cir.1992) (allowing attorney's fees under the court's equitable powers).

[19] *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 919 (9th Cir.2003); *see also Majeda v. Olympic Packers, LLC*, 310 F.3d 628, 635 (9th Cir.2002) ("[t]he equitable grant of attorney's fees is appropriate in admiralty only when the shipowner acted arbitrarily, recalcitrantly, or unreasonably").

[20] *Krommenhoek v. A-Mark Precious Metals (in re Bybee)*, 945 F.2d 309, 315–316 (9th Cir.1991) (rule of decision based on state law); *Kloptenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir.1979) (diversity).

[21] *Home Sav. Bank, F.S.B. by Resolution Trust Corp. v. Gillam*, 952 F.2d 1152, 1162–1163 (9th Cir.1991); *In re Bybee.*

law, attorney's fees must be allocated between the work associated with the state law issues and that associated with the federal law.[22]

This Court, based on existing Ninth Circuit precedent, holds that the "American Rule," which the Supreme Court has unequivocally stated is part of the federal common law, is a well-established federal admiralty rule. In the absence of controlling contrary law, it is difficult, if possible, to say that the "American Rule," firmly ingrained as an element of federal common law, is not part of admiralty law. However, the court can not find any principled reason not to apply in admiralty the same rule that the Ninth Circuit applies in bankruptcy cases—where the rule of decision is determined by state law, attorney's fees may also be awarded under state law.[23] Both bankruptcy and admiralty law are uniquely federal in character.

A. *Applicability of ALASKA R. CIV. P. 82.*

The court determined that the outcome of this case was controlled by the federal maritime rule of *uberrimae fidei* and based on that rule granted summary judgment to Lloyds.[24] The rule of decision was determined by federal, not Alaska, law. On a prior motion by Inlet, the court held that state (Alaska) law controlled, and based thereon the language of the marine pollution insurance contract was not ambiguous.[25] The earlier motion, unlike the later motion granting summary judgment, was non-dispositive, and a minor issue in the case advanced as a defense to Lloyds' cause of action. The cause of action in Lloyds' complaint and the one on which it prevailed was predicated upon federal maritime law: the doctrine of *uberrimae fidei*. Lloyds is not entitled to recover attorney's fees under Rule 82.[26]

---

[22] *In re Bybee*.

[23] *See, e.g., Westaff (USA), Inc. v. Arce*, 298 F.3d 1164, 1167 (9th Cir.2002) (allowing attorney's fees in a case based on federal ERISA jurisdiction to the extent the case was determined under state law).

[24] Order at Docket 181.

[25] Order at Docket 127.

[26] *See, e.g., Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230 (9th Cir.1997) (holding that attorney's fees are awarded for services rendered
(continued...)

The position of E&S differs.  The liability of E&S, as presented to the court, was based upon allegedly negligent acts by E&S as the agent of Lloyds.[27]  E&S argued that, as a fully disclosed agent, it was not liable for the acts of Lloyds—an issue the court determined was governed by federal maritime law.  IFP conceded this point, but argued that nonetheless E&S was liable to Inlet for its own negligent act—an issue the court determined was governed by state (Alaska) law.  The court granted summary judgment in favor of E&S.  IFP's claim was based upon and determined by reference to state (Alaska) law; the federal issue was *de minimis*.  Consequently, the attorney's fees incurred by E&S in defending against the third-party complaint are recoverable from IFP under Rule 82(b)(2).[28]

B.  *Fees Under Equitable Considerations.*

Lloyds raises the question of its entitlement to attorney's fees under the bad faith exception to the American Rule.  The Ninth Circuit has summarized the bad faith rule as follows:[29]

> However, a court may assess attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.  An award of attorneys' fees for bad faith is punitive and the penalty can be imposed only in exceptional cases and for dominating reasons of justice.  Within these guidelines, an award of attorneys' fees is within the district court's discretion.

---

[26]/(...continued)
in connection with a particular claim or cause of action).

[27]/ There was no contractual relationship between Inlet and E&S. Thus, *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955) is inapplicable.

[28]/ *Entertainment Research Group, Inc., supra.*

[29]/ *Dollar Systems, Inc. v. Avcar Systems Leasing, Inc.*, 890 F.2d 165, 175 (9th Cir.1989) (internal quotation marks and citations omitted); *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir.1982).

In a later decision the Ninth Circuit specifically held that an award of attorney's fees under the bad faith exception to the American Rule could not be based solely on the conduct of a party as an element of the cause of action.[30]

Lloyds points to several aspects of Inlet's conduct prior to and during the litigation that it says show Inlet acted in bad faith. The pre-litigation acts included failure to act in good faith in obtaining the policy and a failure to cooperate with Inlet in its investigation into the coverage issues following the spill.[31] Litigation tactics that Lloyds claims increased it costs included: transfer of venue from Washington to Alaska; filing coverage claims in the state court (naming Lloyds as a third-party defendant) requiring litigation of which court should determine the coverage issues; filing counterclaims and third-party complaints that increased the complexity of the case; dilatoriness in conducting discovery that delayed ruling on motions for summary judgment; reliance on an unqualified expert; and an attempt to relitigate issues on meritless motions for reconsideration.

Inlet's failure to cooperate with Lloyds following the spill was certainly a factor in finding that Inlet had not acted in the utmost good faith with respect to obtaining coverage. But that does not directly answer the critical question of whether Inlet acted in bad faith in forcing Lloyds to file this action. Whether Inlet had cooperated or not, it is evident that either Lloyds would have been forced to file this action or, as Inlet correctly notes, Inlet would have filed its own action seeking coverage (as it did in its counterclaim)—only the posture of the parties would have been reversed. At issue in this case was application of the maritime doctrine of *uberrimae fidei* to marine insurance; an issue on which there was a split of authority and the Ninth Circuit has not directly addressed. As Lloyds candidly acknowledged in its motion (p. 10):

> However, this case involved what may be the single most important principle governing marine insurance, and one that a few courts in

---

[30] *Association of Flight Attendants, AFL-CIO v. Horizon Air Industries, Inc.*, 976 F.2d 548–550 (9th Cir.1992).

[31] The court notes that the fact it found that Inlet violated the maritime doctrine of *uberrimae fidei* is not, standing alone, significant; a finding of a failure to act without the utmost good faith is not tantamount to acting in bad faith and the court declines to make such a finding.

> the United States have abandoned. Additionally, the case involved a significant oil spill and a substantial amount of potential liability resulting from the spill, including, among others, the lawsuits filed in state court. Thus, the amount of work performed is in line with the significance of the matters at stake.

If the matters at stake were significant enough to justify the amount of work performed in prosecuting the action, it is difficult, if at all possible, to say that they were so insignificant that forcing the issue constituted bad faith.

Obtaining a change of venue, which Inlet was entitled to under the law, while it undoubtedly inconvenienced Lloyds and may have increased its costs, cannot be termed an act undertaken in bad faith. This is particularly true when the court considers that, given this action was related to a bankruptcy case pending in this district, venue, if not jurisdiction, was improper in the Western District of Washington in the first place.[32]

How the filing of the third-party complaints, even assuming it was done in bad faith, adversely impacted Lloyds' prosecution of its declaratory relief case against Inlet is unexplained. While it increased the complexity of the case for Inlet and the court as well as the third-party defendants, insofar as Lloyds was concerned, the facts and law with respect to its case were the same. With respect to the counterclaim, the facts and law with respect to liability under the counterclaim were the same as the facts and law involved in the declaratory action to determine lack of coverage. In short, whether Inlet filed the counterclaim and third-party complaint, the burden on Lloyds in prosecuting its action did not change.

The filing of the coverage issue in the state court and the subsequent motion by Inlet to stay the proceedings in this court did unquestionably increase the cost of litigation in this case by forcing Lloyds to oppose the motion. It may also have increased the overall costs to Lloyds of litigating because parallel actions were pending in two separate judicial systems.[33] However, although the tactics employed by Inlet in

---

[32] *See* Order at docket 115 withdrawing reference to the bankruptcy court.

[33] The court assumes that, to the extent Lloyds incurred fees in litigating in the state court, it is entitled to recovery under ALASKA R. CIV. P. 82; thus, this court is not concerned with awarding fees incurred in this action on that account.

this regard have all the appearance of forum shopping and are not to be condoned, that they rise to a level of bad faith or vexatious behavior sufficient under all of the circumstances to support the requested relief is tenuous.

Inlet was unquestionably dilatory in conducting discovery in this case, and its behavior delayed resolution. It also probably increased somewhat the costs incurred by Lloyds. However, the argument that this materially increased the cost of litigation is somewhat disingenuous. Contrary to the assertions by Lloyds, the delays did not require Lloyds to undertake any "additional" discovery. Inlet's dilatory behavior changed the timing for that discovery, *i.e.*, had Inlet been more diligent in pursuing discovery, that same discovery would have occurred earlier in the lawsuit. While the court certainly does not condone the pace with which Inlet conducted discovery in this action and acknowledges it was certainly frustrating to Lloyds, the court cannot say that it rises to the level of bad faith or vexatious conduct.

The question of whether the expert relied upon by Inlet was qualified to testify as to the industry standards turned primarily on the time and nature of his underwriting experience. Although Inlet's reliance was ultimately determined to be misplaced, given the fact that the expert was acknowledged by the court to be an expert in the field, though not on the particular subject matter to which he was requested to testify, the court cannot find that in proffering the testimony Inlet acted either in bad faith or with improper motive.

The motions for reconsideration were devoid of merit; indeed, they more likely than not violated FED. R. CIV. P. 11(b). However, Lloyds did not invoke Rule 11 with respect to the transgression it now asserts. Consequently, Inlet was deprived of the benefit of the "safe harbor" provisions of Rule 11(c)(1)(A). The action of Lloyds in waiting until the case was concluded and then seeking attorney's fees is somewhat akin to waiting until the case is concluded to file its Rule 11 sanction motion; a practice that is prohibited.[34]

---

[34] *See Retail Flooring Dealers of America, Inc. v. Beaulieu of America LLC*, 339 F.3d 1146, 1151 (9th Cir.2003).

Sometimes the whole appears greater than the sum of its parts and, taken individually, the conduct of Inlet does not meet the bad faith standard, but it is possible that taken together the conduct evidences something close to bad faith and vexatious behavior. Although its handling of this litigation Inlet's conduct was far from exemplary, the court cannot find that conduct sufficiently egregious to constitute an exceptional case in which dominating reasons of justice mandate the award of attorney's fees to Lloyds.

C.  *Amount of Attorney's Fee Award.*[35]

Lloyds and E&S submitted a single application for fees without segregating the fees related to the work attributable to Lloyds in connection with its action and that attributable to defending E&S on the third-party complaint.  The court, after reviewing the documentation submitted in support of the motion, has determined that fees for services performed by Nicoll Black Misenti & Feig PLLC through October 24, 2004, in the aggregate amount of $18,021.50, may be reasonably charged against IFP for the defense of the third-party complaint by E&S.   E&S is entitled to an award of 20 percent

---

[35] ALASKA R. CIV. P. 82 provides in relevant part:
(b) **Amount of Award.**
(1)                                 * * * *
(2) In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred. The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk.
(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
  (A) the complexity of the litigation;
  (B) the length of trial;
  (C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
  (D) the reasonableness of the number of attorneys used;
  (E) the attorneys' efforts to minimize fees;
  (F) the reasonableness of the claims and defenses pursued by each side;
  (G) vexatious or bad faith conduct;
  (H) the relationship between the amount of work performed and the significance of the matters at stake;
  (I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
  (J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
  (K) other equitable factors deemed relevant. If the court varies an award, the court shall explain the reasons for the variation.

of that amount under ALASKA R. CIV. P. 82(b)(2). Enhancement of the award under Rule 82(b)(3) is not warranted under the facts of this case.

## V.  CONCLUSION/ORDER

For the reasons set forth above, the motion of Certain Underwriters of Lloyds, London for attorney's fees at docket 232 is **DENIED**; and the motion of American E&S Insurance Brokers for attorney's fees under ALASKA R. CIV. P. 82(b)(2) from Inlet Fish Producers, Inc. is **GRANTED** in the amount of $3,604.30. The motion for oral argument at docket 249 is **DENIED**.

DATED at Anchorage, Alaska, this 25th day of May 2006.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT COURT  JUDGE